1  LATHAM & WATKINS LLP
Viviann C. Stapp (Bar No. 233036)
2  505 Montgomery Street, Suite 2000
San Francisco, California 94111
3  Telephone: (415) 391-0600
Facsimile: (415) 395-8095
4  Email: viviann.stapp@lw.com

5  Mark S. Mester (Ill. Bar No. 6196140) (*pro hac vice*)
Livia M. Kiser (Ill. Bar No. 6275283) (*pro hac vice*)
6  233 South Wacker Drive
Suite 5800 Sears Tower
7  Chicago, Illinois 60606
Telephone: (312) 876-7700
8  Facsimile: (312) 993-9767
Email: mark.mester@lw.com
9        livia.kiser@lw.com

10  *Attorneys for Defendant Safeway Inc.*

11

12

13  **UNITED STATES DISTRICT COURT FOR THE**

14  **NORTHERN DISTRICT OF CALIFORNIA**

15  **SAN FRANCISCO DIVISION**

16

17

18  **THEADORA KING, individually, and on behalf of those similarly situated,**        **CASE NO: 3:08-cv-00999-MMC**

19                    **Plaintiff,**

20        **v.**                                        **DECLARATION OF LIVIA M. KISER IN SUPPORT OF THE OPPOSITION OF DEFENDANT SAFEWAY INC. TO PLAINTIFF'S MOTION TO REMAND**

21  **SAFEWAY INC.,**

22                    **Defendant.**

23

24

25

26

27

28

I, Livia M. Kiser, declare and state as follows:

1.      I am an attorney admitted to practice law in Illinois and an associate with the law firm of Latham & Watkins LLP, counsel for Defendant Safeway Inc. ("Safeway"), a retailer of Aurora Dairy Corporation ("Aurora").  This declaration is filed in support of the Opposition of Defendant Safeway Inc. to Plaintiff's Motion to Remand.  I have personal and firsthand knowledge of the facts stated in this declaration.  If called upon to do so, I could and would testify competently thereto.

2.      Attached hereto as Exhibit A is a true and correct copy of the Class Action Complaint filed December 5, 2007 in Riley, et al. v. Safeway, Inc., Northern District of California Docket No. 07-cv-6174-JCS.

3.      Attached hereto as Exhibit B is a true and correct copy of Safeway's Local Rule 3-13 Supplemental Notice of Pendency of Other Actions or Proceedings filed on March 7, 2008.

4.      Attached hereto as Exhibit C is a true and correct copy of Safeway's Local Rule 3-14 Notice of Pendency of Other Actions or Proceedings filed on February 20, 2008.

5.      Attached hereto as Exhibit D is a true and correct copy of the Conditional Transfer Orders entered on March 12, 2008 by the Judicial Panel on Multidistrict Litigation regarding In re: Aurora Dairy Corp. Organic Milk Marketing and Sales Practice Litigation, MDL Docket No. 1907.

6.      Attached hereto as Exhibit E is a true and correct copy of the Transfer Orders entered on March 13, 2008 by the Judicial Panel on Multidistrict Litigation regarding In Re Aurora Dairy Corp. Organic Milk Marketing and Sales Practice Litigation, MDL Docket No. 1907.

7.      Attached hereto as Exhibit F is a true and correct copy of the Transfer Order entered on February 20, 2008 by the Judicial Panel on Multidistrict Litigation regarding In Re Aurora Dairy Corp. Organic Milk Marketing and Sales Practice Litigation, MDL Docket No. 1907.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

1

Case No. 3:08-cv-00999-MMC
DECLARATION OF LIVIA M. KISER IN
SUPPORT OF THE OPPOSITION OF
DEFENDANT SAFEWAY INC. TO PLAINTIFF'S
MOTION TO REMAND

8.    Attached hereto as Exhibit G is a true and correct copy of the Reassignment Order filed on March 3, 2008 regarding <u>Robert Edward Koch vs. Aurora Dairy Corp.</u>, Eastern District of Missouri Docket No. 4:08-cv-00254.

9.    Attached hereto as Exhibit H is a true and correct copy of the March 27, 2008 letter from Elizabeth Fegan to the Judicial Panel on Multidistrict Litigation filing a Notice of Opposition to Conditional Transfer Order regarding <u>In Re Aurora Dairy Corp. Organic Milk Marketing and Sales Practice Litigation</u>, MDL Docket No. 1907.

10.    Attached hereto as Exhibit I is a true and correct copy of the Motion and Memorandum in Support of Motion of the "KTHB Group" to Appoint Two Co-Lead Counsel, an Executive Committee and Liaison Counsel for the Punitive Class filed on March 10, 2008 regarding <u>In Re Aurora Dairy Corp. Organic Milk Marketing and Sales Practice Litigation</u>, Eastern District of Missouri Docket No. 4:08-md-01907-ERW.

11.    Attached hereto as Exhibit J is a true and correct copy of a redline comparison of the Riley and King Complaints.

12.    Attached hereto as Exhibit K is a true and correct copy of Aurora Dairy Corporation's Certificate of Incorporation.

13.    On March 28, 2008, I attended a hearing before Judge E. Richard Webber in the Consolidated Action, styled <u>In Re Aurora Dairy Corp. Organic Milk Marketing and Sales Practice Litigation</u>, Eastern District of Missouri Docket No. 4:08-md-01907-ERW.  During the hearing, Judge Webber ordered plaintiffs to file a Consolidated Complaint in this action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  April 4, 2008

Livia M. Kiser

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CHICAGO

Case No. 3:08-cv-00999-MMC
DECLARATION OF LIVIA M. KISER IN
SUPPORT OF THE OPPOSITION OF
DEFENDANT SAFEWAY INC. TO PLAINTIFF'S
MOTION TO REMAND

# EXHIBIT A

1  Shana E. Scarlett (217895)
   HAGENS BERMAN SOBOL SHAPIRO LLP
2  715 Hearst Avenue, Suite 202
   Berkeley, CA 94710
3  Telephone: (510) 725-3000
   Facsimile: (510) 725-3001
4  shanas@hbsslaw.com

5  Steve W. Berman
   HAGENS BERMAN SOBOL SHAPIRO LLP
6  1301 Fifth Avenue, Suite 2900
   Seattle, WA 98101
7  Telephone: (206) 623-7292
   Facsimile: (206) 623-0594
8  steve@hbsslaw.com

9  Elizabeth A. Fegan
   HAGENS BERMAN SOBOL SHAPIRO LLP
10 820 North Boulevard, Suite B
   Oak Park, IL 60301
11 Telephone: (708) 776-5600
   Facsimile: (708) 776-5601
12 beth@hbsslaw.com

13 Attorneys for Plaintiff

14

15                UNITED STATES DISTRICT COURT

16               NORTHERN DISTRICT OF CALIFORNIA

17 SHAWN RILEY, individually and on behalf of  )  No.
   all others similarly situated,               )
18                                              )  CV 07    6114
                            Plaintiff,          )  CLASS ACTION COMPLAINT
19                                              )
              v.                                )
20                                              )
   SAFEWAY, INC.,                               )
21                                              )
                            Defendant.          )  **JURY TRIAL DEMANDED**
22 _____ )

23

24

25

26

27

28

E-filing

ORIGINAL
FILED

DEC 5 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1       Plaintiff Shawn Riley, by counsel, individually and on behalf of all others similarly situated

2  ("Plaintiff") tenders the following Class Action Complaint and Demand for Jury Trial:

3                 **I.     OVERVIEW**

4       1.     This class action and representative action seeks relief on behalf of Plaintiff and the

5  members of the Class for injuries sustained by them as a result of Safeway's deceptive marketing

6  of milk as organic when the milk is not, in fact, organic and Safeway's increase in gross sales and

7  sales price.

8       2.     During the Class Period, Defendant, which is one of the largest food and drug

9  retailers in North America, violated its duty to inform customers that the "O"-label organic milk is

10  not organic.  Defendant's nondisclosure of this material fact constitutes misrepresentation, unfair,

11  unlawful, fraudulent, and/or deceptive business practices in violation of California's consumer

12  protection laws.  The materiality of this information is proven directly by federal and state

13  regulations which, at all relevant times, required Defendant to inform consumers that milk that

14  were purchasing was not organic.  Defendant flagrantly violated and, in some cases, continue to

15  violate these regulations.

16       3.     As a result of Defendant's misbranding, concealment and nondisclosure, customers

17  are misled to purchase the organic milk and/or to pay a greater price than they would otherwise

18  pay.  Defendant has been unjustly enriched at the expense of these consumers.

19       4.     This is a class action and a representative action brought by Plaintiff, who purchased

20  organic milk from, produced or distributed by Defendant in the State of California during the Class

21  Period.

22           **II.    JURISDICTION AND VENUE**

23       5.     The United States District Court for the Northern District of California has diversity

24  jurisdiction over this Class Action lawsuit pursuant to 28 U.S.C. § 1332 as amended by the Class

25  Action Fairness Act of 2005, because, upon information and belief, the amount in controversy

26  exceeds $5,000,000, exclusive of interest and costs, and this lawsuit is a Class Action in which

27  some members of the Plaintiff Class are citizens of states different than Defendant.  *See* 28 U.S.C.

28  § 1332(d)(2)(A).

CLASS ACTION COMPLAINT          - 1 -

1    6.    Safeway, Inc. ("Safeway") is a Delaware corporation with its headquarters and

2    principal place of business in Pleasanton, California. Considering that Plaintiff is a resident of

3    Illinois, there is minimal diversity amongst the parties.

4    7.    Venue in this judicial district is proper under 28 U.S.C. §1391 because a substantial

5    part of the events or omissions giving rise to the claims herein described occurred within this

6    judicial district.

7    8.    Intradistrict Assignment: Assignment to the San Francisco or Oakland division of

8    this Court is appropriate because Defendant's headquarters and principal place of business is in

9    Pleasanton, California. Because this action arises in the county of Alameda, pursuant to Northern

10   District of California, Local Rule 3-2(d), assignment to either the San Francisco Division or the

11   Oakland Division is proper.

**III.    PARTIES**

12   9.    Plaintiff Shawn Riley is a resident of Cook County, Illinois and a citizen of the State

13   of Illinois. Plaintiff purchased the store-brand organic milk from Defendant Safeway at its

14   Dominick's stores in the Chicago-area on numerous occasions throughout the class period. This

15   milk was produced by Aurora Dairy Corp. and branded as a private label brand by Safeway.

16   Plaintiff utilized the organic milk produced and sold by Defendant for his own and his family's

17   own consumption. Plaintiff decided to purchase "organic" milk, and indeed paid a premium price

18   for that "organic" milk, because he believed that it contained fewer additives and was healthier for

19   their consumption than non-organic milk.

20   10.    Safeway is a Delaware corporation with its principal place of business in

21   Pleasanton, California. Safeway is one of the largest food and drug retailers in North America. As

22   of September 8, 2007, the company operated 1,738 stores in the Western, Southwestern, Rocky

23   Mountain, and Mid-Atlantic regions of the United States and in western Canada.

24   11.    Safeway sold its "organic" milk to Plaintiff and the Class under its store "O" brand.

25   The "organic" milk was contained in cartons that specifically represented that the milk was

26   certified organic milk, despite the fact that it was not organic. Aurora labels its purportedly organic

27   milk with an organic certified label. This label is supposed to assure consumers that Aurora's milk

CLASS ACTION COMPLAINT                    - 2 -

1   complies with the Organic Foods Production Act of 1990 (7 U.S.C. § 6501, *et seq.*) and its

2   implementing regulations (7 C.F.R. Part 205). Plaintiff and the Class Members they represent pay

3   premium prices for Safeway's "organic" milk.

**IV.    FACTUAL ALLEGATIONS**

4

5   **A.    Market for Organic Milk**

6          12.    Safeway is and has been selling milk or milk products that it represents to be

7   "organic," when, in fact, the milk is not organic throughout the time period of December 5, 2003

8   through October 15, 2007 ("class period" or "relevant time period"). Safeway sells this milk to

9   consumers directly using its own brand name "O."

10         13.    The market for organic milk has boomed in recent years. According to the United

11  States Department of Agriculture ("USDA"), total milk or milk products production in the United

12  States in 2004 was 170 billion pounds. Fluid milk or milk products sales since 1975 have been

13  steady at approximately $11 billion per year. Currently, organic fluid milk or milk products sales

14  represent about 18% of overall sales. In 2005, total organic dairy sales were approximately

15  $2 billion. The organic dairy sector is annually growing at an approximate rate of 16%.

16         14.    Consumers rely on manufacturers and sellers of milk or milk products to determine

17  what milk is in fact organic. As Aurora Dairy, from which Safeway obtained the milk labeled

18  under its "O" brand, expressly recognizes, "Organic certification is the public's assurance that

19  products have been grown and handled according to strict procedures without persistent toxic

20  chemical inputs." http://www.auroraorganic.com/aodweb/site/itemcontent.aspx?icategoryid=6.

21  **B.    Organic Milk Standards**

22         15.    The USDA has set forth four requirements that must be satisfied for milk to be

23  labeled as "USDA Organic": (a) the milk must not come from cows that have been treated with

24  Bovine Growth Hormone; (b) the milk must not come from cows that have been treated with

25  antibiotics; (c) the milk producing cows must only eat feed that has been grown without pesticides;

26  and (d) the milk must come from cows that have some "access to pasture."

27         16.    In order to sell or label an agricultural product as organically produced, the product

28  must be produced and handled in compliance with the Organic Foods Production Act of 1990

CLASS ACTION COMPLAINT                              -3-

1  ("OFPA"), *see* 7 U.S.C. 6505(a)(1)(A), and the USDA adopted regulations, *see* 7 C.F.R. Part 205,

2  *et seq.*

3  **C.    Safeway's Representations Concerning Its Organic Milk**

4       17.    By marketing, selling, or otherwise representing that its milk was "organic,"

5  Safeway represented that the milk abides by these laws and regulations and that the milk is

6  "organic."

7       18.    Specifically, Safeway included labels on its "O" brand milk that stated, in whole or

8  in part, as follows:

9      **Description** :
10      Organic Fat Free Milk
    **Ingredients** :
11      Organic Grade A Fat Free Milk, Vitamin A Palmitate, Vitamin D3.
    **Product Attributes** :
12      Organic
    Kosher
    FatFree

13

14      **Product Details :**
    Ultra-Pasteurized Vitamins A & D added. USDA Organic. Grade A;
15      Ultra-Pasteurized; Homogenized. Organic from the Source. There's a
    lot that goes into a good glass of milk. It starts with the land. Our
16      daily pastures are environmentally friendly, maintained with the use
    of recognized organic horticultural practices. The dairy cows that
17      produce O Organics Milk enjoy a healthy mix of fresh air, plenty of
    exercise, clean drinking water and a wholesome, 100% certified
18      organic diet - and they are not given growth hormones or treated
    with antibiotics. All of these practices support sustainable farming,
19      which is good for the environment, good for the cows and good for
    the milk. That's why our O Organics Milk tastes like milk should,
20      fresh and pure. To be certified organic, dairy cows must be managed
    under organic livestock practices at least one year before milking.
21      Their feed must be grown on land that has been under organic
    cultivation practices for a minimum of three years. Certified Organic

22      19.    On the carton of Safeway's *O* Organics Milk is the following statement:

23                          ORGANICS

24      *Organic from the Source*

25      There's a lot that goes into a good glass of milk. It starts with the
    land. Our dairy pastures are environmentally friendly, maintained
26      with the use of recognized organic horticultural practices. The dairy
    cows that produce *O* Organics Milk enjoy a healthy mix of fresh air,
27      plenty of exercise, clean drinking water and a wholesome, 100%
    certified organic diet – and they are not given growth hormones or
28      treated with antibiotics.

CLASS ACTION COMPLAINT          - 4 -

All of these practices support sustainable farming, which is good for the environment, good for the cows and good for the milk. That's why our *O* Organics Milk tastes like milk should – fresh and pure.

The carton also states:

ORGANICS

organic

Fat Free Milk

Vitamins A & D Added
Grade A • Pasteurized • Homogenized

"To be certified organic, dairy cows, must be managed under organic livestock practices at least on eyear before milking. Their feed must be grown on land that has been under organic cultivation practices for a minimum of three years."

20.     However, Safeway's milk was not organic according to Federal law. In fact, Safeway's "organic" milk was produced in large scale factory farms and otherwise failed to comport with Federal law and thus should not have been certified organic.

**D.     The USDA's Investigation of Safeway's Supplier**

21.     By marketing, selling, or otherwise representing that its milk was "organic," Costco represented that the milk abides by the laws and regulations requiring certain conditions be met before the milk is labeled "organic."

22.     Aurora was formed by the former owners of Horizon, who sold Horizon to Dean Foods. The sale left Aurora with thousands of milk cows. Aurora then started its Colorado operation which produces 10 million gallons of milk a year. It is in essence a factory-farm model, there is no opportunity for cows to graze, as depicted below:



CLASS ACTION COMPLAINT                    - 5 -

1

2      23.    Aurora's primary business is selling milk for use in the private-label milk market for

3  Safeway, Costco, Wild Oats and others.

4      24.    However, Aurora's milk was not organic according to Federal law.  In fact,

5  Aurora's "organic" milk was produced in large scale factory farms and otherwise failed to comport

6  with Federal law.

7      25.    On March 7, 2007, the USDA identified the following "violations by Aurora

8  Organic Dairy," from which Safeway obtained the milk Safeway sold under its own labels, of

9  federal law:

10             a.    From 2003 through 2006, for dairy animals at its Platteville, Colorado

11  facility, Aurora failed to provide a total feed ration that included pasture, failed to establish and

12  maintain pasture conditions appropriate for minimizing the occurrence and spread of diseases and

13  parasites, and failed to establish and maintain access to pasture, in willful violation of 7 C.F.R.

14  §§ 205.237(a), 205.238(a)(3), and 205.239(a)(2);

15

16             b.    During the spring and early summer of 2006, Aurora entered conventional

17  dairy animals into organic milk or milk products production at its Dublin, Texas facility before

18  those animals completed the required one-year period of continuous organic management, in

19  willful violation of 7 C.F.R. § 205.236(a)(2);

20

21             c.    From 2003 through 2006, Aurora purchased for its Platteville facility, from

22  Promiseland Livestock in Falcon, Missouri, dairy animals that had been converted from

23  conventional to organic milk or milk products production, and thus had not been under continuous

24  organic management from at least the last third of gestation, in willful violation of 7 C.F.R.

25  § 205.236(a)(2)(iii);

26             d.    From on or about July 10, 2004 through on or about September 28, 2005,

27  Aurora moved organic dairy animals from its certified Platteville facility to Wells Ranch in Gill,

28

CLASS ACTION COMPLAINT                           - 6 -

1  Colorado, a non-organic (non-certified) livestock operation for management, and thereafter

2  returned them to the Platteville facility for organic dairy production, in willful violation of 7 C.F.R.

3  § 205.236(b)(1);

4

5      e.    From February 2005 through March 2006, Aurora moved organic calves

6  from its certified Platteville facility to non-organic (non-certified) livestock operations for

7  management, and eventually returned them to the Platteville facility for organic dairy production,

8  in willful violation of 7 C.F.R. §§ 205.236(a)(2)(iii) and 205.236(b)(1);

9      f.    From 2003 through 2006, Aurora used non-organic agricultural products,

10  such as wheat straw and corn stalks, as bedding for organic dairy animals at its Platteville facility,

11  in willful violation of 7 C.F.R. § 205.239(a)(3);

12

13      g.    From on or about July 27, 2004 through on or about September 30, 2005,

14  Aurora routinely caused organic dairy animals from Promiseland Livestock, a certified organic

15  dairy, to be delivered to Wells Ranch, a non-organic livestock operation, for livestock

16  management, before having them delivered to Aurora's Platteville facility for organic dairy

17  production, in willful violation of 7 C.F.R. § 205.236(b)(1);

18      h.    From December 5, 2003 through at least September 7, 2007, Aurora sold,

19  labeled and represented its milk or milk products as being organically produced when such milk or

20  milk products were not produced and handled in accordance with the National Organic Program

21  regulations, in willful violation of 7 C.F.R. §§ 205.102, 205.200 and 205.400(a);

22

23      i.    From on or about October 29, 2003 through on or about March 9, 2006,

24  Aurora failed to notify its certifying agent immediately concerning changes to the operation of its

25  Platteville facility regarding the termination an utilization of off-site facilities, such as Wells

26  Ranch, contracted by Aurora to provide pasture and/or livestock management services, in willful

27  violation of 7 C.F.R. § 205.400(f)(2);

28

CLASS ACTION COMPLAINT                          - 7 -

j.      Aurora failed to include a summary statement, supported by documentation, in the December 29, 2004 and December 28, 2005 Organic System Plans for its Platteville facility that detailed changes to the previous year's Organic System Plan regarding the termination and utilization of off-site facilities, such as Wells Ranch, contracted by Aurora to provide pasture and/or livestock management services, in willful violation of 7 C.F.R. § 205.406(a)(1)(i);

k.      From 2004 through 2006, Aurora failed to maintain adequate records that disclosed all activities and transaction in sufficient detail as to be readily understood and audited to demonstrate compliance with the OFPA and the National Organic Program regulations concerning pasture arrangements with operations identified by Aurora in its annual Organic System Plan for its Platteville facility, in willful violation of 7 C.F.R. § 205.103(b);

l.      In the October 29, 2003 and December 29, 2004 Organic System Plans for its Platteville facility, Aurora failed to include a full description of the practices and procedures to be performed by Wells Ranch, in willful violation of 7 C.F.R. § 205.201(a)(1);

m.      In the December 28, 2005 Organic System Plan for its Platteville facility, Aurora failed to include a full description of the practices and procedures to be performed by Matsude Farms, Salazar, Cockroft Dairy Farm, and Ray-Glo Dairy, as at its Woodword facility, in willful violation of 7 C.F.R. § 205.201(a)(1); and

n.      In the October 29, 2003, December 29, 2004, and December 28, 2005 Organic System Plans for its Platteville facility, Aurora failed to include a full description of the monitoring practices and procedures to be performed and maintained to verify that its Organic System Plans were effectively implemented with respect to off-site operations contracted by Aurora to provide pasture and/or livestock management services, in willful violation of 7 C.F.R. § 205.201(a)(3).

CLASS ACTION COMPLAINT        - 8 -

26.    On August 23, 2007, Aurora entered into a Consent Agreement with the USDA. This Consent Agreement contained a stipulation for probation. The USDA found that Aurora had not been in compliance with the federal organic food regulations, and placed it on a one year probationary period. The Consent Agreement provided that Aurora was required to remove organic dairy animals "currently present at Platteville that transitioned under the '80/20' rule" from the plant, and instructed that such animals could only be utilized as conventional animals, not certified organic animals. Finally, the Consent Agreement also requires Aurora to address all issues that were raised in the Notice of Proposed Revocation in order for its organic certification not to be revoked.

**E.    Defendant's Illegal Conduct**

27.    Safeway violated, and continues to violate federal and state law (including the applicable regulations by selling its milk as "organic." By mislabeling the milk, Safeway has misled, and continues to mislead Plaintiff and the Class Members into paying a higher price for milk that cannot be sold as "organic."

28.    The milk that Safeway sold was not organic, despite Defendant's misrepresentations that the milk was, in fact, organic; in that Aurora and thus Safeway had failed to comply with the requirements of the OFPA. *See* 7 C.F.R. § 205.102, *et seq.*, in at least the following ways:

a.    Safeway represented its milk or milk products as "organic" when, in fact, they were not, in willful violation of 7 C.F.R. § 205.102;

b.    Aurora failed to maintain records concerning the production and handling of milk or milk products intended to be sold, labeled, or represented as "organic" in a manner which fully disclosed all activities and transactions of the certified operation in sufficient detail as to be readily understood and audited, in willful violation of 7 C.F.R. § 205.103(b);

c.    Aurora failed to provide its dairy cows with access to land used for livestock grazing that it managed to provide feed value as required by 7 C.F.R. §205.200;

d.    Aurora, intending to sell, label or represent milk or milk products as "organic," failed to comply with the applicable provisions of 7 C.F.R. § 205.200;

CLASS ACTION COMPLAINT                        - 9 -

1           e.      Aurora failed to maintain an accurate organic production or handling system

2   that includes a description of practices and procedures to be performed and maintained, including

3   the frequency with which they will be performed, in willful violation of 7 C.F.R. §205.201(a)(1);

4           f.      Aurora failed to maintain an accurate organic production or handling system

5   that included a description of the monitoring practices and procedures to be performed and

6   maintained, including the frequency with which they will be performed, to verify that the plan is

7   effectively implemented, in willful violation of 7 C.F.R. § 205.201(a)(3);

8           g.      Aurora, after an entire, distinct herd had been converted to organic

9   production, failed to maintain all cows under organic management from the last third of gestation,

10   in willful violation of 7 C.F.R. §205.236(a)(2)(iii);

11           h.      Aurora removed its dairy cows from an organic operation and subsequently

12   managed those cows on a non-organic (non-certified) operation before being sold, labeled, or

13   represented as organically produced, in willful violation of 7 C.F.R. § 206.236(b)(1);

14           i.      Aurora failed to provide its dairy cows with a total fee ration composed of

15   agricultural products, including pasture and forage, that are organically produced and, where

16   applicable, organically handled, in willful violation of 7 C.F.R. 205.238(a)(3);

17           j.      Aurora failed to establish and maintain living conditions for its dairy cows

18   which accommodate their health and natural behavior, in willful violation of 7 C.F.R. § 205.239(a);

19           k.      Aurora failed to establish appropriate housing, pasture conditions, and

20   sanitation practices for its dairy cows to minimize the occurrence and spread of diseases and

21   parasites, in willful violation of 7 C.F.R. § 205.238(a)(3);

22           l.      Aurora failed to provide its dairy cows with suitable access to the outdoors,

23   shade, shelter, exercise areas, fresh air, and direct sunlight in willful violation of 7 C.F.R.

24   § 205.239(a)(1);

25           m.      Aurora failed to provide its dairy cows with access to pasture in willful

26   violation of 7 C.F.R. § 205.239(a)(2);

27

28

CLASS ACTION COMPLAINT               - 10 -

1          n.      Aurora failed to provide its dairy cows with appropriate clean, dry bedding,

2    which complies with the feed requirements of § 205.237, in willful violation of 7 C.F.R.

3    § 205.239(a)(3);

4          o.      Aurora failed to provide shelter designed to allow for its dairy cows' natural

5    maintenance, comfort behaviors, and the opportunity to exercise, as required by federal regulation;

6          p.      Aurora failed to comply with the Organic Food Production Act of 1990 and

7    applicable organic production and handling regulations of 7 C.F.R. § 205.400(a);

8          q.      Aurora failed to immediately notify its certifying agent concerning the

9    application of a prohibited substance to its dairy cows, in willful violation of 7 C.F.R.

10    § 205.400(f)(2); and

11          r.      Aurora failed to submit to its certifying agent an updated organic production

12    or handling system plan that included a summary statement, supported by documentation, detailing

13    deviations from, changes to, modifications to, or other amendments made to the previous year's

14    organic system plan during the previous year in willful violation of 7 C.F.R. § 205.406(a)(1)(i).

15    29.      Defendant Safeway failed to conduct its own inspections and oversight to determine

16    whether Aurora was complying with the laws and/or ignored Aurora's flagrant violations.  Its

17    representations about cows having a "healthy mix of fresh air, plenty of exercise," were blatantly

18    false.  Thus, despite the violations of federal law and regulations, Safeway marketed and sold the

19    milk or milk products under the "O" brand representing that the milk was organic, when it was not.

20    Defendant's conduct deceived Plaintiff and the Class Members into believing that they were

21    purchasing organic milk when they were not.

22    30.      Thus, Safeway directly misrepresented to Plaintiff and the Class Members that the

23    "organic" milk it sold under its own label was certified organic, when it was not.  Again, Plaintiff

24    and the Class Members would not have purchased Safeway's milk, and paid the premium for

25    Safeway's milk had they known that Safeway's milk was, in fact non-organic.

26

27

28

CLASS ACTION COMPLAINT            - 11 -

## V.    CLASS ACTION ALLEGATIONS

31.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a national Consumer Class (with the designation of statewide subclasses if the Court deems necessary and appropriate) defined as follows:

> All persons in the United States who purchased organic milk or milk products from Safeway.

Should this court determine that a national Consumer Class would not satisfy the applicable requisites for class certification, Plaintiff alternatively seeks certification of a statewide class, defined as:

> All consumer residents and/or domiciliaries of California who purchased organic milk or milk products from Safeway.

32.    Plaintiff is informed and believes that the Class consists of many thousands of persons throughout the United States, making individual joinder of all Class Members impracticable.

33.    Questions of law and fact are common to the Plaintiff Class and predominate over questions affecting only individual member, including, *inter alia*, the following:

a.    Whether the alleged conduct by Defendant violated laws as alleged in this Complaint;

b.    Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices by failing to disclose that the milk labeled as organic milk was not organic;

c.    Whether Defendant violated federal and/or state regulations by failing to disclose that the milk labeled as organic milk was not organic;

d.    Whether Plaintiff and the members of the Class were unconscionably induced into purchasing organic milk without adequate disclosures that the milk was not organic;

e.    Whether Defendant violated California law, including the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, §§ 17500, *et seq.*, and/or California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*;

f.    Whether Defendant made misrepresentations to Plaintiff and the members of the Class about milk labeled as organic;

CLASS ACTION COMPLAINT                    - 12 -

g.    Whether Plaintiff and the members of the Class are entitled to equitable and/or injunctive relief;

h.    Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiff and the members of the Class; and

i.    Whether Defendant was unjustly enriched by its deceptive practices.

34.    Plaintiff's claims are typical of the claims of the Class Members as described above; the claims arise form the same course of conduct by Safeway and the relief sought is common.

35.    Plaintiff will fairly and adequately represent and protect the interests of all Class Members. Plaintiff is represented by counsel competent and experienced in both consumer protection and class action litigation.

36.    Class certification is proper under Fed. R. Civ. P. 23(b)(1)(A), because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members and potentially establish incompatible standards of conduct for Defendant.

37.    Class certification is proper under Fed. R. Civ. P. 23(b)(1)(B) because the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interest of the other members not parties to these adjudications and/or substantially impair their ability to protect these interests.

38.    Class certification is proper under Fed. R. Civ. P. 23(b)(3), because common issue of law and fact predominate over any questions affecting only individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

39.    A class action is superior to other methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, because the economic damages suffered by the individual Class Members may be relatively modest, albeit significant, compared to the expense and burden of individual litigation, it would be impracticable

CLASS ACTION COMPLAINT                - 13 -

1   for Class Members to seek redress individually for the wrongful conduct alleged herein.  There will

2   be no difficulty in the management of this litigation as a class action.

3                      **VI.    CAUSES OF ACTION**

4                      **FIRST CAUSE OF ACTION**

5      **(California's Business & Professions Code §§ 17200, *et seq.*)**

6        40.    The preceding paragraphs of this Complaint are realleged and incorporated by

7   reference.  Plaintiff asserts this claim for violations of California's UCL, Bus. & Prof. Code §§

8   17200, *et seq.*, on behalf of himself and the members of the Class.

9        41.    Defendant's statements and representations constitute "unfair" trade practices that

10   have the capacity to and do deceive consumers, in violation of the UCL.

11        42.    All of the wrongful conduct alleged herein occurs and continues to occur in the

12   conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized

13   course of conduct that is repeated in the State of California (and throughout the United States) on

14   thousands (if not tens of thousands) of occasions daily.

15        43.    As a proximate result of Defendant's wrongful conduct, Plaintiff, and the members

16   of the Class have sustained damages by paying a higher price for milk labeled as organic that was

17   not organic.

18        44.    Plaintiff requests that this Court enter such orders or judgments as may be necessary

19   to restore to any person in interest any money which may have been acquired by means of such

20   unfair competition, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345, and

21   for such other relief as set forth in the Prayer for Relief.

22                  **SECOND CAUSE OF ACTION**

23                  **VIOLATIONS OF THE CLRA**

24              **(Cal. Civ. Code §§ 1750, *et seq.*)**

25        45.    The preceding paragraphs of this Complaint are realleged and incorporated by

26   reference.  Plaintiff asserts this claim for violations of the CLRA on behalf of himself and the

27   members of the Class.

28

CLASS ACTION COMPLAINT          - 14 -

46.    Plaintiff and the members of the Class are consumers who purchase goods (food products) from Defendant for personal, family, or household purposes.

47.    Representing that goods (including food products) have approval, characteristics, uses, or benefits which they do not have and advertising goods with intent not to sell them as advertised constitute unfair or deceptive trade practices under the provisions of the CLRA, Cal. Civ. Code §§ 1770(a)(5), (9), (14) and (17).

48.    Plaintiff and the members of the Class have all been directly and proximately injured by Defendant's conduct, and such injury includes the purchase of milk labeled as organic, but which was not organic, that they would not have purchased were they truthfully and fully informed of material facts concerning the fact that the milk was not organic.

49.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiff seeks an order enjoining Defendant from engaging in the methods, acts, or practices alleged herein.  Pursuant to Cal. Civ. Code § 1782, if Defendant does not rectify its illegal acts within 30 days, Plaintiff intends to amend this complaint to add claims for: a) actual damages; b) restitution of money to Plaintiff and class members; c) punitive damages; d) attorneys' fees and costs; and e) other relief that this Court deems proper.

### THIRD CAUSE OF ACTION

### FALSE AND MISLEADING ADVERTISING

### (Cal. Bus. & Prof. Code § 17500)

50.    The preceding paragraphs of this Complaint are realleged and incorporated by reference.  Plaintiff asserts this claim for violations of Cal. Bus. & Prof. Code § 17500 on behalf of himself and the members of the Class.

51.    In violation of Section 17500, in connection with its sales of non-organic milk, Defendant made or disseminated statements which are untrue or misleading, and which Defendant knew (or by the exercise of reasonable care should have known) to be untrue or misleading.

52.    As a result of the violations of California law alleged herein, Defendant has been, and will be, unjustly enriched at the expense of Plaintiff, the members of the Class and the general public.  Specifically, Defendant has been unjustly enriched by their receipt of monies from

CLASS ACTION COMPLAINT                                    - 15 -

consumers who purchased milk labeled organic that was not organic which is advertised and/or otherwise marketed in this State, and is promoted and sold by Defendant through advertising and marketing materials containing the false and misleading statements alleged herein.

53.     Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair competition, and for such other relief as set forth below.

## FOURTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

54.     The preceding paragraphs of this Complaint are realleged and incorporated by reference.  Plaintiff asserts this claim for negligent misrepresentation on behalf of himself and the members of the Class.

55.     Defendant owed a duty to Plaintiff and members of the Class to exercise reasonable case in making representations about organic milk.

56.     These representations were negligently and recklessly made to potential customers and the general public through uniform misbranding, concealment and non-disclosure, through mass media and point-of-sale advertising, and through other information prepared or disseminated by Defendant.  As a direct and proximate result of these misrepresentations, omissions and concealment, Plaintiff and the Class members have been damaged in and amount to be proven at trial.

57.     Defendant at all times knew that Plaintiff and the Class members relied (or should be presumed to have relied) upon the labeling and lack of labeling provided by Defendant, and the materiality of such labeling is established as a matter of state and federal Law.  Defendant's concealment, misbranding and non-disclosure were intended to influence consumers' purchasing decisions and were done with reckless disregard for the rights of consumers.  Plaintiff's and Class members' reliance was reasonably foreseeable by Defendant.

CLASS ACTION COMPLAINT                         - 16 -

## FIFTH CAUSE OF ACTION (IN THE ALTERNATIVE)

### DEFENDANT'S VIOLATION OF STATE CONSUMER PROTECTION ACTS

58.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

59.    Safeway had a statutory duty to refrain from unfair or deceptive acts or practices in the manufacture, promotion and sale of "organic" milk.

60.    Had Defendant not engaged in the deceptive conduct described above, Plaintiff and the Class Members would not have purchased Safeway's "organic" milk.

61.    Plaintiff believes that California law should apply nationwide.  However, if California law does not apply, Defendant's deceptive, unconscionable and/or fraudulent representations and material omissions to consumers and the public, including Plaintiff and the Class Members, constituted unfair and deceptive acts and practices in violation of the state consumer protection statutes listed below:

a.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code §§ 8-19-1, *et seq.*;

b.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. §§ 45.50.471, *et seq.*;

c.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. §§ 44-1522, *et seq.*;

d.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code §§ 4-88-101, *et seq.*;

e.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Civ. Code §§ 1770, *et seq.* and Cal Bus. & Prof. Code §§ 17200, *et seq.*;

f.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. §§ 6-1-105, *et seq.*;

g.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. §§ 2-1 10a, *et seq.*;

CLASS ACTION COMPLAINT                           - 17 -

1            h.      Defendant has engaged in unfair competition or unfair or deceptive acts or

2   practices in violation of 6 Del. Code §§ 2511, *et seq.* and 2531, *et seq.*;

3            i.      Defendant has engaged in unfair competition or unfair or deceptive acts or

4   practices in violation of D.C. Code §§ 28-3901, *et. seq.*;

5            j.      Defendant has engaged in unfair competition or unfair or deceptive acts or

6   practices in violation of Fla. Stat. §§ 501.201, *et seq.*;

7            k.      Defendant has engaged in unfair competition or unfair or deceptive acts or

8   practices in violation of Ga. Stat. §§ 10-1-372, *et seq.*, 10-1-392 and 10-1-420.

9            l.      Defendant has engaged in unfair competition or unfair or deceptive acts or

10  practices in violation of Haw. Rev. Stat. §§ 480-1, *et seq.*;

11           m.     Defendant has engaged in unfair competition or unfair or deceptive acts or

12  practices in violation of Idaho Code §§ 48-601, *et seq.*;

13           n.      Defendant has engaged in unfair competition or unfair or deceptive acts or

14  practices in violation of 815 ILCS §§ 505/1, *et seq.*;

15           o.      Defendant has engaged in unfair competition or unfair or deceptive acts or

16  practices in violation of Ind. Code Ann. §§ 24-5-0.5-1, *et seq.*;

17           p.      Defendant has engaged in unfair competition or unfair or deceptive acts or

18  practices in violation of Iowa Code §§ 714.16, *et seq.*;

19           q.      Defendant has engaged in unfair competition or unfair or deceptive acts or

20  practices in violation of Kan. Stat. §§ 50-623, *et seq.*;

21           r.      Defendant has engaged in unfair competition or unfair or deceptive acts or

22  practices in violation of Ky. Rev. Stat. §§ 367.170, *et seq.*;

23           s.      Defendant has engaged in unfair competition or unfair or deceptive acts or

24  practices in violation of La. Rev. Stat. §§ 51:1401, *et seq.*;

25           t.      Defendant has engaged in unfair competition or unfair or deceptive acts or

26  practices in violation of 5 Me. Rev. Stat. §§ 205A, *et seq.*;

27           u.      Defendant has engaged in unfair competition or unfair or deceptive acts or

28  practices in violation of Md. Com. Law Code §§ 13-101, *et seq.*;

CLASS ACTION COMPLAINT           - 18 -

1       v.     Defendant has engaged in unfair competition or unfair or deceptive acts or

2  practices in violation of Mass. Gen. L. Ch. 93 A, *et seq.*;

3       w.    Defendant has engaged in unfair competition or unfair or deceptive acts or

4  practices in violation of Mich. Comp. Laws Ann. §§ 445.90 1, *et seq.*;

5       x.     Defendant has engaged in unfair competition or unfair or deceptive acts or

6  practices in violation of Minn. Stat. §§ 325D.43, *et seq.*; 325 F.67, *et seq.*; and 325F.68, *et seq.*;

7       y.     Defendant has engaged in unfair competition or unfair or deceptive acts or

8  practices in violation of Miss. Code Ann. §§ 75-24-1, *et seq.*;

9       z.     Defendant has engaged in unfair competition or unfair or deceptive acts or

10  practices in violation of Vernon's Ann. Missouri Stat. §§ 407.010, *et seq.*;

11      aa.    Defendant has engaged in unfair competition or unfair or deceptive acts or

12  practices in violation of Mont. Code Ann. §§ 30-14-101, *et seq.*;

13      bb.    Defendant has engaged in unfair competition or unfair or deceptive acts or

14  practices in violation of Neb. Rev. Stat. §§ 59-1601, *et seq.*;

15      cc.    Defendant has engaged in unfair competition or unfair or deceptive acts or

16  practices in violation of Nev. Rev. Stat. Ann. §§ 598.0903, *et seq.*;

17      dd.    Defendant has engaged in unfair competition or unfair or deceptive acts or

18  practices in violation of N.H. Rev. Stat. §§ 358-A:1, *et seq.*;

19      ee.    Defendant has engaged in unfair competition or unfair or deceptive acts or

20  practices in violation of N.J. Rev. Stat. §§ 56:8-1, *et seq.*;

21      ff.     Defendant has engaged in unfair competition or unfair or deceptive acts or

22  practices in violation of N.M. Stat. §§ 57-12-1, *et seq.*;

23      gg.    Defendant has engaged in unfair competition or unfair or deceptive acts or

24  practices in violation of N.Y. Gen. Bus. Law §§ 349, *et seq.* and 350-e, *et seq.*;

25      hh.    Defendant has engaged in unfair competition or unfair or deceptive acts or

26  practices in violation of N.C. Gen. Stat. §§ 75-1.1, *et seq.*;

27      ii.     Defendant has engaged in unfair competition or unfair or deceptive acts or

28  practices in violation of N.D. Cent. Code §§ 51-12-01, *et seq.*, and 51-15-01, *et seq.*;

CLASS ACTION COMPLAINT          - 19 -

1      jj.     Defendant has engaged in unfair competition or unfair or deceptive acts or

2   practices in violation of Ohio Rev. Stat. §§ 1345.01, *et seq.*;

3      kk.     Defendant has engaged in unfair competition or unfair or deceptive acts or

4   practices in violation of 15 Okla. Stat. §§ 15 751, *et seq.*;

5      ll.     Defendant has engaged in unfair competition or unfair or deceptive acts or

6   practices in violation of Or. Rev. Stat. §§ 646.605, *et seq.*;

7      mm.    Defendant has engaged in unfair competition or unfair or deceptive acts or

8   practices in violation of 73 Pa. Stat. §§ 201-1, *et seq.*;

9      nn.     Defendant has engaged in unfair competition or unfair or deceptive acts or

10   practices in violation of R.I. Gen. Laws. §§ 6-13.1-1, *et seq.*;

11      oo.     Defendant has engaged in unfair competition or unfair or deceptive acts or

12   practices in violation of S.C. Code Laws §§ 39-5-10, *et seq.*;

13      pp.     Defendant has engaged in unfair competition or unfair or deceptive acts or

14   practices in violation of S.D. Codified Laws §§ 37-24-1, *et seq.*;

15      qq.     Defendant has engaged in unfair competition or unfair or deceptive acts or

16   practices in violation of Tenn. Code §§ 47-18-101, *et seq.*;

17      rr.     Defendant has engaged in unfair competition or unfair or deceptive acts or

18   practices in violation of Tex. Bus. & Com. Code §§ 17.41, *et seq.*;

19      ss.     Defendant has engaged in unfair competition or unfair or deceptive acts or

20   practices in violation of Utah Code §§ 13-11-1, *et seq.*;

21      tt.     Defendant has engaged in unfair competition or unfair or deceptive acts or

22   practices in violation of 9 Vt. §§ 2451, *et seq.*;

23      uu.     Defendant has engaged in unfair competition or unfair or deceptive acts or

24   practices in violation of Va. Code §§ 59.1-196, *et seq.*;

25      vv.     Defendant has engaged in unfair competition or unfair or deceptive acts or

26   practices in violation of Wash. Rev. Code. §§ 19.86.0 10, *et seq.*;

27      ww.    Defendant has engaged in unfair competition or unfair or deceptive acts or

28   practices in violation of West Virginia Code §§ 46A-6-101, *et seq.*;

CLASS ACTION COMPLAINT                        - 20 -

1          xx.     Defendant has engaged in unfair competition or unfair or deceptive acts or

2    practices in violation of Wis. Stat. §§ 100.20, *et seq.*; and

3          yy.     Defendant has engaged in unfair competition or unfair or deceptive acts or

4    practices in violation of Wyo. Stat. §§ 40-12-101, *et seq.*

5          62.     Plaintiff and the Class Members relied upon Defendant's misrepresentations and/or

6    omissions (as described herein) in purchasing Defendant's "organic" milk.

7          63.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the

8    Class Members have been damaged by, *inter alia,* paying a premium price for "organic" milk,

9    when Plaintiff and the Class Members received non-organic milk.

10         64.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the

11   Class are entitled to compensatory damages, treble damages, attorneys' fees and cost of this suit.

12                              **SIXTH CAUSE OF ACTION**

13                         **COMMON LAW UNJUST ENRICHMENT**

14         65.     This Cause of Action is pled in the alternative to all contract-based claims and/or

15   causes of action at law.

16         66.     Defendant has received a benefit from Plaintiff and the Class Members in the form

17   of the prices Plaintiff and the Class Members paid for Defendant's "organic" milk or milk products

18   during the relevant time period.

19         67.     Defendant is aware of its receipt of the above-described benefit.

20         68.     Defendant received the above-described benefit to the detriment of Plaintiff and

21   each of the other members of the Class.

22         69.     Defendant continues to retain the above-described benefit to the detriment of

23   Plaintiff and the Class Members.

24         70.     Under the circumstances, it would be inequitable for Defendant to retain the above

25   described benefit.

26         71.     As a result of Defendant's unjust enrichment, Plaintiff and the Class Members have

27   sustained damages in an amount to be determined at trial and seek full disgorgement and restitution

28

CLASS ACTION COMPLAINT                          - 21 -

1    of Defendant's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful or

2    wrongful conduct alleged above.

3                              **SEVENTH CAUSE OF ACTION**

4                              **BREACH OF EXPRESS WARRANTY**

5        72.    Plaintiff hereby incorporates the preceding paragraphs by reference.

6        73.    Aurora sold its "organic" milk or milk products to retailers who sold that milk or

7    milk products to Plaintiff and the Class Members.

8        74.    At all times relevant to this action, Defendant falsely represented that its milk or

9    milk products were "organic" when they were not produced in compliance with the applicable

10   organic certification requirements, laws, standards and regulations.

11       75.    By its statements and representations about the "organic" status of its milk or milk

12   products, Defendant warranted the production process and condition of that "organic" milk or milk

13   products purchased by Plaintiff and the Class Members.

14       76.    Defendant made these representations and warranty statements to induce Plaintiff

15   and the Class Members to purchase Defendant's "organic" milk or milk products or was a material

16   factor in the decision of Plaintiff and the Class Members to purchase the milk or the milk products.

17       77.    Due to its conduct alleged herein, Defendant's "organic" milk or milk products

18   failed to conform to each of these warranties.

19       78.    As a result of Defendant's conduct, Plaintiff and the Class Members have been

20   damaged.

21       79.    Within a reasonable time after Plaintiff and the Class Members knew or should have

22   known of the failure to conform, Plaintiff, individually and on behalf of the Class, placed

23   Defendant on notice thereof.

24                              **PRAYER FOR RELIEF**

25       WHEREFORE, Plaintiff, individually and on behalf all others similarly situated,

26   respectfully requests that this Court enter a judgment against Defendant and in favor of Plaintiff,

27   and grant the following relief:

28

CLASS ACTION COMPLAINT                    - 22 -

1    A.    Determine that this action may be maintained as a class action with respect to a

2    national class or with subclasses corresponding to the several states' laws, or, in the alternative, a

3    California statewide class, pursuant to the appropriate subsections of Fed. R. Civ. P. 23; that the

4    court certify a class action with respect to particular issues if appropriate, and that the Court

5    designate and appoint Plaintiff and his counsel to serve as Class Representative and Class Counsel;

6    B.    Declare, adjudge and decree the conduct of the Defendant as alleged herein to be

7    unlawful;

8    C.    Grant Plaintiff and all Class Members awards of actual, compensatory, punitive

9    and/or exemplary damages in such amount to be determined at trial and as provided by applicable

10   law;

11   D.    Grant Plaintiff and all Class Members awards of statutory damages, attorney's fees

12   and costs pursuant to the various Consumer Protection Acts of the fifty states;

13   E.    Grant Plaintiff and the Class Members their costs of suit, including reasonable

14   attorneys' fees, and expenses as provided by law; and

15   F.    Grant Plaintiff and the Class Members such other, further, and different relief as the

16   nature of the case may require or as may be determined to be just, equitable, and proper by this

17   Court.

18                              **DEMAND FOR TRIAL BY JURY**

19       Plaintiff, by counsel, requests a trial by jury on those causes of actions set forth herein.

20   DATED: December 5, 2007              HAGENS BERMAN SOBOL SHAPIRO LLP

21

22                              By _____

23                                   SHANA E. SCARLETT

24                              715 Hearst Avenue, Suite 202
                                Berkeley, CA  94710
25                              Telephone: (510) 725-3000
                                Facsimile: (510) 725-3001
26                              shanas@hbsslaw.com

27

28

CLASS ACTION COMPLAINT                        - 23 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Boulevard, Suite B
Oak Park, IL  60301
Telephone: (708) 776-5600
Facsimile: (708) 776-5601
beth@hbsslaw.com

Attorneys for Plaintiff

CLASS ACTION COMPLAINT                         - 24 -

# EXHIBIT B

1

LATHAM & WATKINS LLP
Viviann C. Stapp (Bar No. 233036)

2

505 Montgomery Street, Suite 2000
San Francisco, California 94111

3

Telephone: (415) 391-0600
Facsimile: (415) 395-8095

4

Email: viviann.stapp@lw.com

5

Mark S. Mester (Ill. Bar No. 6196140) (*pro hac vice*)
Livia M. Kiser (Ill. Bar No. 6275283) (*pro hac vice*)

6

Sears Tower, Suite 5800
233 South Wacker Drive

7

Chicago, Illinois 60606
Telephone: (312) 876-7700

8

Facsimile: (312) 993-9767
Email: livia.kiser@lw.com

9

10

*Attorneys for Defendant Safeway Inc.*

11

12

**UNITED STATES DISTRICT COURT FOR THE**

13

**NORTHERN DISTRICT OF CALIFORNIA**

14

**SAN FRANCISCO DIVISION**

15

16

THEADORA KING, individually, and on behalf of those similarly situated,

CASE NO: 08-00999-EDL

17

Plaintiff,

_____

18

19

v.

**SAFEWAY INC.'S LOCAL RULE 3-13 SUPPLEMENTAL NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS**

20

SAFEWAY INC.,

21

Defendant.

22

23

24

25

26

1    Defendant Safeway Inc. ("Safeway"), by its counsel, hereby provides, pursuant to Local

2  Rule 3-13, supplemental notice of the pendency of other actions or proceedings to advise the

3  court of additional actions not previously identified in Aurora's prior notice (dkt #5) and of the

4  status of the actions previously identified.  This action, which involves Safeway's use of the

5  "USDA Organic" seal on cartons of organic milk supplied to Safeway by Aurora Dairy

6  Corporation (d/b/a Aurora Organic Dairy), is related to four actions that have been consolidated

7  and transferred to the Eastern District of Missouri by the Judicial Panel on Multidistrict

8  Litigation ("Panel"), as well as fourteen additional actions that have been identified by the Panel

9  as potential tag-along actions involving common questions of fact, pursuant to a February, 20,

10  2008 Transfer Order, a Conditional Transfer Order entered by the Panel on February 26, 2008,

11  and subsequent Notice to the Panel pursuant to Rule 7.5 of the Rules of Procedure of the Judicial

12  Panel on Multidistrict Litigation, 199 F.R.D. 425 (2001), filed concurrently herewith.  See

13  Declaration of Livia Kiser ("Kiser Decl.") at Ex. A (Feb. 20, 2008 Trans. Order), Ex. B (Feb. 26,

14  2008 Conditional Trans. Order), Ex. C (Notice).  The Clerk of the Panel recently indicated the

15  Panel will issue a Conditional Transfer Order for this action within the next several days.  Kiser

16  Decl. at ¶ 5.

17    In addition, counsel for Plaintiff in this action serves as counsel for plaintiffs in four other

18  actions, all of which are subject to the February 26, 2008 Conditional Transfer Orders entered by

19  the Panel in this case.  See dkt. #5; see also Kiser Decl. at ¶ 6.

20

| PARTIES | COURT |
|---|---|
| Plaintiff:<br><br>Robert E. Koch, individually and on behalf of those similarly situated<br><br>Defendant:<br><br>Aurora Dairy Corporation, d/b/a Aurora Organic Dairy | E.D. Missouri, Eastern Division<br><br>Case No. 4:08-cv-254<br>MDL 1907 |

2

1

2    Dated:  March 7, 2008                          Respectfully submitted,

3                                                   COUNSEL FOR DEFENDANT
4                                                   SAFEWAY INC.

5                                                   By:_____/s/Viviann C. Stapp_____
6                                                   LATHAM & WATKINS LLP
                                                    Viviann C. Stapp (Cal. Bar No. 233036)
7                                                   505 Montgomery Street, Suite 1900
                                                    San Francisco, California 94111-2562
8                                                   Telephone: (415) 391-0600
                                                    Facsimile: (415) 395-8095
9                                                   Email: viviann.stapp@lw.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                    3

1   LATHAM & WATKINS LLP
    Viviann C. Stapp (Cal. Bar No. 233036)
2   505 Montgomery Street, Suite 2000
    San Francisco, California 94111-2562
3   Telephone: (415) 391-0600
    Facsimile: (415) 395-8095
4   Email: viviann.stapp@lw.com

5

    Mark S. Mester (Ill. Bar No. 6196140) (*pro hac vice*)
6   Livia M. Kiser (Ill. Bar No. 6275283) (*pro hac vice*)
    233 South Wacker Drive
7   Suite 5800 Sears Tower
    Chicago, Illinois 60606
8   Telephone: (312) 876-7700
    Facsimile: (312) 993-9767
9   Email: mark.mester@lw.com
            livia.kiser@lw.com
10
    *Attorneys for Defendant*
11  *Safeway Inc.*

12

13

14
                    **UNITED STATES DISTRICT COURT FOR THE**
15
                    **NORTHERN DISTRICT OF CALIFORNIA**
16
                    **SAN FRANCISCO DIVISION**
17

18
    THEADORA KING, individually, and on          CASE NO:  CV-08-0999-EDL
19  behalf of those similarly situated,

20              Plaintiff,                        _____

21         v.
                                                 **DECLARATION OF LIVIA M. KISER IN**
22                                               **SUPPORT OF SAFEWAY INC.'S LOCAL**
    SAFEWAY INC.,                                **RULE 3-13 NOTICE OF PENDENCY OF**
23                                               **OTHER ACTIONS OR PROCEEDINGS**
                Defendant.
24  _____

25

26

27

28
                                                 CASE NO. CV-08-0999-EDL

I, Livia M. Kiser, declare and state as follows:

1.      I am an attorney admitted to practice law in Illinois and an associate with the law firm of Latham & Watkins LLP, counsel for Defendant Safeway Inc. ("Defendant" or "Safeway"), a retailer of Aurora Dairy Corporation, d/b/a Aurora Organic Dairy ("Aurora").  This declaration is filed in support of Safeway Inc.'s Local Rule 3-13 Notice Of Pendency Of Other Actions Or Proceedings.  I have personal and firsthand knowledge of the facts stated in this declaration.  If called upon to do so, I could and would testify competently thereto.

2.      Attached hereto as Exhibit A is a true and correct copy of the Transfer Order entered on February 20, 2008 by the Judicial Panel on Multidistrict Litigation ("Panel") regarding In re: Aurora Dairy Corporation Organic Milk Marketing and Sales Practice Litigation, MDL Docket No. 1907.

3.      Attached hereto as Exhibit B is a true and correct copy of the Conditional Transfer Orders entered on February 26, 2008 by the Judicial Panel on Multidistrict Litigation regarding In re: Aurora Dairy Corporation Organic Milk Marketing and Sales Practice Litigation, MDL Docket No. 1907.

4.      Attached hereto as Exhibit C is a true and correct copy of the February 26, 2008 letter from Mark S. Mester of Latham & Watkins LLP to the Clerk of the Judicial Panel on Multidistrict Litigation ("Panel") providing notice to the Panel of additional actions pursuant to Rule 7.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425 (2001).

5.      On March 6, 2008, the Clerk of the Panel advised us that a Conditional Transfer Order for this action would issue within the next several days.

6.     Counsel for plaintiffs in this action are also counsel for plaintiffs in the following actions, all of which are subject to the February 26, 2008 Conditional Transfer Order: <u>Hesse v. Costco Wholesale Corp.</u>, No. C07-1975-MJP (W.D. Wash.) before Honorable Marsha J. Pechman; <u>Riley v. Safeway Inc.</u>, No. 07-cv-06174-JCS (N.D. Cal.) before Honorable Joseph C. Spero; <u>Bowen v. Wal-Mart Stores, Inc.</u>, No. 4:08-cv-00010-JLH (E.D. Ark.) before Honorable J. Leon Holmes; and <u>Tysseling-Mattiace v. Wild Oats Markets, Inc.</u>, No. 07-cv-02622-WYD-BNB (D. Col.) before Honorable Wiley Y. Daniel.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: March 7, 2008                           Respectfully submitted,

Livia M. Kiser

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

2

Exhibit B -35

CASE NO. CV-08-0999-EDL
DEC. LIVIA M. KISER

# EXHIBIT A

A CERTIFIED TRUE COPY

ATTEST

By April Layne on Feb 20, 2008

FOR THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**Feb 20, 2008**

FILED
CLERK'S OFFICE

**IN RE: AURORA DAIRY CORP. ORGANIC
MILK MARKETING AND SALES
PRACTICES LITIGATION**

MDL No. 1907

### TRANSFER ORDER

    **Before the entire Panel**[*]:  Plaintiffs in the District of Colorado *Freyre* action have moved, pursuant to 28 U.S.C. § 1407, for centralization of this litigation in the District of Colorado.  Defendant in all actions, Aurora Dairy Corp. (Aurora), opposes plaintiffs' motion but, alternatively, supports selection of the District of Colorado as the transferee forum.  Plaintiffs in the District of Colorado *Still* action and two potential tag-along actions pending in the District of Colorado support centralization in the District of Colorado.  Plaintiffs in the Eastern District of Missouri action support centralization in the Eastern District of Missouri.

    This litigation currently consists of four actions listed on Schedule A and pending, respectively, in the following three districts: two actions in the District of Colorado, and an action each in the Southern District of Florida and the Eastern District of Missouri.[1]

    On the basis of the papers filed and hearing session held, we find that these four actions involve common questions of fact, and that centralization under Section 1407 in the Eastern District of Missouri will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.  Plaintiffs in all four actions, which are brought on behalf of putative nationwide classes, contend that Aurora misled them into believing that the milk that they purchased was "organic" or "USDA organic" when in fact the milk failed to meet organic standards, including those established by the U.S. Department of Agriculture and the federal Organic Foods Production Act, 7 U.S.C. § 6501, *et seq*.  As a result, plaintiffs bring a variety of state law claims, asserting that, *inter alia*, they have paid artificially high prices for Aurora's organic milk.  Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings (particularly with respect to the issue of class certification); and conserve the resources of the parties, their counsel and the judiciary.

---

    [*] Judge Heyburn took no part in the disposition of this matter.

    [1] In addition to the four actions now before the Panel, the parties have notified the Panel of eleven related actions pending, respectively, as follows: four actions in the District of Colorado, two actions in the Northern District of California, and an action each in the Eastern District of Arkansas, the District of Minnesota, the Eastern District of New York, the Southern District of New York, and the Western District of Washington.  These actions and any other related actions will be treated as potential tag-along actions.  *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

- 2 -

Aurora opposes centralization, asserting that, *inter alia*, transfer of the actions under Section 1407 is unnecessary because voluntary alternatives to Section 1407 are superior. We respectfully disagree. Transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: (1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F.Supp. 1403, 1404 (J.P.M.L. 1976); and (2) ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties and the judiciary.

We are persuaded that the Eastern District of Missouri, where the first-filed action is pending, is an appropriate transferee forum for this litigation. Given the geographic dispersal of the constituent actions and the potential tag-along actions, the Eastern District of Missouri offers a relatively convenient forum for this litigation.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the Eastern District of Missouri are transferred to the Eastern District of Missouri and, with the consent of that court, assigned to the Honorable E. Richard Webber for coordinated or consolidated pretrial proceedings with the action listed on Schedule A and pending in that district.

PANEL ON MULTIDISTRICT LITIGATION

_____
D. Lowell Jensen
Acting Chairman

| | |
|---|---|
| John G. Heyburn II, Chairman[*] | J. Frederick Motz |
| Robert L. Miller, Jr. | Kathryn H. Vratil |
| David R. Hansen | Anthony J. Scirica |

**IN RE: AURORA DAIRY CORP. ORGANIC**
**MILK MARKETING AND SALES**
**PRACTICES LITIGATION**                                              MDL No. 1907

## SCHEDULE A

### District of Colorado

Rebecca Freyre, et al. v. Aurora Dairy Corp., C.A. No. 1:07-2183
Mona Still, et al. v. Aurora Dairy Corp., C.A. No. 1:07-2188

### Southern District of Florida

Maya Fiallos v. Aurora Dairy Corp., C.A. No. 1:07-22748

### Eastern District of Missouri

Kristine Mothershead, et al. v. Aurora Dairy Corp., C.A. No. 4:07-1701

# EXHIBIT B

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

| CHAIRMAN: | MEMBERS: | | DIRECT REPLY TO: |
|---|---|---|---|
| Judge John G. Heyburn II<br>United States District Court<br>Western District of Kentucky | Judge D. Lowell Jensen<br>United States District Court<br>Northern District of California | Judge Kathryn H. Vratil<br>United States District Court<br>District of Kansas | Jeffery N. Lüthi<br>Clerk of the Panel<br>One Columbus Circle, NE<br>Thurgood Marshall Federal<br>Judiciary Building |
| | Judge J. Frederick Motz<br>United States District Court<br>District of Maryland | Judge David R. Hansen<br>United States Court of Appeals<br>Eighth Circuit | Room G-255, North Lobby<br>Washington, D.C. 20002 |
| | Judge Robert L. Miller, Jr.<br>United States District Court<br>Northern District of Indiana | Judge Anthony J. Scirica<br>United States Court of Appeals<br>Third Circuit | Telephone: [202] 502-2800<br>Fax:       [202] 502-2888<br>http://www.jpml.uscourts.gov |

February 26, 2008

FEB 2 6 2008

TO INVOLVED COUNSEL

Re:  MDL No. 1907 -- IN RE: Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation

(See Attached CTO-1)

Dear Counsel:

Attached hereto is a copy of a conditional transfer order filed today by the Panel involving the above-captioned matter. This matter is transferred pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001). Copies of Rule 5.2, dealing with service, and Rules 7.4 and 7.5, regarding "tag-along" actions, are attached for your convenience.

Inasmuch as there is an unavoidable time lag between notification of the pendency of the tag-along action and the filing of a conditional transfer order, counsel are required by Rule 7.4(b) to notify this office **BY FACSIMILE**, at (202) 502-2888, of any official changes in the status of the tag-along action. These changes could involve dismissal of the action, remand to state court, transfer to another federal court, etc., as indicated by an order filed by the district court. Your cooperation would be appreciated.

**NOTICE OF OPPOSITION DUE ON OR BEFORE:** ___March 12, 2008___ **(4 p.m. EST)**
(Facsimile transmission is suggested.)

If you are considering opposing this conditional transfer order, please review Rules 7.4 and 7.5 of the Panel <u>Rules</u> before filing your Notice of Opposition.

A list of involved counsel is attached.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

By _____
Deputy Clerk

Attachments

JPML Form 39

Exhibit B-41

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: AURORA DAIRY CORP. ORGANIC
MILK MARKETING AND SALES
PRACTICES LITIGATION

MDL No. 1907

(SEE ATTACHED SCHEDULE)

## CONDITIONAL TRANSFER ORDER (CTO-1)

On February 20, 2008, the Panel transferred three civil actions to the United States District Court for the Eastern District of Missouri for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* ___F.Supp.2d___ (J.P.M.L. 2008). With the consent of that court, all such actions have been assigned to the Honorable E. Richard Webber.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Missouri and assigned to Judge Webber.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Missouri for the reasons stated in the order of February 20, 2008, and, with the consent of that court, assigned to the Honorable E. Richard Webber.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Missouri. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Luthi
Clerk of the Panel

Exhibit B-42

IN RE: AURORA DAIRY CORP. ORGANIC
MILK MARKETING AND SALES
PRACTICES LITIGATION

MDL No. 1907

## SCHEDULE CTO-1 - TAG-ALONG ACTIONS

**DIST. DIV. C.A. #**          **CASE CAPTION**

ARKANSAS EASTERN
  ARE 4  08-10          Paul Bowen v. Wal-Mart Stores, Inc.

CALIFORNIA NORTHERN
  CAN 3  07-5331        Brenda Gallardo v. Aurora Dairy Corp.
  CAN 3  07-6174        Shawn Riley v. Safeway, Inc.

COLORADO
  CO 1  07-2285         Elizabeth Cockrell v. Aurora Dairy Corp.
  CO 1  07-2449         Jim Snell, et al. v. Aurora Dairy Corp., et al.
  CO 1  07-2622         Vicki M. Tysseling-Mattiace v. Wild Oats Markets, Inc.
  CO 1  07-2625         Margot West, et al. v. Aurora Dairy Corp.

MINNESOTA
  MN 0  07-4755         Patrick Hudspeth, et al. v. Target Corp.

NEW YORK EASTERN
  NYE 2  07-4425        Ilsa Lee Kaye v. Aurora Dairy Corp.

NEW YORK SOUTHERN
  NYS 1  07-9418        Hillary White, et al. v. Aurora Dairy Corp.

WASHINGTON WESTERN
  WAW 2  07-1975        Channing Hesse v. Costco Wholesale Corp.

Exhibit B -43

RULE 5.2:    SERVICE OF PAPERS FILED

(a)    All papers filed with the Clerk of the Panel shall be accompanied by proof of previous or simultaneous service on all other parties in all actions involved in the litigation. Service and proof of service shall be made as provided in Rules 5 and 6 of the Federal Rules of Civil Procedure. The proof of service shall indicate the name and complete address of each person served and shall indicate the party represented by each. If a party is not represented by counsel, the proof of service shall indicate the name of the party and the party's last known address. The proof of service shall indicate why any person named as a party in a constituent complaint was not served with the Section 1407 pleading. The original proof of service shall be filed with the Clerk of the Panel and copies thereof shall be sent to each person included within the proof of service. After the "Panel Service List" described in subsection (d) of this Rule has been received from the Clerk of the Panel, the "Panel Service List" shall be utilized for service of responses to motions and all other filings. In such instances, the "Panel Service List" shall be attached to the proof of service and shall be supplemented in the proof of service in the event of the presence of additional parties or subsequent corrections relating to any party, counsel or address already on the "Panel Service List."

(b)    The proof of service pertaining to motions for transfer of actions pursuant to 28 U.S.C. §1407 shall certify that copies of the motions have been mailed or otherwise delivered for filing to the clerk of each district court in which an action is pending that will be affected by the motion. The proof of service pertaining to a motion for remand pursuant to 28 U.S.C. §1407 shall certify that a copy of the motion has been mailed or otherwise delivered for filing to the clerk of the Section 1407 transferee district court in which any action affected by the motion is pending.

(c)    Within eleven days of filing of a motion to transfer, an order to show cause or a conditional transfer order, each party or designated attorney shall notify the Clerk of the Panel, in writing, of the name and address of the attorney designated to receive service of all pleadings, notices, orders and other papers relating to practice before the Judicial Panel on Multidistrict Litigation. Only one attorney shall be designated for each party. Any party not represented by counsel shall be served by mailing such pleadings to the party's last known address. Requests for an extension of time to file the designation of attorney shall not be granted except in extraordinary circumstances.

(d)    In order to facilitate compliance with subsection (a) of this Rule, the Clerk of the Panel shall prepare and serve on all counsel and parties not represented by counsel, a "Panel Service List" containing the names and addresses of the designated attorneys and the party or parties they represent in the actions under consideration by the Panel and the names and addresses of the parties not represented by counsel in the actions under consideration by the Panel. After the "Panel Service List" has been received from the Clerk of the Panel, notice of subsequent corrections relating to any party, counsel or address on the "Panel Service List" shall be served on all other parties in all actions involved in the litigation.

(e)    If following transfer of any group of multidistrict litigation, the transferee district court appoints liaison counsel, this Rule shall be satisfied by serving each party in each affected action and all liaison counsel. Liaison counsel designated by the transferee district court shall receive copies of all Panel orders concerning their particular litigation and shall be responsible for distribution to the parties for whom he or she serves as liaison counsel.

Exhibit B-44

Case 3:08-cv-00999-EDL    Document 22-2    Filed 03/07/2008    Page 12 of 18

(a)    Upon learning of the pendency of a potential "tag-along action," as defined in Rule 1.1 of these Rules, an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court on the basis of the prior hearing session(s) and for the reasons expressed in previous opinions and orders of the Panel in the litigation. The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer, shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

(b)    Parties to an action subject to a conditional transfer order shall notify the Clerk of the Panel within the fifteen-day period if that action is no longer pending in its transferor district court.

(c)    Any party opposing the transfer shall file a notice of opposition with the Clerk of the Panel within the fifteen-day period. If a notice of opposition is received by the Clerk of the Panel within this fifteen-day period, the Clerk of the Panel shall not transmit said order to the clerk of the transferee district court until further order of the Panel. The Clerk of the Panel shall notify the parties of the briefing schedule.

Case 3:08-cv-00999-EDL    Document 22-2    Filed 03/07/2008    Page 13 of 18

(d)    Within fifteen days of the filing of its notice of opposition, the party opposing transfer shall file a motion to vacate the conditional transfer order and brief in support thereof. The Chairman of the Panel shall set the motion for the next appropriate hearing session of the Panel. Failure to file and serve a motion and brief shall be treated as withdrawal of the opposition and the Clerk of the Panel shall forthwith transmit the order to the clerk of the transferee district court.

(e)    Conditional transfer orders do not become effective unless and until they are filed with the clerk of the transferee district court.

(f)    Notices of opposition and motions to vacate such orders of the Panel and responses thereto shall be governed by Rules 5.12, 5.2, 7.1 and 7.2 of these Rules.

RULE 7.5:    MISCELLANEOUS PROVISIONS CONCERNING "TAG-ALONG ACTIONS"

(a)    Potential "tag-along actions" filed in the transferee district require no action on the part of the Panel and requests for assignment of such actions to the Section 1407 transferee judge should be made in accordance with local rules for the assignment of related actions.

(b)    Upon learning of the pendency of a potential "tag-along action" and having reasonable anticipation of opposition to transfer of that action, the Panel may direct the Clerk of the Panel to file a show cause order, in accordance with Rule 7.3 of these Rules, instead of a conditional transfer order.

(c)    Failure to serve one or more of the defendants in a potential "tag-along action" with the complaint and summons as required by Rule 4 of the Federal Rules of Civil Procedure does not preclude transfer of such action under Section 1407. Such failure, however, may be submitted by such a defendant as a basis for opposing the proposed transfer if prejudice can be shown. The inability of the Clerk of the Panel to serve a conditional transfer order on all plaintiffs or defendants or their counsel shall not render the transfer of the action void but can be submitted by such a party as a basis for moving to remand as to such party if prejudice can be shown.

(d)    A civil action apparently involving common questions of fact with actions under consideration by the Panel for transfer under Section 1407, which was either not included in a motion under Rule 7.2 of these Rules, or was included in such a motion that was filed too late to be included in the initial hearing session, will ordinarily be treated by the Panel as a potential "tag-along action."

(e)    Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

Exhibit B - 45

IN RE: AURORA DAIRY CORP. ORGANIC
MILK MARKETING AND SALES
PRACTICES LITIGATION

MDL No. 1907

## INVOLVED COUNSEL LIST (CTO-1)

Eric A. Bartsch
STOEL RIVES LLP
33 South Sixth Street
Suite 4200
Minneapolis, MN 55402

Joseph Henry Bates III
CAULEY BOWMAN CARNEY &
WILLIAMS LLP
P.O. Box 25438
Little Rock, AR 72221-5438

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO
LLP
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101

Garrett D. Blanchfield Jr
REINHARDT WENDORF &
BLANCHFIELD
332 Minnesota Street
Suite E-1250
St. Paul, MN 55101

Robert M. Bramson
BRAMSON PLUTZIK MAHLER &
BIRKHAEUSER LLP
2125 Oak Grove Road
Suite 120
Walnut Creek, CA 94598

David J. Burman
PERKINS COIE LLP
1201 Third Avenue
Suite 4800
Seattle, WA 98101-3099

Katherine A. Campbell
5646 Milton Street
Suite 211
Dallas, TX 75206

Robert B. Carey
CAREY LAW FIRM
2301 East Pikes Peak
Colorado Springs, CO 80909

Jay W. Connolly
SEYFARTH SHAW LLP
560 Mission Street
#3100
San Francisco, CA 94105-2930

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO
LLP
820 North Boulevard
Suite B
Oak Park, IL 60301

Philip E. Kaplan
KAPLAN BREWER MAXEY &
HARALSON PA
Metro Centre Mall
415 Main Street
Little Rock, AR 72201-3801

Livia Anne Kiser
LATHAM & WATKINS LLP
233 S. Wacker Drive
Suite 5800
Chicago, IL 60606

Daniel Kurowski
HAGENS BERMAN SOBOL SHAPIRO
LLP
820 North Boulevard
Suite B
Oak Park, IL 20302

Exhibit B -46

MDL No. 1907 - Involved Counsel List (CTO-1) (Continued)

Exhibit B-47

Christopher Lovell
LOVELL STEWART HALEBIAN LLP
500 Fifth Avenue
Floor 58
New York, NY 10110

Christopher A. Moeller
PRICE WAICUKAUSKI & RILEY LLC
The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN 46204

William O. Reckler
LATHAM & WATKINS LLP
885 Third Avenue
Suite 1000
New York, NY 10022

Tracy D. Rezvani
FINKELSTEIN THOMPSON LLP
1050 30th Street, N.W.
Washington, DC 20007

Richard P. Rouco
WHATLEY DRAKE & KALLAS LLC
2001 Park Place, North
P.O. Box 10647
Birmingham, AL 35202-0647

Lee F. Sachnoff
KRENDL KRENDL SACHNOFF & WAY
PC
370 17th Street
Suite 5350
Denver, CO 80202

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO
LLP
715 Hearst Avenue
Suite 202
Berkeley, CA 94710

Harry Shulman
MILLS LAW FIRM
145 Marina Boulevard
San Rafael, CA 94901

Kip B. Shuman
SHUMAN & BERENS LLP
801 East 17th Avenue
Denver, CO 80218-1417

Viviann C. Stapp
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-2562

Daniel F. Wake
SANDER INGEBRETSEN & PARISH PC
633 Seventeenth Street
#1900
Denver, CO 80202

Joe R. Whatley Jr.
WHATLEY DRAKE & KALLAS LLC
1540 Broadway
37th Floor
New York, NY 10036

# EXHIBIT C

**Mark S. Mester**
Direct Dial: +312.876.7623
Mark.Mester@lw.com

# LATHAM&WATKINS LLP

Sears Tower, Suite 5800
233 S. Wacker Dr.
Chicago, Illinois 60606
Tel: +1.312.876.7700  Fax: +1.312.993.9767
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

February 26, 2008

**BY FEDERAL EXPRESS**

Jeffery N. Lüthi
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Room G-255, North Lobby
Washington, D.C. 20002-8004

> Re:  MDL No. 1907:  In re Aurora Dairy Corporation
> Organic Milk Marketing and Sales Practice Litigation

Dear Mr. Lüthi:

We received the Transfer Order entered February 20, 2008 by the Judicial Panel on Multidistrict Litigation ("Panel") transferring and consolidating the four actions listed on the attached Schedule.  See Feb. 20, 2008 Transfer Order, attached hereto.  We further note that the Panel identified an additional eleven related actions for which we understand the Clerk of the Panel will be issuing conditional transfer orders in the near term.  See id. at 1 n.1.

Pursuant to Rule 7.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425 (2001), we have identified an additional three actions for which conditional transfer orders should issue.  These actions were initially filed in state court but have since been removed to federal court.  The complaints (for which the notices of removal, without exhibits, are also provided) are attached, without exhibits.  The actions themselves are as follows:

- DiSimone v. Aurora Dairy Corp. et al., Case No. CV-08-0746-DSF (C.D. Cal. Feb. 4, 2008);

- Cowan v. Aurora Dairy Corp. et al., Case No. 1:08-CV-0157-RLY-WTL (S.D. Ind. Feb. 6, 2008); and

- King v. Safeway, Case No. CV-08-999 (N.D. Cal. Feb. 19, 2008).

LATHAM&WATKINS LLP

Please feel free to contact me at (312) 876-7623 if you have any questions or should you require any further information.

Respectfully submitted,

Mark S. Mester
of LATHAM & WATKINS LLP

Enclosures

cc:    Counsel on attached Service List (w/Enclosures)

# EXHIBIT C

Exhibit C - 51

Case3:08-cv-00099-EMC   Document165-4   Filed02/09/2008   Page54 of 526

LATHAM & WATKINS LLP
  Viviann C. Stapp (Bar No. 233036)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: viviann.stapp@lw.com

*Attorney for Defendant Safeway Inc.*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| THEADORA KING, individually, and on behalf of those similarly situated, | CASE NO: |
| Plaintiff, | |
| v. | **SAFEWAY INC.'S** |
| SAFEWAY INC., | **LOCAL RULE 3-14 NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS** |
| Defendant. | |

1   Defendant Safeway Inc. ("Safeway"), by its counsel, hereby provides,

2   pursuant to Local Rule 3-14, notice of the pendency of other actions or

3   proceedings.  This action is related to several actions that are currently before the

4   Judicial Panel on Multidistrict Litigation and other courts and that involve the use

5   of the "USDA Organic" seal.

| PARTIES | COURT |
|---------|-------|
| Plaintiffs:<br>Kristine Mothershead and Leonie Lloyd, individually and on behalf of all others similarly situated<br><br>Defendant:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | E.D. Missouri, Eastern Division<br>Case No. 4:07-cv-01701-CAS |
| Plaintiffs:<br>Maya Fiallos, individually and on behalf of all others similarly situated<br><br>Defendant:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | S.D. Florida, Southern Division<br>Case No. 1:07-cv-22748-AJ |
| Plaintiffs:<br>Rebecca and Fernando Freyre, on behalf of themselves and all others similarly situated<br><br>Defendant:<br>Aurora Dairy Corporation | D. Colorado<br>Case No. 1:07-cv-02183-EWN-CBS |
| Plaintiffs:<br>Mona Still, Helen Phillips, Eve Hana, Jeanmarie Zirger, Kim King, Noelle Fincham, Oksana Jensen, Gabriela Waschewsky, Laurelanne Davis, Debbie Millikan, Joan Scheutz, Sandie Regan, Steve Shriver, Mary Elbertai, Eileen Ptak, Cynthia Roche-Cotter, Kristen Finnegan, Amy Forsman, Joy Beckner, Naomi Mardock, Olive Knaus, Liana Hoodes, Donita Robinson, Ilene Rachford, Lisa Hopkins, Caryn Poirier, Erin Diserens, Tammy Coselli, Debra Haines, Debra Schmidt, Hans Kueck<br><br>Defendant:<br>Aurora Dairy Corporation, d/b/a Aurora Organic Dairy | D. Colorado<br>Case No. 1:07-cv-02188-WDM |

1

Exhibit C - 53

| PARTIES | COURT |
|---------|-------|
| Plaintiff:<br>Brenda Gallardo, an individual<br><br>Defendant:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | N.D. California<br>Case No. 3:07-cv-05331-MJJ |
| Plaintiffs:<br>Hillary White and Lynn Michalson, individually and on behalf of all others similarly situated<br><br>Defendant:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | S.D. New York<br>Case No. 07-CIV-9418 |
| Plaintiffs:<br>Ilsa Lee Kaye, individually and on behalf of all others similarly situated<br><br>Defendant:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | E.D. New York<br>Case No. 2:07-cv-04425-DRH-ETB |
| Plaintiffs:<br>Elizabeth Cockrell, individually and on behalf of all others similarly situation<br><br>Defendant:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | D. Colorado<br>Case No. 1:07-cv-02285-LTB |
| Plaintiffs:<br>Jim Snell, Steve Clark, John Barrera, Joseph Villari, Elida Gollomp, Claire M. Theodore and Elisabeth Banse, on behalf of themselves and all other similarly situated<br><br>Defendants:<br>Aurora Dairy Corporation, d/b/a Aurora Organic Dairy, Wild Oats Market, Inc., Costco Wholesale Corporation, Safeway Inc., Wal-Mart Stores, Inc. | D. Colorado<br>Case No. 07-cv-02449 |
| Plaintiffs:<br>Margot A. West, and Richard E. Ehly, individually and on behalf of a class of all others similarly situated<br><br>Defendant:<br>Aurora Dairy Corporation, d/b/a Aurora Organic Dairy | D. Colorado<br>Case No. 1:07-cv-02625-JLK |

CH\1006575.3

2

| PARTIES | COURT |
|---|---|
| Plaintiff:<br>Fayetta Cowan<br><br>Defendants:<br>Aurora Dairy Corporation, d/b/a Aurora Organic Dairy and Wal-Mart Stores, Inc. | S.D. Indiana<br>Case No. 08-cv-00157-RLY-WTL |
| Plaintiff:<br>Channing Hesse, individually and on behalf of a class of all others similarly situated<br><br>Defendant:<br>Costco Wholesale Corporation | W.D. Washington (Seattle)<br>Case No. 07-cv-01975-MJP |
| Plaintiff:<br>Shawn Riley, individually and on behalf of all others similarly situated<br><br>Defendant:<br>Safeway Inc. | N.D. California (San Francisco)<br>Case No. 07-cv-06174-JCS |
| Plaintiffs:<br>Patrick and Caryn Hudspeth, individually and on behalf of a class of all others similarly situated<br><br>Defendant:<br>Target Corp. | D. Minnesota (St. Paul)<br>Case No. 07-cv-04755-PJS-JJG |
| Plaintiff:<br>Vicki M. Tysseling-Mattiace, individually and on behalf of a class of all others similarly situated<br><br>Defendant:<br>Wild Oats Markets, Inc. | D. Colorado (Denver)<br>Case No. 07-cv-02622-WYD-BNB |
| Plaintiff:<br>Paul Bowen, individually and on behalf of all others similarly situated<br><br>Defendant:<br>Wal-Mart Stores, Inc. | E.D. Arkansas (Little Rock)<br>Case No.<br>08-cv-00010-JLH |

CH\1006575.3

3

| PARTIES | COURT |
|---|---|
| Plaintiff:<br>Nicolle DiSimone, individually and on behalf of those similarly situated<br><br>Defendants:<br>Aurora Dairy Corporation, doing business as Aurora Organic Dairy, Case Vander Eyk, Jr., doing business as Case Vander Eyk, Jr. Dairy, QAI, Inc., doing business as Quality Assurance International, and DOES 1-100, inclusive | C.D. California<br><br>Case No. 08-0746-DSF-VBK |

Dated: February 19, 2008

Respectfully submitted,

COUNSEL FOR DEFENDANT
SAFEWAY INC.

By: _____

LATHAM & WATKINS LLP
  Viviann C. Stapp (Bar No. 233036)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: viviann.stapp@lw.com

CH\1006575.3

# EXHIBIT D

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**

Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:          [202] 502-2888
http://www.jpml.uscourts.gov

March 12, 2008

TO INVOLVED COUNSEL

Re:  MDL No. 1907 -- IN RE: Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation

(See Attached CTO-2)

Dear Counsel:

    Attached hereto is a copy of a conditional transfer order filed today by the Panel involving the above-captioned matter.  This matter is transferred pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001).  Copies of Rule 5.2, dealing with service, and Rules 7.4 and 7.5, regarding "tag-along" actions, are attached for your convenience.

    Inasmuch as there is an unavoidable time lag between notification of the pendency of the tag-along action and the filing of a conditional transfer order, counsel are required by Rule 7.4(b) to notify this office **BY FACSIMILE**, at (202) 502-2888, of any official changes in the status of the tag-along action.  These changes could involve dismissal of the action, remand to state court, transfer to another federal court, etc., as indicated by an order filed by the district court.  Your cooperation would be appreciated.

    **NOTICE OF OPPOSITION DUE ON OR BEFORE:** ___**March 27, 2008**___ **(4 p.m. EST)**
    (Facsimile transmission is suggested.)

    If you are considering opposing this conditional transfer order, please review Rules 7.4 and 7.5 of the Panel <u>Rules</u> before filing your Notice of Opposition.

    A list of involved counsel is attached.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

By _____
Deputy Clerk

Attachments

JPML Form 39

Exhibit D - 58

# UNITED STATES JUDICIAL PANEL
### on
## MULTIDISTRICT LITIGATION

**IN RE: AURORA DAIRY CORP. ORGANIC
MILK MARKETING AND SALES
PRACTICES LITIGATION**

MDL No. 1907

### (SEE ATTACHED SCHEDULE)

### CONDITIONAL TRANSFER ORDER (CTO-2)

On February 20, 2008, the Panel transferred three civil actions to the United States District Court for the Eastern District of Missouri for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* ___F.Supp.2d___ (J.P.M.L. 2008). With the consent of that court, all such actions have been assigned to the Honorable E. Richard Webber.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Missouri and assigned to Judge Webber.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Missouri for the reasons stated in the order of February 20, 2008, and, with the consent of that court, assigned to the Honorable E. Richard Webber.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Missouri. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

**IN RE: AURORA DAIRY CORP. ORGANIC
MILK MARKETING AND SALES
PRACTICES LITIGATION**                         MDL No. 1907

## SCHEDULE CTO-2 - TAG-ALONG ACTIONS

**DIST. DIV. C.A. #**          **CASE CAPTION**

CALIFORNIA CENTRAL
  CAC  2   08-746          Nicolle DiSimone v. Aurora Dairy Corp., et al.

CALIFORNIA NORTHERN
  CAN  3   08-999          Theadora King v. Safeway, Inc.

INDIANA SOUTHERN
  INS  1   08-157          Fayetta Cowan v. Aurora Dairy Corp., et al.

RULE 5.2:    SERVICE OF PAPERS FILED

(a)    All papers filed with the Clerk of the Panel shall be accompanied by proof of previous or simultaneous service on all other parties in all actions involved in the litigation. Service and proof of service shall be made as provided in Rules 5 and 6 of the Federal Rules of Civil Procedure. The proof of service shall indicate the name and complete address of each person served and shall indicate the party represented by each. If a party is not represented by counsel, the proof of service shall indicate the name of the party and the party's last known address. The proof of service shall indicate why any person named as a party in a constituent complaint was not served with the Section 1407 pleading. The original proof of service shall be filed with the Clerk of the Panel and copies thereof shall be sent to each person included within the proof of service. After the "Panel Service List" described in subsection (d) of this Rule has been received from the Clerk of the Panel, the "Panel Service List" shall be utilized for service of responses to motions and all other filings. In such instances, the "Panel Service List" shall be attached to the proof of service and shall be supplemented in the proof of service in the event of the presence of additional parties or subsequent corrections relating to any party, counsel or address already on the "Panel Service List."

(b)    The proof of service pertaining to motions for transfer of actions pursuant to 28 U.S.C. §1407 shall certify that copies of the motions have been mailed or otherwise delivered for filing to the clerk of each district court in which an action is pending that will be affected by the motion. The proof of service pertaining to a motion for remand pursuant to 28 U.S.C. §1407 shall certify that a copy of the motion has been mailed or otherwise delivered for filing to the clerk of the Section 1407 transferee district court in which any action affected by the motion is pending.

(c)    Within eleven days of filing of a motion to transfer, an order to show cause or a conditional transfer order, each party or designated attorney shall notify the Clerk of the Panel, in writing, of the name and address of the attorney designated to receive service of all pleadings, notices, orders and other papers relating to practice before the Judicial Panel on Multidistrict Litigation. Only one attorney shall be designated for each party. Any party not represented by counsel shall be served by mailing such pleadings to the party's last known address. Requests for an extension of time to file the designation of attorney shall not be granted except in extraordinary circumstances.

(d)    In order to facilitate compliance with subsection (a) of this Rule, the Clerk of the Panel shall prepare and serve on all counsel and parties not represented by counsel, a "Panel Service List" containing the names and addresses of the designated attorneys and the party or parties they represent in the actions under consideration by the Panel and the names and addresses of the parties not represented by counsel in the actions under consideration by the Panel. After the "Panel Service List" has been received from the Clerk of the Panel, notice of subsequent corrections relating to any party, counsel or address on the "Panel Service List" shall be served on all other parties in all actions involved in the litigation.

(e)    If following transfer of any group of multidistrict litigation, the transferee district court appoints liaison counsel, this Rule shall be satisfied by serving each party in each affected action and all liaison counsel. Liaison counsel designated by the transferee district court shall receive copies of all Panel orders concerning their particular litigation and shall be responsible for distribution to the parties for whom he or she serves as liaison counsel.

(a)      Upon learning of the pendency of a potential "tag-along action," as defined in Rule 1.1 of these Rules, an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court on the basis of the prior hearing session(s) and for the reasons expressed in previous opinions and orders of the Panel in the litigation. The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer, shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

(b)      Parties to an action subject to a conditional transfer order shall notify the Clerk of the Panel within the fifteen-day period if that action is no longer pending in its transferor district court.

(c)      Any party opposing the transfer shall file a notice of opposition with the Clerk of the Panel within the fifteen-day period. If a notice of opposition is received by the Clerk of the Panel within this fifteen-day period, the Clerk of the Panel shall not transmit said order to the clerk of the transferee district court until further order of the Panel. The Clerk of the Panel shall notify the parties of the briefing schedule.

(d)      Within fifteen days of the filing of its notice of opposition, the party opposing transfer shall file a motion to vacate the conditional transfer order and brief in support thereof. The Chairman of the Panel shall set the motion for the next appropriate hearing session of the Panel. Failure to file and serve a motion and brief shall be treated as withdrawal of the opposition and the Clerk of the Panel shall forthwith transmit the order to the clerk of the transferee district court.

(e)      Conditional transfer orders do not become effective unless and until they are filed with the clerk of the transferee district court.

(f)      Notices of opposition and motions to vacate such orders of the Panel and responses thereto shall be governed by Rules 5.12, 5.2, 7.1 and 7.2 of these Rules.

RULE 7.5:     MISCELLANEOUS PROVISIONS CONCERNING "TAG-ALONG ACTIONS"

(a)      Potential "tag-along actions" filed in the transferee district require no action on the part of the Panel and requests for assignment of such actions to the Section 1407 transferee judge should be made in accordance with local rules for the assignment of related actions.

(b)      Upon learning of the pendency of a potential "tag-along action" and having reasonable anticipation of opposition to transfer of that action, the Panel may direct the Clerk of the Panel to file a show cause order, in accordance with Rule 7.3 of these Rules, instead of a conditional transfer order.

(c)      Failure to serve one or more of the defendants in a potential "tag-along action" with the complaint and summons as required by Rule 4 of the Federal Rules of Civil Procedure does not preclude transfer of such action under Section 1407. Such failure, however, may be submitted by such a defendant as a basis for opposing the proposed transfer if prejudice can be shown. The inability of the Clerk of the Panel to serve a conditional transfer order on all plaintiffs or defendants or their counsel shall not render the transfer of the action void but can be submitted by such a party as a basis for moving to remand as to such party if prejudice can be shown.

(d)      A civil action apparently involving common questions of fact with actions under consideration by the Panel for transfer under Section 1407, which was either not included in a motion under Rule 7.2 of these Rules, or was included in such a motion that was filed too late to be included in the initial hearing session, will ordinarily be treated by the Panel as a potential "tag-along action."

(e)      Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

**IN RE: AURORA DAIRY CORP. ORGANIC
MILK MARKETING AND SALES
PRACTICES LITIGATION**                                    MDL No. 1907

## INVOLVED COUNSEL LIST (CTO-2)

Arend J. Abel
COHEN & MALAD LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO
LLP
1305 Fifth Avenue
Suite 2900
Seattle, WA 98101

Alexis Beth Djivre
ROSE KLEIN & MARIAS
801 South Grand Avenue
18th Floor
Los Angeles, CA 90017-4645

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO
LLP
820 North Boulevard
Suite B
Oak Park, IL 60301

Joel A. Goldman
LEWIS BRISBOIS BISGAARD & SMITH
LLP
221 North Figueroa Street
Suite 1200
Los Angeles, CA 90012-2601

Gideon Kracov
LAW OFFICES OF GIDEON KRACOV
801 South Grand Avenue
11th Floor
Los Angeles, CA 90017-4645

David McKay
HERMAN MATHIS CASEY KITCHENS
& GEREL
230 Peachtree Street N.W., Suite 2260
Atlanta, GA 30303

Gregory Nylen
GREENBERG TRAURIG LLP
2450 Colorado Avenue
Suite 400 East
Santa Monica, CA 90404

Christopher P. Ridout
RIDOUT & LYON
100 Oceangate
14th Floor
Long Beach, CA 90802

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO
LLP
715 Hearst Avenue
Suite 202
Berkeley, CA 94710

Daniel R. Seltzer
LATHAM & WATKINS LLP
633 West Fifth Street
Suite 4000
Los Angeles, CA 90071-2007

Greg A. Small
KRIEG DEVAULT LLP
One Indiana Square
Suite 2800
Indianapolis, IN 46204-2079

Viviann C. Stapp
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-2562

# EXHIBIT E

**UNITED STATES JUDICIAL PANEL**

on

**MULTIDISTRICT LITIGATION**

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**

Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax: [202] 502-2888
http://www.jpml.uscourts.gov

RECEIVED
BY MAIL

MAR 17 2008
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

March 13, 2008

James G. Woodward, Clerk
3300 Thomas F. Eagleton
  U.S. Courthouse
111 South Tenth Street
St. Louis, MO 63102-1116

Re: MDL No. 1907 -- IN RE: Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation

(See Attached CTO-1)

Dear Mr. Woodward:

I am enclosing a certified copy and one additional copy of a conditional transfer order filed by the Panel in the above-captioned matter on  February 26, 2008 . As stipulated in Rule 7.4(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), transmittal of the order has been stayed 15 days to give any party an opportunity to oppose the transfer. The 15-day period has now elapsed, no opposition was received, and the order is directed to you for filing.

The Panel's governing statute, 28 U.S.C. §1407, requires that the transferee clerk "...transmit a certified copy of the Panel's order to transfer to the clerk of the district court from which the action is being transferred."

A list of involved counsel is attached.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

By
Deputy Clerk

Attachment

cc:  Transferee Judge:        Judge E. Richard Webber
     Transferor Judges:       (See Attached List of Judges)
     Transferor Clerks:       (See Attached List of Clerks)

JPML Form 36

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**A CERTIFIED TRUE COPY**

MAR 1 3 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 2 6 2008

FILED
CLERK'S OFFICE

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: AURORA DAIRY CORP. ORGANIC
MILK MARKETING AND SALES
PRACTICES LITIGATION

MDL No. 1907

(SEE ATTACHED SCHEDULE)

### CONDITIONAL TRANSFER ORDER (CTO-1)

On February 20, 2008, the Panel transferred three civil actions to the United States District Court for the Eastern District of Missouri for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* ___F.Supp.2d___ (J.P.M.L. 2008). With the consent of that court, all such actions have been assigned to the Honorable E. Richard Webber.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Missouri and assigned to Judge Webber.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Missouri for the reasons stated in the order of February 20, 2008, and, with the consent of that court, assigned to the Honorable E. Richard Webber.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Missouri. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

Inasmuch as no objection is
pending at this time, the
stay is lifted.

MAR 1 3 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

A TRUE COPY OF THE ORIGINAL
JAMES G. WOODWARD CLERK
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
BY: _____
DEPUTY CLERK

**IN RE: AURORA DAIRY CORP. ORGANIC**
**MILK MARKETING AND SALES**
**PRACTICES LITIGATION**                          MDL No. 1907

## SCHEDULE CTO-1 - TAG-ALONG ACTIONS

**DIST. DIV. C.A. #**          **CASE CAPTION**

ARKANSAS EASTERN
  ARE 4  08-10            Paul Bowen v. Wal-Mart Stores, Inc.

CALIFORNIA NORTHERN
  CAN 3  07-5331          Brenda Gallardo v. Aurora Dairy Corp.
  CAN 3  07-6174          Shawn Riley v. Safeway, Inc.

COLORADO
  CO  1  07-2285          Elizabeth Cockrell v. Aurora Dairy Corp.
  CO  1  07-2449          Jim Snell, et al. v. Aurora Dairy Corp., et al.
  CO  1  07-2622          Vicki M. Tysseling-Mattiace v. Wild Oats Markets, Inc.
  CO  1  07-2625          Margot West, et al. v. Aurora Dairy Corp.

MINNESOTA
  MN  0  07-4755          Patrick Hudspeth, et al. v. Target Corp.

NEW YORK EASTERN
  NYE 2  07-4425          Ilsa Lee Kaye v. Aurora Dairy Corp.

NEW YORK SOUTHERN
  NYS 1  07-9418          Hillary White, et al. v. Aurora Dairy Corp.

WASHINGTON WESTERN
  WAW 2  07-1975          Channing Hesse v. Costco Wholesale Corp.

# EXHIBIT F

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**UNITED STATES JUDICIAL PANEL**
on
**MULTIDISTRICT LITIGATION**

**Feb 20, 2008**

FILED
CLERK'S OFFICE

IN RE: AURORA DAIRY CORP. ORGANIC
MILK MARKETING AND SALES
PRACTICES LITIGATION

MDL No. 1907

**TRANSFER ORDER**

**Before the entire Panel**[*]:  Plaintiffs in the District of Colorado *Freyre* action have moved, pursuant to 28 U.S.C. § 1407, for centralization of this litigation in the District of Colorado.  Defendant in all actions, Aurora Dairy Corp. (Aurora), opposes plaintiffs' motion but, alternatively, supports selection of the District of Colorado as the transferee forum.  Plaintiffs in the District of Colorado *Still* action and two potential tag-along actions pending in the District of Colorado support centralization in the District of Colorado.  Plaintiffs in the Eastern District of Missouri action support centralization in the Eastern District of Missouri.

This litigation currently consists of four actions listed on Schedule A and pending, respectively, in the following three districts: two actions in the District of Colorado, and an action each in the Southern District of Florida and the Eastern District of Missouri.[1]

On the basis of the papers filed and hearing session held, we find that these four actions involve common questions of fact, and that centralization under Section 1407 in the Eastern District of Missouri will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.  Plaintiffs in all four actions, which are brought on behalf of putative nationwide classes, contend that Aurora misled them into believing that the milk that they purchased was "organic" or "USDA organic" when in fact the milk failed to meet organic standards, including those established by the U.S. Department of Agriculture and the federal Organic Foods Production Act, 7 U.S.C. § 6501, *et seq*.  As a result, plaintiffs bring a variety of state law claims, asserting that, *inter alia*, they have paid artificially high prices for Aurora's organic milk.  Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings (particularly with respect to the issue of class certification); and conserve the resources of the parties, their counsel and the judiciary.

---

[*] Judge Heyburn took no part in the disposition of this matter.

[1] In addition to the four actions now before the Panel, the parties have notified the Panel of eleven related actions pending, respectively, as follows: four actions in the District of Colorado, two actions in the Northern District of California, and an action each in the Eastern District of Arkansas, the District of Minnesota, the Eastern District of New York, the Southern District of New York, and the Western District of Washington.  These actions and any other related actions will be treated as potential tag-along actions.  *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

- 2 -

Aurora opposes centralization, asserting that, *inter alia*, transfer of the actions under Section 1407 is unnecessary because voluntary alternatives to Section 1407 are superior.  We respectfully disagree.  Transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: (1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F.Supp. 1403, 1404 (J.P.M.L. 1976); and (2) ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties and the judiciary.

We are persuaded that the Eastern District of Missouri, where the first-filed action is pending, is an appropriate transferee forum for this litigation.  Given the geographic dispersal of the constituent actions and the potential tag-along actions, the Eastern District of Missouri offers a relatively convenient forum for this litigation.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the Eastern District of Missouri are transferred to the Eastern District of Missouri and, with the consent of that court, assigned to the Honorable E. Richard Webber for coordinated or consolidated pretrial proceedings with the action listed on Schedule A and pending in that district.

PANEL ON MULTIDISTRICT LITIGATION

_____
D. Lowell Jensen
Acting Chairman

| | |
|---|---|
| John G. Heyburn II, Chairman[*] | J. Frederick Motz |
| Robert L. Miller, Jr. | Kathryn H. Vratil |
| David R. Hansen | Anthony J. Scirica |

**IN RE: AURORA DAIRY CORP. ORGANIC
MILK MARKETING AND SALES
PRACTICES LITIGATION**                                    MDL No. 1907

## SCHEDULE A

District of Colorado

Rebecca Freyre, et al. v. Aurora Dairy Corp., C.A. No. 1:07-2183
Mona Still, et al. v. Aurora Dairy Corp., C.A. No. 1:07-2188

Southern District of Florida

Maya Fiallos v. Aurora Dairy Corp., C.A. No. 1:07-22748

Eastern District of Missouri

Kristine Mothershead, et al. v. Aurora Dairy Corp., C.A. No. 4:07-1701

# EXHIBIT G

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Robert Edward Koch | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08-cv-00254-TCM |
| | ) | |
| Aurora Dairy Corporation | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

This complaint was filed by the attorney, and due to clerk error, was assigned by a random draw to the Honorable Magistrate Judge Thomas C. Mummert III.

**IT IS THEREFORE ORDERED** that the above styled cause be reassigned to the Honorable Judge E. Richard Webber.

Date: March 3, 2008.             James G. Woodward
                                 CLERK OF COURT


                                 By: /s/ Karen Moore
                                 Deputy Clerk


**In all future documents filed with the Court, please use the following case number 4:08-cv-00254-ERW**

# EXHIBIT H



HAGENS BERMAN
SOBOL SHAPIRO LLP

ELIZABETH A. FEGAN
DIRECT • (708) 776-5604
BETH@HBSSLAW.COM

March 27, 2008

**_Via Facsimile and U.S. Mail_**
Jeffrey N. Lüthi
Clerk of the Panel
One Columbus Circle, NW
Thurgood Marshall Federal Judiciary Building
Room G-255, North Lobby
Washington, DC 2002

Re:    MDL 1907 - In re Aurora Dairy Corp. Organic Milk Marketing and Sales
       Practices Litigation

Dear Mr. Lüthi:

Enclosed please find copies of _Plaintiff Theadora King's Notice of Opposition to Conditional Transfer Order (CTO-2)_ and the _Proof of Service_. The originals will be delivered by U.S. Mail.

This filing relates to _King v. Safeway, Inc._, No. CV-08-999 (N.D. Cal.), identified by counsel for Defendant Safeway, Inc. as a "tag-along" action and conditionally transferred to the U.S. District Court for the Eastern District of Missouri for coordination and consolidation with the above referenced MDL proceedings.

Thank you in advance for your attention to this matter.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Elizabeth A. Fegan

BF:DJK
Enclosure
cc:    All Counsel of Record

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: AURORA DAIRY CORP. ORGANIC MILK MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) | MDL DOCKET NO. 1907 |
| This Filing Relates to: *King v. Safeway, Inc.*, No. CV-08-0999 (N.D. Cal.) | ) ) ) ) | |

## PLAINTIFF THEADORA KING'S NOTICE OF OPPOSITION TO CONDITIONAL TRANSFER ORDER (CTO-2)

I represent Plaintiff Theadora King in the *King v. Safeway, Inc.*, No. CV-08-0999 (N.D. Cal.) action which is included on the conditional transfer order (CTO-2). Plaintiff Theadora King submits this opposition to the conditional transfer order. I understand that the motion and brief to vacate are due in 15 days.

010004-17 226223 V1

1

Dated:  March 27, 2008

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____
Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Boulevard, Suite B
Oak Park, Illinois  60301
Telephone: (708) 776-5600
Facsimile: (708) 776-5601
Email: beth@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

*Attorneys for Plaintiff Theadora King*

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: AURORA DAIRY CORP. ORGANIC MILK MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) MDL DOCKET NO. 1907 |
| This Filing Relates to: *King v. Safeway, Inc.*, No. CV-08-0999 (N.D. Cal.) | ) ) ) ) |

## PROOF OF SERVICE

Pursuant to Rule 5.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, and the Federal Rules of Civil Procedure, I caused PLAINTIFF THEADORA KING'S NOTICE OF OPPOSITION TO CONDITIONAL TRANSFER ORDER (CTO-2) and PROOF OF SERVICE to be served via first class mail upon all other parties in all actions involved in the litigation, as set forth on the accompanying lists of counsel.

I further certify that on March 27, 2008, I caused a true and correct copy of the above documents to be sent via facsimile to 202-502-2888 for filing with the Clerk of the Judicial Panel

On Multidistrict Litigation.  I further certify that the original was sent via first class mail to the

Clerk of the Judicial Panel On Multidistrict Litigation.

Dated:  March 27, 2008

_____
Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Boulevard, Suite B
Oak Park, Illinois  60301
Telephone: (708) 776-5600
Facsimile: (708) 776-5601
Email: beth@hbsslaw.com

*Attorney for Plaintiff Theadora King*

Judicial Panel on Multidistrict Litigation - Panel Attorney Service List

* Docket: 1907 - IN RE: Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation

Page 1

Status:    Pending on  / /
Transferee District:        Judge:

**ATTORNEY - FIRM**                          REPRESENTED PARTY(S)                          Printed on 01/29/2008

Buckner, David M.
KOZYAK TROPIN & THROCKMORTON PA           => Phone: (305) 372-1800  Fax: (305) 372-3508  Email: dmb@nitlaw.com
2525 Ponce de Leon Boulevard                    Fiallos, Maya*
9th Floor
Miami, FL 33134

Campbell, John E.
SIMON & PASSANANTE PC                     => Phone: (314) 241-2929  Fax: (314) 241-2029  Email: jcampbell@simonpassanante.com
701 Market Street                               Lloyd, Leonie*; Mothershead, Kristine*
Suite 1450
St. Louis, MO 63101

Canfield, Kenneth S.
DOFFERMYRE SHIELDS CANFIELD KNOWLES & DEVINE  => Phone: (404) 881-8900  Fax: (404) 881-3007  Email: kcanfield@dsckd.com
                                                Freyre, Fernando*; Freyre, Rebecca*
1355 Peachtree Street
Suite 1600
Atlanta, GA 30309

Downing, Don M.
GRAY RITTER & GRAHAM PC                   => Phone: (314) 241-5620  Fax: (314) 241-4140  Email: ddowning@grgpc.com
701 Market Street                               Buckner, Joy*; Ebertai, Mary*; Finnegan, Kristen*; Forsman, Amy*; Murdock, Naomi*; Piak,
Suite 800                                       Eileen*; Regan, Sandie*; Roche-Cotea, Cynthia*; Scheutz, Joan*; Shriver, Steve*
St. Louis, MO 63101-1826

Gantz, Curtis T.
LANE ALTON & HORST LLC                    => Phone: (614) 228-6885  Fax: (614) 228-0146  Email: cgantz@lanealton.com
Two Miranova Place                              Coselli, Tammy*; Discerns, Erin*; Haines, Debra*; Hoodes, Liana*; Hopkins, Lisa*; Knaus,
Suite 500                                       Olive*; Kueck, Hans*; Poirier, Caryn*; Rachford, Ilene*; Robinson, Donita*; Schmidt, Debra*
Columbus, OH 43215

Levitt, Adam J.
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC => Phone: (312) 984-0000  Fax: (312) 984-0801  Email: levitt@whafh.com
55 West Monroe Street                           Davis, Laurchanne*; Flacham, Noelle*; Hana, Eve*; Jensen, Oksana*; King, Kim*; Millikan,
Suite 1111                                      Debbie*; Phillips, Helen*; Still, Mona*; Waschewsky, Gabriela*; Zkgsi, Jeanmarie*
Chicago, IL 60603

Mester, Mark S.
LATHAM & WATKINS LLP                      => Phone: (312) 876-7623  Fax: (312) 993-9767  Email: mark.mester@lw.com
233 S. Wacker Drive                             Aurora Dairy Corp, dba Aurora Organic Dairy*
Suite 5800
Sears Tower
Chicago, IL 60606

Note: Please refer to the report title page for complete report scope and key.

IN RE: AURORA DAIRY CORP. ORGANIC
MILK MARKETING AND SALES
PRACTICES LITIGATION

MDL No. 1907

## INVOLVED COUNSEL LIST (CTO-1)

Eric A. Bartsch
STOEL RIVES LLP
33 South Sixth Street
Suite 4200
Minneapolis, MN 55402

Joseph Henry Bates III
CAULEY BOWMAN CARNEY &
WILLIAMS LLP
P.O. Box 25438
Little Rock, AR 72221-5438

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO
LLP
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101

Garrett D. Blanchfield Jr
REINHARDT WENDORF &
BLANCHFIELD
332 Minnesota Street
Suite E-1250
St. Paul, MN 55101

Robert M. Bramson
BRAMSON PLUTZIK MAHLER &
BIRKHAEUSER LLP
2125 Oak Grove Road
Suite 120
Walnut Creek, CA 94598

David J. Burman
PERKINS COIE LLP
1201 Third Avenue
Suite 4800
Seattle, WA 98101-3099

Katherine A. Campbell
5646 Milton Street
Suite 211
Dallas, TX 75206

Robert B. Carey
CAREY LAW FIRM
2301 East Pikes Peak
Colorado Springs, CO 80909

Jay W. Connolly
SEYFARTH SHAW LLP
560 Mission Street
#3100
San Francisco, CA 94105-2930

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO
LLP
820 North Boulevard
Suite B
Oak Park, IL 60301

Philip E. Kaplan
KAPLAN BREWER MAXEY &
HARALSON PA
Metro Centre Mall
415 Main Street
Little Rock, AR 72201-3801

Livia Anne Kiser
LATHAM & WATKINS LLP
233 S. Wacker Drive
Suite 5800
Chicago, IL 60606

Daniel Kurowski
HAGENS BERMAN SOBOL SHAPIRO
LLP
820 North Boulevard
Suite B
Oak Park, IL 20302

## MDL No. 1907 - Involved Counsel List (CTO-1) (Continued)

Christopher Lovell
LOVELL STEWART HALEBIAN LLP
500 Fifth Avenue
Floor 58
New York, NY 10110

Christopher A. Moeller
PRICE WAICUKAUSKI & RILEY LLC
The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN 46204

William O. Reckler
LATHAM & WATKINS LLP
885 Third Avenue
Suite 1000
New York, NY 10022

Tracy D. Rezvani
FINKELSTEIN THOMPSON LLP
1050 30th Street, N.W.
Washington, DC 20007

Richard P. Rouco
WHATLEY DRAKE & KALLAS LLC
2001 Park Place, North
P.O. Box 10647
Birmingham, AL 35202-0647

Lee F. Sachnoff
KRENDL KRENDL SACHNOFF & WAY
PC
370 17th Street
Suite 5350
Denver, CO 80202

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO
LLP
715 Hearst Avenue
Suite 202
Berkeley, CA 94710

Harry Shulman
MILLS LAW FIRM
145 Marina Boulevard
San Rafael, CA 94901

Kip B. Shuman
SHUMAN & BERENS LLP
801 East 17th Avenue
Denver, CO 80218-1417

Viviann C. Stapp
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-2562

Daniel F. Wake
SANDER INGEBRETSEN & PARISH PC
633 Seventeenth Street
#1900
Denver, CO 80202

Joe R. Whatley Jr.
WHATLEY DRAKE & KALLAS LLC
1540 Broadway
37th Floor
New York, NY 10036

IN RE: AURORA DAIRY CORP. ORGANIC
MILK MARKETING AND SALES
PRACTICES LITIGATION

MDL No. 1907

## INVOLVED COUNSEL LIST (CTO-2)

Arend J. Abel
COHEN & MALAD LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO
LLP
1305 Fifth Avenue
Suite 2900
Seattle, WA 98101

Alexis Beth Djivre
ROSE KLEIN & MARIAS
801 South Grand Avenue
18th Floor
Los Angeles, CA 90017-4645

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO
LLP
820 North Boulevard
Suite B
Oak Park, IL 60301

Joel A. Goldman
LEWIS BRISBOIS BISGAARD & SMITH
LLP
221 North Figueroa Street
Suite 1200
Los Angeles, CA 90012-2601

Gideon Kracov
LAW OFFICES OF GIDEON KRACOV
801 South Grand Avenue
11th Floor
Los Angeles, CA 90017-4645

David McKay
HERMAN MATHIS CASEY KITCHENS
& GEREL
230 Peachtree Street N.W., Suite 2260
Atlanta, GA 30303

Gregory Nylen
GREENBERG TRAURIG LLP
2450 Colorado Avenue
Suite 400 East
Santa Monica, CA 90404

Christopher P. Ridout
RIDOUT & LYON
100 Oceangate
14th Floor
Long Beach, CA 90802

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO
LLP
715 Hearst Avenue
Suite 202
Berkeley, CA 94710

Daniel R. Seltzer
LATHAM & WATKINS LLP
633 West Fifth Street
Suite 4000
Los Angeles, CA 90071-2007

Greg A. Small
KRIEG DEVAULT LLP
One Indiana Square
Suite 2800
Indianapolis, IN 46204-2079

Viviann C. Stapp
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-2562

# EXHIBIT I

Exhibit I - 84

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

In Re: Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation

DOCUMENT RELATES TO:

All Actions

Honorable E. Richard Webber

Case No. 4:08-md-01907-ERW

MDL No. 1907

## MOTION OF THE "KTHB GROUP"
## TO APPOINT TWO CO-LEAD COUNSEL, AN EXECUTIVE COMMITTEE AND
## LIAISON COUNSEL FOR THE PUTATIVE CLASS

Come now, Plaintiffs in support of this Motion and state the following:

1.      Consumers have filed seventeen class actions alleging that Aurora Organic Dairy (hereinafter "Aurora") and various retailers of Aurora milk (hereinafter "Retailers") labeled milk as organic when, in fact, it was not.

2.      On February 20, 2008, the U.S. Judicial Panel on Multidistrict Litigation transferred each of those cases to this Court.

3.      The "Two-Lead Plan" is described in the accompanying *Memorandum in Support of the Motion of the "KTHB Group" to Appoint Two Co-Lead Counsel, An Executive Committee And Liaison Counsel For The Putative Class* as the best approach for serving the legal needs of the millions of potential class members.

4.      Attorneys who have brought thirteen of the seventeen consolidated cases support this Motion.

5.      Pursuant to Federal Rule of Civil Procedure 23(g), signatories to this motion ask this Court to approve the Two-Lead Plan set forth in the accompanying memorandum.

Wherefore, the undersigned attorneys request the opportunity to present oral argument with regard to this Motion and request this Court approve the Two-Lead Plan set forth in the accompanying memorandum.

By: /s/ John Campbell
Attorneys for Plaintiffs, Kristine
Mothershead and Leonie Lloyd
John Campbell, #543242
Erich Vieth, #4608
Attorneys for the Plaintiff
701 Market Street, Suite 1450
St. Louis, Missouri 63101
(314) 241-2929
(314) 241-2029 (fax)

By:  /s/ Thomas Ronzetti
Thomas Ronzetti
David Buckner
Kozyak, Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Miami, FL  33134
Telephone:  (305) 372-1800
Attorneys for Maya Fiallos

By: /s/ Timothy Carl Blake
Timothy Carl Blake
Law Offices of Timothy Carl Blake, P.A.
Concord Building
66 W. Flagler Street, Suite 1000
Miami, FL  33130
Telephone:  (305) 373-5210
Attorney for Maya Fiallos

By: /s/ Robert B. Carey
Robert B. Carey
Frances R. Johnson
The Carey Law Firm
2301 E. Pikes Peak Avenue
Colorado Springs, CO  80918
Telephone:  (719) 635-0377
Attorneys for Vicki M. Tysseling-Mattiace

By:  /s/ William N. Riley
William N. Riley
Christopher A. Moeller
Jamie R. Kendall
Joseph N. Williams
Price, Waicukauski & Riley, LLC
301 Massachusetts Avenue
Indianapolis, IN  46204
Telephone:  (317) 633-8787
Attorneys for Patrick and Caryn Hudspeth

By:  /s/ Frederic Fox
Frederic Fox
Kaplan Fox & Kilsheimer LLP
805 Third Avenue
New York, NY  10022
Telephone:  (212) 687-1980
Attorney for Patrick and Caryn Hudspeth

By: /s/ Laurence D. King
Laurence D. King
Kaplan Fox & Kilsheimer LLP
350 Sansome Street, Suite 400
San Francisco, CA  94104
Telephone:  (415) 772-4700
Attorney for Patrick and Caryn Hudspeth

2

Exhibit I - 86

By: /s/ Steve W. Berman
Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 5th Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Attorney for Shawn Riley, Channing Hesse,
Vicki Tysselling-Mattiace, Paul Bowen

By: /s/ Elizabeth A. Fegan
Elizabeth A. Fegan
820 North Blvd., Suite B
Oak Park, IL 60301
Telephone: (708) 776-5600
Attorney for Shawn Riley, Channing Hesse,
Vicki Tysselling-Mattiace, Paul Bowen

By: /s/ Shana E. Scarlett
Shana E. Scarlett
Hagens Berman Sobol Shapiro LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Attorney for Shawn Riley

By: /s/ Hank Bates
Hank Bates
Cauley Bowman Carney & Williams, PLLC
P.O. Box 25438
Little Rock, AR 72221
Telephone: (501) 312-8500
Attorney for Paul Bowen

By: /s/ Christopher Lovell
Jody Krisiloff
Craig Essenmacher
Keith Essenmacher
Lovell Stewart Halebian LLP
500 Fifth Avenue
New York, NY 10110
Telephone: (212) 608-1900
Attorney for Hillary White and Lynn
Michalson

By: /s/ Garrett D. Blanchfield, Jr.
Garrett D. Blanchfield, Jr.
Reinhardt Wendorf & Blanchfield
332 Minnesota Street, Suite E-1250
First National Bank Building
St. Paul, MN 55101
Telephone: (651) 287-2100
Attorney for Patrick & Caryn Hudspeth

By: /s/ Robert M. Bramson
Robert M. Bramson
Bramson, Plutzik, Mahler & Birkhaeuser LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Attorney for Brenda Gallardo

By: /s/ Harry Shulman
Harry Shulman
The Mills Law Firm
145 Marina Boulevard
San Rafael, CA 94901
Telephone: (415) 455-1327
Attorney for Brenda Gallardo

By: /s/ Stephen Henry Gardner
Stephen Henry Gardner
Center for Science in the Public Interest
5646 Milton Street, #211
Dallas, TX 75206
Telephone: (214) 827-2774
Attorney for Brenda Gallardo

By: /s/ Katherine A. Campbell
Katherine A. Campbell
5646 Milton Street, Suite 211
Dallas, TX 75206
Telephone: (214) 827-2774, x. 113
Attorney for Brenda Gallardo

3

Exhibit I - 87

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed on March 10, 2008 with the Clerk of this Court using the CM/ECF system which will send notification to all attorneys of record and by U.S. mail to:

Tucker Ronzetti
David Buckner
Kozyak, Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Miami, FL 33134
Telephone: (305) 372-1800

Timothy Carl Blake
Law Offices of Timothy Carl Blake, P.A.
Concord Building
66 W. Flagler Street, Suite 1000
Miami, FL 33130
Telephone: (305) 373-5210

Robert B. Carey
Frances R. Johnson
The Carey Law Firm
2301 E. Pikes Peak Avenue
Colorado Springs, CO 80918
Telephone: (719) 635-0377

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 5th Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292

Elizabeth A. Fegan
820 North Blvd., Suite B
Oak Park, IL 60301
Telephone: (708) 776-5600

Shana E. Scarlett
Hagens Berman Sobol Shapiro LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

William N. Riley
Christopher A. Moeller
Jamie R. Kendall
Joseph N. Williams
Price, Waicukauski & Riley, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-8787

Frederic Fox
Kaplan Fox & Kilsheimer LLP
805 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980

Laurence D. King
Kaplan Fox & Kilsheimer LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700

Garrett D. Blanchfield, Jr.
Reinhardt Wendorf & Blanchfield
332 Minnesota Street, Suite E-1250
First National Bank Building
St. Paul, MN 55101
Telephone: (651) 287-2100

Robert M. Bramson
Bramson, Plutzik, Mahler & Birkhaeuser LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200

Harry Shulman
The Mills Law Firm
145 Marina Boulevard
San Rafael, CA 94901

Exhibit I - 88

Telephone: (415) 455-1327

Hank Bates
Cauley Bowman Carney & Williams,
PLLC
P.O. Box 25438
Little Rock, AR 72221
Telephone: (501) 312-8500
Attorney for Paul Bowen
Philip E. Kaplan
Williams & Anderson PLC
111 Center Street, 22nd Floor
Little Rock, AR 72201
Telephone: (501) 396-8432

Maury A. Herman
David A. McKay
Andrea S. Hirsch
Herman, Mathis, Casey, Kitchens and
Gerel, LLP
230 Peachtree Street, NW, Suite 2260
Atlanta, GA 30303
Telephone: (404) 880-9500

Chip Robertson
Bartimus, Frickleton, Robertson & Gorny
Jefferson City Office
715 Swifts Highway
Jefferson City, MO 65109
Telephone: (573) 659-4454

David A. Rosen
Alexis B. Djivre
Rose, Klein & Marias LLP
801 South Grand Avenue, 11th Floor
Los Angeles, CA 90017
Telephone: (213) 626-0571

Christopher P. Ridout
Devon Lyon
Ridout & Lyon LLP
100 Oceangate, 14th Floor
Long Beach, CA 90802
Telephone: (562) 216-5020

Stephen Henry Gardner
Center for Science in the Public Interest
5646 Milton Street, #211
Dallas, TX 75206
Telephone: (214) 827-2774

Katherine A. Campbell
5646 Milton Street, Suite 211
Dallas, TX 75206
Telephone: (214) 827-2774, x. 113

Mark S. Mester
Livia M. Kiser
Latham & Watkins LLP
Sears Tower
233 South Wacker Drive, Suite 5800
Chicago, IL 60606
Telephone: (312) 876-7700

Philip E. Kaplan
Williams & Anderson PLC
111 Center Street, 22nd Floor
Little Rock, AR 72201
Telephone: (501) 396-8432

Nicole Behnen
Alice Dickherber
Polsinelli, Shalton, Flanigan, Suelthaus, PC
7733 Forsyth Blvd., 12th Floor
St. Louis, MO 63105
Telephone: (314) 889-7095

William O. Reckler
Latham and Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10022
Telephone: (212) 906-1200

Harold A. Haddon
Saskia A. Jordan
Suzanna Wasito Tiftickjian
Haddon, Morgan, Mueller, Jordan, Mackey
& Foreman, PC
150 East Tenth Avenue
Denver, CO 80203

5

Exhibit I - 89

Telephone: (303) 831-7364

Gideon Kracov
Law Office of Gideon Kracov
801 South Grand Avenue, 11th Floor
Los Angeles, CA 90017
Telephone: (213) 629-2071

Kenneth S. Canfield
Ralph J. Knowles
Martha J. Fessenden
Kimberly J. Johnson
Doffermyre, Shields, Canfield, Knowles
and Devine, LLC
1355 Peachtree Street, Suite 1600
Atlanta, GA 30309
Telephone: (404) 881-8900

Don M. Downing
Thomas K. Neill
Gray, Ritter & Graham, PC
701 Market Street, Suite 800
St. Louis, MO 63101
Telephone: (314) 241-5620

Curtis F. Gantz
David G. Cox
Lane, Alton & Horst LLC
Two Miranova Place, Suite 500
Columbus, OH 43215
Telephone: (614) 228-6885

Eric J. Artrip
Herman A. Watson, Jr.
Rebekah Keith McKinney
Watson Jimmerson Martin McKinney
Graffeo & Helms, PC
203 Greene Street
Huntsville, AL 35804
Telephone: (256) 536-7423

Adam J. Levitt
Wolf Haldenstein Adler Freeman & Herz
LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603
Telephone: (312) 984-0000

Christopher Lovell
Jody Krisiloff
Craig Essenmacher
Keith Essenmacher
Lovell Stewart Halebian LLP
500 Fifth Avenue
New York, NY 10110
Telephone: (212) 608-1900

Kip B. Shuman
The Shuman Law Firm
801 E. 17th Avenue
Denver, CO 80218
Telephone: (303) 861-3003

Daniel W. Wake
Sander, Ingebretsen & Parish, PC
633 17th Street, Suite 1900
Denver, CO 80202
Telephone: (303) 285-5544

Joe R. Whatley, Jr.
Edith M. Kallas
Whatley Drake & Kallas, LLC
1540 Broadway, 37th Floor
New York, NY 10036
Telephone: (212) 447-7070

Jay W. Connelly
Aaron Belzer
M. Brown
Seyfarth Shaw LLP
560 Mission Street, Suite 3100
San Francisco, CA 94105
Telephone: (415) 397-2823

Richard P. Rouco
W. Tucker Brown
Whatley Drake & Kallas, LLC
2001 Park Place North, Suite 1000
Birmingham, AL 35203
Telephone: (205) 328-9576

6

Exhibit I - 90

James G. Stranch, III
J. Gerard Stranchm IV
Joe P. Leniski, Jr.
Branstetter, Stranch & Jennings, PLLC
227
Second Avenue North
Nashville, TN  37201
Telephone:  (615) 254-8801

Nadeem Faruqi
Faruqi & Faruqi, LLP
320 East 39th Street
New York, NY  10016
Telephone:  (212) 983-9330

James A. Streett
Streett Law Firm
107 West Main
Russellville, AR  72801

John Emerson
Emerson Poynter LLP
The Museum Center
500 Presiden Clinton Avenue, Suite 305
Little Rock, AR  72201
Telephone:  (501) 907-2555

Christopher Darrow
Gregory Nylen
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Jonathon C. Meisen
Stoel Rives LLP
Suite 4200
33 Southy Sixth Street
Minneapolis, MN 55402

Jay Connolly
Seyfarth Shaw LLP
560 Mission Street, Suite 3100
San Francisco, CA 94105

Tracy D. Rezvani
Mila F. Bartos
Karen J. Marcus
Finkelstein Thompson LLP
The Duvall Foundry
1050 30th Street NW
Washington D.C. 20007
Telephone:  (202) 337-8000

Jeffery M. Monberg
Krieg DeVault LLP
833 W. Lincoln Highway, Suite 410W
Schererville, IN  46375
Telephone:  ( 219) 227-6111

Greg A. Small
Max W. Hittle, Jr.
Krieg DeVault LLP
One Indiana Square, Suite 2800
Indianapolis, IN  46204
Telephone:  (317) 238-6282

Viviann C. Stapp
Latham & Watkins LLP
505 Montgomery Stree, Suite 2000
San Francisco, CA 94111

David Burman & Shylah R. Alfonso
Perkins and Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101

Daniel R. Seltzer
Latham & Watkins
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007

By:  /s/ John Campbell

Exhibit I - 91

Exhibit I - 92

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In Re: Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation | Honorable E. Richard Webber |
| DOCUMENT RELATES TO: | Case No. 4:08-md-01907-ERW |
| All Actions | MDL No. 1907 |

### MEMORANDUM IN SUPPORT OF MOTION OF THE "KTHB GROUP" TO APPOINT TWO CO-LEAD COUNSEL, AN EXECUTIVE COMMITTEE AND LIAISON COUNSEL FOR THE PUTATIVE CLASS

## I. INTRODUCTION

Consumers have filed seventeen class actions alleging that Aurora Organic Dairy (hereinafter "Aurora") and various retailers of Aurora milk (hereinafter "Retailers") labeled milk as organic when, in fact, it was not.[1]  On February 20, 2008, the U.S. Judicial Panel on Multidistrict Litigation transferred each of these cases to this Court, granting the request of undersigned counsel Simon Passanante, the law firm that filed the first case in this litigation.

Since that transfer, attorneys for various plaintiffs have had informal discussions regarding the appropriate leadership structure pursuant to Fed. R. Civ. P. 23(g).   In the course of those discussions it was revealed that,  prior to transfer, four law firms formulated their own plan to anoint four co-lead counsel, naming themselves as the co-leads (hereinafter "Four-Lead Plan").[2]  Despite suggestions for reform from numerous attorneys, the Four-Lead Plan's organizers made clear that the leadership roles would not budge. This entrenched position caused further discussions among the many attorneys who did not believe the Four-Lead Plan was wise.

---

[1] These pending actions are listed in attached Exhibit A.

[2] These law firms include Whatley Drake & Kallas LLC, Wolf Haldenstein Adler Freeman & Herz, Gray Ritter & Graham, P.C. , and Doffermyre Shields Canfield Knowles & Devine, LLC.

1

Exhibit I - 93

The resulting discussions produced a virtual consensus among the attorneys (thirteen of seventeen filed cases). These attorneys (the "KTHB" group) are proposing a "Two-Lead Plan" which, as its name suggests, is limited to only *two* lead counsel. The Two-Lead Plan emphasizes efficiency and inclusion by establishing a litigation management structure that allows efficient decision-making while inviting the participation of a variety of parties (parties are to be selected by this Court and this could include the attorneys who support the Four-Lead Plan). Under the Two-Lead Plan, one of the two lead attorneys would focus on the claims against Aurora and the other would focus on the claims against the Retailers.

### The Two-Lead Plan

| Lead Counsel—Claims against <u>Aurora</u> | Lead Counsel—Claims against <u>Retailers</u> |
|---|---|
| *Kozyak Tropin & Throckmorton* | *Hagens Berman Sobol Shapiro* |
| Tucker Ronzetti | Steve W. Berman |

| Executive Committee | Executive Committee | Executive Committee | Executive Committee | Executive Committee |
|---|---|---|---|---|
| **[Open]** | **[Open]** | *Center for Science in the Public Interest* | *Bramson, Plutzik, Mahler & Birkhaeuser* | **[Open]** |
| | | **Stephen Gardner** | **Rob Bramson** | |

| Liaison Counsel |
|---|
| *Simon Passanante* **St. Louis, Missouri** |
| **John Campbell** |

The Two-Lead Plan advanced in this motion would have the salutary advantage of placing the representative of a non-profit organization in a position of authority, thus insuring that any settlement discussions will be conducted with the utmost care for the interests of both the public and the putative class members. As discussed below, while there are many talented and experienced counsel involved in the various cases filed in these coordinated actions, the

2

Exhibit I - 94

counsel proposed for leadership in the Two-Lead Plan are ideally suited for management of these class claims.

For a more detailed description of the leadership structure of the Two-Lead Plan, see attached Exhibit B, a proposed *Appointment Order* regarding this Rule 23(g) Motion.

## II. FACTORS FOR DETERMINING LEADERSHIP STRUCTURE

Federal Rule of Procedure 23(g) provides that this Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(2)(A). When appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following:

(i) the work counsel has done in identifying or investigating potential claims in the action;
(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class;

Rule 23(g)(1)(B) also invites the Court to consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

Section 10.224 of the Manual for Complex Litigation (4th ed.) ("Manual") provides that the Court should move expeditiously and avoid unnecessary delay" when deciding on the appointment of class counsel.

Section 10.224 of the Manual also provides that lead counsel for class actions should be appointed to ensure that the putative Class is represented fairly and adequately, and to ensure that this litigation is afforded the experience, knowledge and resources necessary for an effective prosecution. This Court is obliged to appoint the best grouping of counsel available to the putative class. For the many reasons discussed below, the Two-Lead Group offers the grouping of attorneys that best comports with the above guidelines.

With regard to 23(g)(2)(A)(i) ("work counsel has done in identifying or investigating potential claim"), the firms proposed as part of the Two-Lead Plan have invested substantial time and energy investigating and identifying the claims against Aurora and Retailers. For example, the first two cases filed in the United States were filed by Simon Passanante (proposed liaison in the Two-Lead Plan) and Kozyak Tropin & Throckmorton (proposed Co-Lead). The fifth-filed case was developed by Robert Bramson (a proposed member of the Executive Committee).

Firms for the Two-Lead Plan have conducted extensive investigation into the factual underpinnings of their claims, including: the nature and identity of every Aurora farm, the farms to which Aurora allegedly shipped cows in violation of the law, the process by which Aurora transports and processes milk, the relationship between Aurora and Retailers, the relationship between Aurora and other "organic" milk producers, the suspicious pricing of Aurora milk when sold by Retailers, communications to Retailers which warned that Aurora milk was not organic, the decision by some companies to reject Aurora milk, the relationships between "certifiers" and Aurora and Retailers and the impact Aurora's operations had on small farmers. These firms have also invested large quantities of time researching legal issues including preemption, viable nationwide class theories, the FDA investigation's findings and agreements and defenses likely to arise in the retailer/wholesaler situations presented by these cases.

The investigations were lengthy and detailed. For close to a year, firms from the Two-Lead group have been in contact with Mark Kastel of Cornucopia Institute, the non-profit organization that triggered the federal investigations into Aurora's operations. They have also spoken with Richard Cummings of the Organic Consumer Association, and have worked closely with organic consumers throughout the country.

The difficult work of formulating discovery in this case has already begun. For example, Stephen Gardner, the lead attorney for *Center for Science in the Public Interest*, has an extensive

background working with the USDA. Mr. Gardner is in the process of preparing Freedom of Information Act requests to that agency in order to gather documents relevant to Aurora and Retailers.  Similarly, Hagens Berman, proposed as co-lead counsel, has devoted significant resources to identify and represent plaintiffs throughout the country, resulting in the filing of multiple cases in various states.  Hagens Berman has continued to receive inquiries, and as a result, has attorney/client relationships with dozens of consumers who have purchased Aurora milk from Retailers' stores in many states.

## III. DETAILS OF THE TWO-LEAD PLAN RECOMMENDED IN THIS MOTION

To promote greater efficiency, accountability, and fairness, this motion proposes a streamlined *two* co-lead leadership structure. This Two-Lead Plan advances the law firms of *Hagens Berman Sobol Shapiro LLP* ("HBSS") and *Kozyak Tropin* as co-lead counsel because both have extensive and proven experience in MDLs, prior success in food labeling cases and a demonstrated commitment to creative litigation and fair results.  *See* the Firm Resumes of these two law firms, attached as Exhibits C and D.

Because of *Kozyak Tropin's* early-filed case against Aurora Dairy and *HBSS's* five federal Retailer cases, their appointment as co-Leads offers a structure which recognizes the natural division of labor between the two basic types of pending claims (against *Aurora* and against *Retailers*).

This proposed Two-Lead Executive Committee offers two primary strengths.  First, its membership will encourage the most appropriate resolution of the claims on behalf of the class. This Two-Lead plan proposes that one seat on the Executive Committee be filled by Stephen Gardner (Exhibit H), a highly experienced attorney from the *Center for Science in the Public Interest* ("CSPI," see Exhibit F), a non-profit group committed to litigation in the areas of food

5

Exhibit I - 97

and food labeling. The Two-Lead plan also includes Robert Bramson (see Exhibit G) who, along with Stephen Gardner, was responsible for drafting both the original *Ethical Guidelines for Class Actions* promulgated by the National Association for Consumer Advocates (hereinafter "NACA"), published at 176 F.R.D. 375 (1998), and the revised version of those Guidelines  (The Revised version is attached as Exhibit E)**.**  In fact, many of the attorneys signing this Motion are active members of NACA, a non-profit legal organization dedicated to the education, protection and ethical representation of consumers.  (*See* http://www.naca.net/ for additional information).

The second advantage of the Two-Lead Plan is that it builds consensus.  Thirteen of the seventeen filed cases support the Two-Lead Plan.   Additionally, three spots on the Executive Committee of the Two-Lead proposal have intentionally been left open to provide room to incorporate the assistance of other talented attorneys.  The Two-Lead proposal is not an effort to exclude anyone; it is an effort to streamline leadership, eliminate favoritism, ensure a result most favorable to the class and to adequately represent those consumers pursuing claims against Aurora or Retailers.

Under this Two-Lead proposal, the role of Liaison Counsel would be filled by Simon Passanante, a well-respected St. Louis, Missouri law firm that filed the first organic milk marketing class action in the country against Aurora. Simon Passanante was also the only law firm to file a motion asking the MDL Panel to transfer this case to the Eastern District of Missouri.

The Court should choose the Two-Lead Plan for each of the following reasons:

1. The Two-Lead Plan bifurcates the lead role in recognition of the distinct claims against and defenses likely to be raised by Aurora and Retailers, by naming, as co-lead counsel, a prominent plaintiffs' firm (Kozyak Tropin & Throckmorton) that filed against Aurora and another prominent plaintiff firm (HBSS) that filed multiple claims against Retailers.

2. Rule 23(g)(1)(A) requires the Court to consider the experience of the attorneys in "the types of claims asserted in the action." The attorneys proposed for inclusion in the leadership structure in the Two-Lead Plan have considerable experience handling food mislabeling claims. Relevant cases include the vitamin and nutrition bar cases handled by Robert Bramson (See attached Exhibit G) and CSPI's extensive experience handling food mislabeling cases involving such issues as trans fats, eggs, sodium and soft drinks (*see* the CSPI/Stephen Gardner resumes, attached as Exhibits F and H).[3] Consider also, the salmon mislabeling cases of HBSS discussed in the next section.

3. The two lead attorney positions of the KTHB group include two class action firms that have been highly successful.

   a. **Kozyak, Tropin & Throckmorton** has a long and distinguished history of vindicating the rights of consumers, investors and businesses. The firm has handled several high-profile class action cases, and has obtained outstanding results for class members in a host of actions. With its broad experience managing complex cases, KTT has the skilled attorneys and staff required to bring these cases to a successful conclusion. In *In Re: Managed Care HMO Litigation,* (S.D. Fla.) and the cases related to it (which collectively form MDL 1334), the firm serves as co-lead counsel for a nationwide class of doctors bringing claims against the largest managed care organizations in the United States, and has obtained settlements valued in the billions of dollars in cash payments and injunctive relief. In *LiPuma v. American Express Co.* (S.D. Fla.), a consumer deception case, KTT served as co-lead counsel and recovered $75 million on behalf of cardholders across the country. The firm is also currently

---

[3] Some of CSPI's many accomplishments in this area of food labeling are listed at http://cspinet.org/about/accomplishments.html .

involved in a number of class actions in the agricultural sector, including *Texas Grain Storage, Inc. d/b/a West Chemical & Fertilizer v. Monsanto Co.*, no. SA-07-CA-0673-OLG (W.D. Tex.) (in which the firm is interim co-lead counsel), and *In re Mushroom Direct Purchaser Antitrust Litigation*, Master File 06-0620 (E.D. Pa.), giving it particularly useful insight into this case.

b. **Hagens Berman** is well-positioned to serve as co-lead counsel in this litigation. Section 20.221 of the Manual on Complex Litigation states that lead counsel should be "charged with major responsibility for formulating (after consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation." Given its leadership positions in other significant complex litigation, including cases regarding food mislabeling, HBSS can undoubtedly carry out this responsibility. On a national scale, HBSS has the experience, resources and knowledge necessary to provide the putative Class in these cases the best representation possible, with extensive experience with complex litigation, a proven track record, and a wealth of resources to commit to this litigation. In this MDL, HBSS is the only firm with clients that have sued Wal-Mart, Costco and Safeway in their home jurisdictions and is one of only two firms to sue Wild Oats in its home jurisdiction. Further, HBSS has experience litigating class actions as lead counsel, including bringing deceptive labeling cases against the food industry. In *Farm Raised Salmon Cases*, for example, HBSS recently prevailed before the California Supreme Court, which held that a claim that Safeway and other grocery stores did not accurately label farm-raised salmon was not preempted by the Food Drug and Cosmetic Act. Safeway sold farm-raised salmon fed special diet supplements that caused the fish to take on a pink color,

masking the typical gray appearance of other farm-raised salmon in efforts to mislead purchasers. *See Farm Raised Salmon Cases*, No. S147171, 2008 Cal. LEXIS 1413 (Cal. Feb. 11, 2008).

For further information regarding the accomplishments of these two firms, and the other firms proposed for leadership roles in the Two-Lead plan, see the firm resumes attached to this Memorandum as Exhibits C, D, F, G, H, and J.

4. The Two-Lead Plan is a result of open dialogue and cooperation; the Two-Lead plan invites qualified attorneys to participate in this complex litigation in a meaningful way by welcoming all attorneys to the table. Before considering this Two-Lead structure, the Two-Lead attorneys voiced concerns about the Four-Lead plan to various Four-Lead attorneys. This was an effort to reach full consensus without involving this Court.

5. Most of the firms supporting the Two-Lead Plan have never before worked with each other. They are demonstrating their commitment to cooperation by building new relationships. The three executive committee positions that have been intentionally left open represent a commitment to making certain that the executive committee is filled with the most qualified applicants. The undersigned attorneys would ask this Court to initiate an application process inviting all qualified attorneys to submit their applications for these open positions.

6. The Two-Lead Plan enjoys broad support. Of the seventeen cases consolidated in this Court, representatives for thirteen of the cases support the Two-Lead Plan. This is in contrast to the three that support the Four-Lead Plan. As discussed throughout this memorandum, the Two-Lead Plan streamlines leadership and shares power. To illustrate, out of the thirteen cases filed by firms supporting the Two-Lead Plan, only two law firms seek to be appointed as lead counsel. Conversely, the Four-Lead Plan advances

four leaders from only three filed cases (two attorneys from a single complaint). *See* attached Exhibit I, a series of three charts that list all cases that have been consolidated, the firms affiliated with each case and whether or not the listed firms seek a leadership role.

7. The Two-Lead firms have demonstrated trust by relinquishing power in furtherance of the goal of attaining a good overall result. Most of the firms supporting the Two-Lead structure do not have and do not expect the role of Lead Attorney. One example of this is Richard Shevitz, a former Deputy Attorney General of Indiana, who has expressed support of this Two-Lead Plan even if he is not in a leadership role. Another example of this willingness to step aside from a lead counsel role is Simon Passanante, the well-respected St. Louis firm (*See* Exhibit J) that was the first firm to file in the country and the firm that successfully brought this case to the Eastern District of Missouri. Rather than seek lead or accept a position as liaison in the Four-Lead Plan, Simon Passanante has chosen to support what it views as the most qualified candidates and the structure likely to produce efficiency and fair results. The Two-Lead firms are committed to "working collaboratively, functioning effectively as a single ad hoc firm to achieve efficiency and to avoid duplication of effort." See *In re Abbott Laboratories Securities Litigation,* 1995 WL 792083 (1995). The signatories to the Two-Lead Plan are seeking results and collaboration rather than power; this ultimately benefits the putative consumer class before this Court.

8. Attorneys affiliated with the Two-Lead Plan are active in public interest groups (*Center for Science in the Public Interest* and *NACA)* that should give this Court the assurance that these attorneys will keep the interests of consumers paramount. Further, the Two-Lead Plan would give responsibility to non-profit *CSPI* to assist and advise the executive

committee in the review of any settlement proposals prior to submitting those to this Court for approval. This is a further demonstration of a steadfast commitment to ethical resolution of these claims.

## IV. THE FOUR-LEAD PLAN

The Four-Lead Plan merits brief discussion in this memorandum because it might be presented to this Court and because the attorneys supporting the Two-Lead Plan first made good faith efforts to suggest reform to that Four-Lead Plan before they considered alternatives. The Four-Lead Plan was created by several of the attorneys seeking transfer of this case to Colorado, who apparently held discussions in Phoenix immediately after argument before the Judicial Panel on Multidistrict Litigation. Those private discussions gave rise to a leadership proposal that featured four lead attorneys arising from only three filed cases. The Four-Lead Plan currently appears to have only the support of the firms vying for that plan's four lead positions.

For the few attorneys to whom it was described, the Four-Lead Plan was presented as virtually a done deal, with the four lead attorney roles written in stone and at least three of the executive committee spots filled with attorneys picked by the purported leaders. The only remaining business was to fill one or two spots on the executive committee and to name a liaison.

Multiple attorneys voiced concern that a structure with four lead attorneys would render an executive committee superfluous, reducing it to a way of giving attorneys titles rather than enriching dialogue and distributing responsibility. These concerns were not addressed. Multiple attorneys also suggested that the four leaders selected did not represent the group as a whole; these suggestions were ignored. This led to further discussions among the vast majority of attorneys, who did not believe that leadership by committee was prudent or likely to be approved

by this Court. It was these discussions that led to the creation of this Two-Lead plan as a way to promote efficiency while allowing the participation of a diverse group of attorneys.

Two-Lead Plan attorneys are concerned about the Four-Lead plan because it creates more management problems than it solves. The Four-Lead Plan appoints too many lead counsels, producing a de facto leadership committee that invites reduced efficiency and effectiveness. Every significant decision made under the Four-Lead plan would require scheduling and consultation by four busy attorneys. As such, not only are logistical issues multiplied and the process made needlessly expensive by bringing so many "leaders" into each decision, it is also highly questionable whether the Four-Lead plan can facilitate (or even allow) coherent decision-making. That a structure with four lead attorneys, including two attorneys who filed a single complaint, is being suggested at all causes one to question the core group dynamics driving the need to propose such a plan.

Second, the unwieldy Four-Lead structure creates the potential for duplicative billing, difficulty scheduling, and unclear responsibilities. Thus, the Four-Lead plan runs afoul of §10.221 of the Manual for Complex Litigation, Fourth, which urges that the Court should avoid leadership structures that invite "unnecessary duplication of efforts, or which needlessly increase fees and expenses."

The Four-Lead plan's third major defect involves the obstacles it raises for sharing work and representing all interested parties. The Four-Lead plan includes three attorneys who sued Aurora and only one who sued Retailers. The Four-Lead Plan excludes the meaningful participation of numerous firms with experience in food mislabeling cases, firms with detailed complaints against retailers, firms with long histories of successful leadership of MDLs and firms filing the first cases in the country.

For these reasons, the Four-Lead plan enjoys minority support, exclusively from those who seek to serve as co-leads or those promised spots on the Executive Committee. Those supporting the Two-Lead plan have built consensus around a plan that satisfies the requirements for appointing lead counsel while involving a diverse group of attorneys. It is for each of the above reasons that the undersigned attorneys propose the Two-Lead Plan.

**CONCLUSION**

The undersigned attorneys request the opportunity to present oral argument regarding the important issues raised in this Motion, pursuant to Local Rule 78-4.02(B). These attorneys are requesting this opportunity to be heard in accordance with advice offered by the Manual, §10.224, that:

> The judge needs to take an active part in making the decision on the appointment of counsel. . . . The court should take the time necessary to make an assessment of the qualifications, functions, organization, and compensation of designated counsel. . . . The court should also ensure that designated counsel fairly represent the various interests in the litigation. . . .

After due consideration of the reasons stated throughout this memorandum, the undersigned attorneys ask this Court to approve the Two-Lead Plan as the best approach for serving the legal needs of the millions of potential class members and to name or cause to be named the additional members of the executive committee as set forth in the attached Proposed Order (Exhibit B).

By: /s/ John Campbell
Attorneys for Plaintiffs, Kristine
Mothershead and Leonie Lloyd
John Campbell, #543242
Erich Vieth, #4608
Attorneys for the Plaintiff
701 Market Street, Suite 1450
St. Louis, Missouri 63101
(314) 241-2929
(314) 241-2029 (fax)

13

Exhibit I - 105

By: /s/ Thomas Ronzetti
Thomas Ronzetti
David Buckner
Kozyak, Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Miami, FL 33134
Telephone: (305) 372-1800
Attorneys for Maya Fiallos

By: /s/ Timothy Carl Blake
Timothy Carl Blake
Law Offices of Timothy Carl Blake, P.A.
Concord Building
66 W. Flagler Street, Suite 1000
Miami, FL 33130
Telephone: (305) 373-5210
Attorney for Maya Fiallos

By: /s/ Robert B. Carey
Robert B. Carey
Frances R. Johnson
The Carey Law Firm
2301 E. Pikes Peak Avenue
Colorado Springs, CO 80918
Telephone: (719) 635-0377
Attorneys for Vicki M. Tysseling-Mattiace

By: /s/ Steve W. Berman
Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 5th Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Attorney for Shawn Riley, Channing Hesse,
Vicki Tysseling-Mattiace, Paul Bowen

By: /s/ Elizabeth A. Fegan
Elizabeth A. Fegan
820 North Blvd., Suite B
Oak Park, IL 60301
Telephone: (708) 776-5600
Attorney for Shawn Riley, Channing Hesse,
Vicki Tysselling-Mattiace, Paul Bowen

By: /s/ William N. Riley
William N. Riley
Christopher A. Moeller
Jamie R. Kendall
Joseph N. Williams
Price, Waicukauski & Riley, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-8787
Attorneys for Patrick and Caryn Hudspeth

By: /s/ Frederic Fox
Frederic Fox
Kaplan Fox & Kilsheimer LLP
805 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980
Attorney for Patrick and Caryn Hudspeth

By: /s/ Laurence D. King
Laurence D. King
Kaplan Fox & Kilsheimer LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Attorney for Patrick and Caryn Hudspeth

By: /s/ Garrett D. Blanchfield, Jr.
Garrett D. Blanchfield, Jr.
Reinhardt Wendorf & Blanchfield
332 Minnesota Street, Suite E-1250
First National Bank Building
St. Paul, MN 55101
Telephone: (651) 287-2100

Attorney for Patrick & Caryn Hudspeth
By: /s/ Robert M. Bramson
Robert M. Bramson
Bramson, Plutzik, Mahler & Birkhaeuser LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Attorney for Brenda Gallardo

14

Exhibit I - 106

By: /s/ Shana E. Scarlett
Shana E. Scarlett
Hagens Berman Sobol Shapiro LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Attorney for Shawn Riley

By: /s/ Hank Bates
Hank Bates
Cauley Bowman Carney & Williams, PLLC
P.O. Box 25438
Little Rock, AR 72221
Telephone: (501) 312-8500
Attorney for Paul Bowen

By: /s/ Christopher Lovell
Jody Krisiloff
Craig Essenmacher
Keith Essenmacher
Lovell Stewart Halebian LLP
500 Fifth Avenue
New York, NY 10110
Telephone: (212) 608-1900
Attorney for Hillary White and Lynn Michalson

By: /s/ Harry Shulman
Harry Shulman
The Mills Law Firm
145 Marina Boulevard
San Rafael, CA 94901
Telephone: (415) 455-1327
Attorney for Brenda Gallardo

By: /s/ Stephen Henry Gardner
Stephen Henry Gardner
Center for Science in the Public Interest
5646 Milton Street, #211
Dallas, TX 75206
Telephone: (214) 827-2774
Attorney for Brenda Gallardo

By: /s/ Katherine A. Campbell
Katherine A. Campbell
5646 Milton Street, Suite 211
Dallas, TX 75206
Telephone: (214) 827-2774, x. 113
Attorney for Brenda Gallardo

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed on March 10, 2008 with the Clerk of this Court using the CM/ECF system which will send notification to all attorneys of record and by U.S. mail to:

Tucker Ronzetti
David Buckner
Kozyak, Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Miami, FL 33134
Telephone: (305) 372-1800

Timothy Carl Blake
Law Offices of Timothy Carl Blake, P.A.
Concord Building
66 W. Flagler Street, Suite 1000
Miami, FL 33130

William N. Riley
Christopher A. Moeller
Jamie R. Kendall
Joseph N. Williams
Price, Waicukauski & Riley, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-8787

15

Exhibit I - 107

Telephone: (305) 373-5210

Robert B. Carey
Frances R. Johnson
The Carey Law Firm
2301 E. Pikes Peak Avenue
Colorado Springs, CO 80918
Telephone: (719) 635-0377

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 5th Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292

Elizabeth A. Fegan
820 North Blvd., Suite B
Oak Park, IL 60301
Telephone: (708) 776-5600

Shana E. Scarlett
Hagens Berman Sobol Shapiro LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Hank Bates
Cauley Bowman Carney & Williams, PLLC
P.O. Box 25438
Little Rock, AR 72221
Telephone: (501) 312-8500

Philip E. Kaplan
Williams & Anderson PLC
111 Center Street, 22nd Floor
Little Rock, AR 72201
Telephone: (501) 396-8432

Maury A. Herman
David A. McKay
Andrea S. Hirsch
Herman, Mathis, Casey, Kitchens and Gerel, LLP
230 Peachtree Street, NW, Suite 2260
Atlanta, GA 30303
Telephone: (404) 880-9500

Frederic Fox
Kaplan Fox & Kilsheimer LLP
805 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980

Laurence D. King
Kaplan Fox & Kilsheimer LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700

Garrett D. Blanchfield, Jr.
Reinhardt Wendorf & Blanchfield
332 Minnesota Street, Suite E-1250
First National Bank Building
St. Paul, MN 55101
Telephone: (651) 287-2100

Robert M. Bramson
Bramson, Plutzik, Mahler & Birkhaeuser LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200

Harry Shulman
The Mills Law Firm
145 Marina Boulevard
San Rafael, CA 94901
Telephone: (415) 455-1327

Stephen Henry Gardner
Center for Science in the Public Interest
5646 Milton Street, #211
Dallas, TX 75206
Telephone: (214) 827-2774

Katherine A. Campbell
5646 Milton Street, Suite 211
Dallas, TX 75206
Telephone: (214) 827-2774, x. 113

Chip Robertson
Bartimus, Frickleton, Robertson & Gorny
Jefferson City Office
715 Swifts Highway
Jefferson City, MO 65109
Telephone: (573) 659-4454

David A. Rosen
Alexis B. Djivre
Rose, Klein & Marias LLP
801 South Grand Avenue, 11th Floor
Los Angeles, CA 90017
Telephone: (213) 626-0571

Christopher P. Ridout
Devon Lyon
Ridout & Lyon LLP
100 Oceangate, 14th Floor
Long Beach, CA 90802
Telephone: (562) 216-5020

Gideon Kracov
Law Office of Gideon Kracov
801 South Grand Avenue, 11th Floor
Los Angeles, CA 90017
Telephone: (213) 629-2071
Don M. Downing
Thomas K. Neill
Gray, Ritter & Graham, PC
701 Market Street, Suite 800
St. Louis, MO 63101
Telephone: (314) 241-5620

Curtis F. Gantz
David G. Cox
Lane, Alton & Horst LLC
Two Miranova Place, Suite 500
Columbus, OH 43215
Telephone: (614) 228-6885

Adam J. Levitt
Wolf Haldenstein Adler Freeman & Herz
LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603
Telephone: (312) 984-0000

Mark S. Mester
Livia M. Kiser
Latham & Watkins LLP
Sears Tower
233 South Wacker Drive, Suite 5800
Chicago, IL 60606
Telephone: (312) 876-7700

Philip E. Kaplan
Williams & Anderson PLC
111 Center Street, 22nd Floor
Little Rock, AR 72201
Telephone: (501) 396-8432

Nicole Behnen
Alice Dickherber
Polsinelli, Shalton, Flanigan, Suelthaus, PC
7733 Forsyth Blvd., 12th Floor
St. Louis, MO 63105
Telephone: (314) 889-7095

William O. Reckler
Latham and Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10022
Telephone: (212) 906-1200

Harold A. Haddon
Saskia A. Jordan
Suzanna Wasito Tiftickjian
Haddon, Morgan, Mueller, Jordan, Mackey
& Foreman, PC
150 East Tenth Avenue
Denver, CO 80203
Telephone: (303) 831-7364

Kenneth S. Canfield
Ralph J. Knowles
Martha J. Fessenden
Kimberly J. Johnson
Doffermyre, Shields, Canfield, Knowles
and Devine, LLC
1355 Peachtree Street, Suite 1600
Atlanta, GA 30309
Telephone: (404) 881-8900

17

Exhibit I - 109

Kip B. Shuman
The Shuman Law Firm
801 E. 17th Avenue
Denver, CO  80218
Telephone:  (303) 861-3003

Joe R. Whatley, Jr.
Edith M. Kallas
Whatley Drake & Kallas, LLC
1540 Broadway, 37th Floor
New York, NY  10036
Telephone:  (212) 447-7070

Richard P. Rouco
W. Tucker Brown
Whatley Drake & Kallas, LLC
2001 Park Place North, Suite 1000
Birmingham, AL  35203
Telephone:  (205) 328-9576

James G. Stranch, III
J. Gerard Stranchm IV
Joe P. Leniski, Jr.
Branstetter, Stranch & Jennings, PLLC
227 Second Avenue North
Nashville, TN  37201
Telephone:  (615) 254-8801

Nadeem Faruqi
Faruqi & Faruqi, LLP
320 East 39th Street
New York, NY  10016
Telephone:  (212) 983-9330

James A. Streett
Streett Law Firm
107 West Main
Russellville, AR  72801

John Emerson
Emerson Poynter LLP
The Museum Center
500 Presiden Clinton Avenue, Suite 305
Little Rock, AR  72201
Telephone:  (501) 907-2555

Eric J. Artrip
Herman A. Watson, Jr.
Rebekah Keith McKinney
Watson Jimmerson Martin McKinney
Graffeo & Helms, PC
203 Greene Street
Huntsville, AL  35804
Telephone:  (256) 536-7423

Christopher Lovell
Craig Essenmacher
Keith Essenmacher
Lovell Stewart Halebian LLP
500 Fifth Avenue
New York, NY  10110
Telephone:  (212) 608-1900

Daniel W. Wake
Sander, Ingebretsen & Parish, PC
633 17th Street, Suite 1900
Denver, CO  80202
Telephone:  (303) 285-5544

Jay W. Connelly
Aaron Belzer
M. Brown
Seyfarth Shaw LLP
560 Mission Street, Suite 3100
San Francisco, CA  94105
Telephone:  (415) 397-2823

Tracy D. Rezvani
Mila F. Bartos
Karen J. Marcus
Finkelstein Thompson LLP
The Duvall Foundry
1050 30th Street NW
Washington D.C. 20007
Telephone:  (202) 337-8000

Jeffery M. Monberg
Krieg DeVault LLP
833 W. Lincoln Highway, Suite 410W
Schererville, IN  46375
Telephone:  ( 219) 227-6111

18

Exhibit I - 110

Christopher Darrow
Gregory Nylen
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Jonathon C. Meisen
Stoel Rives LLP
Suite 4200
33 Southy Sixth Street
Minneapolis, MN 55402

Jay Connolly
Seyfarth Shaw LLP
560 Mission Street, Suite 3100
San Francisco, CA 94105

Greg A. Small
Max W. Hittle, Jr.
Krieg DeVault LLP
One Indiana Square, Suite 2800
Indianapolis, IN  46204
Telephone:  (317) 238-6282

Viviann C. Stapp
Latham & Watkins LLP
505 Montgomery Stree, Suite 2000
San Francisco, CA 94111

David Burman & Shylah R. Alfonso
Perkins and Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101

Daniel R. Seltzer
Latham & Watkins
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007

By:  /s/ John Campbell

# EXHIBIT J

1  Shana E. Scarlett (217895)
   HAGENS BERMAN SOBOL SHAPIRO LLP
2  715 Hearst Avenue, Suite 202
   Berkeley, CA 94710
3  Telephone:  (510) 725-3000
   Facsimile: (510) 725-3001
4  shanas@hbsslaw.com

5  Steve W. Berman
   HAGENS BERMAN SOBOL SHAPIRO LLP
6  1301 Fifth Avenue, Suite 2900
   Seattle, WA 98101
7  Telephone:  (206) 623-7292
   Facsimile:  (206) 623-0594
8  steve@hbsslaw.com

9  Elizabeth A. Fegan
   HAGENS BERMAN SOBOL SHAPIRO LLP
10 820 North Boulevard, Suite B
   Oak Park, IL 60301
11 Telephone:  (708) 776-5600
   Facsimile:  (708) 776-5601
12 beth@hbsslaw.com

13 Attorneys for Plaintiff

14                          Shana E. Scarlett (217895)

15                    HAGENS BERMAN SOBOL SHAPIRO LLP

16                        715 Hearst Avenue, Suite 202

17                           Berkeley, CA  94710

18                       Telephone:  (510) 725-3000

19                       Facsimile:  (510) 725-3001

20                           shanas@hbsslaw.com

21 Steve W. Berman
   HAGENS BERMAN SOBOL SHAPIRO LLP
22 1301 Fifth Avenue, Suite 2900
   Seattle, WA  98101
23 Telephone:  (206) 623-7292
   Facsimile:  (206) 623-0594
24 steve@hbsslaw.com

25

26

27

28

Exhibit J -113

CH\1000089.1

1  ~~Elizabeth A. Fegan~~
   ~~HAGENS BERMAN SOBOL SHAPIRO LLP~~
2  ~~820 North Boulevard, Suite B~~
   ~~Oak Park, IL  60301~~
3  ~~Telephone:  (708) 776-5600~~
   ~~Facsimile:  (708) 776-5601~~
4  ~~beth@hbsslaw.com~~

5  ~~Attorneys for Plaintiff~~**UNITED STATES DISTRICTSUPERIOR** COURT

6  ~~NORTHERN DISTRICT~~ **OF THE STATE** OF CALIFORNIA

7

8

9                                        **COUNTY OF ALAMEDA**

10

11  ~~SHAWN RILEY~~**THEODORA KING**,                    ~~No.~~
    individually and on behalf of **all others**      **NO.**
12  **similarly situated,**
                                                       **CLASS ACTION COMPLAINT**
13                              **Plaintiff,**

14            **v.**

15  **SAFEWAY, INC.,**                                 **JURY TRIAL DEMANDED**

16                              **Defendant.**

17  ~~all others similarly situated,~~               )
                                                     )
18                            ~~Plaintiff,~~  )     ~~CLASS ACTION COMPLAINT~~
                                                     )
19             ~~v.~~                                )
                                                     )
20  ~~SAFEWAY, INC.,~~                               )
                                                     )
21                            ~~Defendant.~~  )     ~~JURY TRIAL DEMANDED~~
                                                     )
22

23

24

25

26

27

28

Exhibit J -114

~~CH1000089.1~~

Plaintiff ~~Shawn Riley~~**Theadora King**, by counsel, individually and on behalf of all others similarly situated ("Plaintiff") tenders the following Class Action Complaint and Demand for Jury Trial:

## I.     OVERVIEW

1.     This class action and representative action seeks relief on behalf of Plaintiff and the members of the Class for injuries sustained by them as a result of Safeway**, Inc.**'s **("Safeway")** deceptive marketing of milk as organic when the milk is not, in fact, organic and Safeway's increase in gross sales and sales price.

2.     During the Class Period, Defendant, which is one of the largest food and drug retailers in North America, violated its duty to inform customers that the "O"-label organic milk is not organic.  Defendant's nondisclosure of this material fact constitutes misrepresentation, unfair, unlawful, fraudulent, and/or deceptive business practices in violation of California's consumer protection laws.  The materiality of this information is proven directly by federal and state regulations which, at all relevant times, required Defendant to inform consumers that milk that **they** were purchasing was not organic.  Defendant flagrantly violated and, in some cases, continue to violate these regulations.

3.     As a result of Defendant's misbranding, concealment and nondisclosure, customers are misled to purchase the organic milk and/or to pay a greater price than they would otherwise pay.  Defendant has been unjustly enriched at the expense of these consumers.

4.     This is a class action and a representative action brought by Plaintiff, who purchased organic milk from ~~, produced or distributed by~~ Defendant in the State of California during the Class Period.

## II.     JURISDICTION AND VENUE

**5.     This Court has subject-matter jurisdiction over this representative action pursuant to Bus. & Prof. Code §§ 17204 and 17535.  This Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of the Court and Defendant Safeway, Inc.'s principal place of business is located in Pleasanton, California, and a**

**substantial portion of the wrongdoing alleged in this Complaint took place in California, so as to render the exercise of jurisdiction over it by California courts permissible under traditional notions of fair play and substantial justice.**

**8.** 5. The United States District Court for the Northern District of California has diversity jurisdiction over this Class Action lawsuit pursuant to **This litigation may not removed to federal court under** 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005, because, upon information and belief, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this lawsuit is a Class Action in which some **the** members of the Plaintiff Class are citizens of states different than **the same state, California, as** Defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

6. Safeway, Inc. ("Safeway") is a Delaware corporation with its headquarters and principal place of business in Pleasanton, California. Considering that Plaintiff is a resident of Illinois, there is minimal diversity amongst the parties **Further, Plaintiffs assert no federal question and/or violations of federal law**.

7. Venue in this judicial district is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims herein described occurred within this judicial district.

8. Intradistrict Assignment: Assignment to the San Francisco or Oakland division of this Court is appropriate because Defendant's headquarters and principal place of business is in Pleasanton, California. Because this action arises in the county of Alameda, pursuant to Northern District of California, Local Rule 3-2(d), assignment to either the San Francisco Division or the Oakland Division is proper.

**9. Venue is proper in this Court pursuant to Bus. & Prof. Code §§ 17204 and 17535 and Civ. Code § 1780 (c) because Defendant conducts business in the County of Alameda and in the State of California, including marketing, advertising, and sales directed to California residents. Further, at all times mentioned in this Complaint, Defendant made misrepresentations and material omissions to residents of the County of Alameda and the State of California.**

10.    The amount in controversy exceeds the jurisdictional minimum of this Court.

## III.    PARTIES

11.    9. Plaintiff ~~Shawn Riley~~ **Theadora King** is a resident of ~~Cook~~ **Alameda** County, ~~Illinois~~ **California** and a citizen of the State of ~~Illinois~~ **California**. Plaintiff purchased the store-brand organic milk from Defendant Safeway at its ~~Dominick's~~ stores in ~~the Chicago area~~ **California** on numerous occasions throughout the class period. This milk was produced by Aurora Dairy Corp. and branded as a private label brand by Safeway. Plaintiff utilized the organic milk produced and sold by Defendant for ~~his~~ **her** own and ~~his~~ **her** family's own consumption. Plaintiff decided to purchase "organic" milk, and indeed paid a premium price for that "organic" milk, because ~~he~~ **she** believed that it contained fewer additives and was healthier for ~~their~~ **her** consumption than non-organic milk.

12.    10. Safeway is a Delaware corporation with its principal place of business in Pleasanton, California. Safeway is one of the largest food and drug retailers in North America. As of September 8, 2007, the company operated ~~1,738 stores in the Western, Southwestern, Rocky Mountain, and Mid-Atlantic regions of the United States and in western Canada~~ **520 stores in the State of California, which is more than one-third of its total stores nationwide**.

13.    11. Safeway sold its "organic" milk to Plaintiff and the Class under its store "O" brand. The "organic" milk was contained in cartons that specifically represented that the milk was certified organic milk, despite the fact that it was not organic. Aurora labels its purportedly organic milk with an organic certified label. This label is supposed to assure consumers that Aurora's milk complies with the Organic Foods Production Act of 1990 (7 U.S.C. ~~§~~**§§** 6501, *et seq.*) and its implementing regulations (7 C.F.R. Part 205). Plaintiff and the Class Members they represent pay premium prices for Safeway's "organic" milk.

## IV.    FACTUAL ALLEGATIONS

**~~A.~~ A.** Market for Organic Milk

14.    12. Safeway is and has been selling milk or milk products that it represents to be "organic," when, in fact, the milk is not organic throughout the time period of December 5, 2003

through October 15, 2007 ("class period" or "relevant time period").  Safeway sells this milk to consumers directly using its own brand name "O."

**15.**   ~~13.~~ The market for organic milk has boomed in recent years.  According to the United States Department of Agriculture ("USDA"), total milk or milk products production in the United States in 2004 was 170 billion pounds.  Fluid milk or milk products sales since 1975 have been steady at approximately $11 billion per year.  Currently, organic fluid milk or milk products sales represent about 18% of overall sales.  In 2005, total organic dairy sales were approximately $2 billion.  The organic dairy sector is annually growing at an approximate rate of 16%.

**16.**   ~~14.~~ Consumers rely on manufacturers and sellers of milk or milk products to determine what milk is in fact organic.  As Aurora Dairy, from which Safeway obtained the milk labeled under its "O" brand, expressly recognizes, "Organic certification is the public's assurance that products have been grown and handled according to strict procedures without persistent toxic chemical inputs."

http://www.auroraorganic.com/aodweb/site/~~itemcontent~~**itemcontent**.aspx?icategoryid=6.

**~~B.~~ B. Organic Milk Standards**

**17.**   ~~15.~~ The USDA has set forth four requirements that must be satisfied for milk to be labeled as "USDA Organic":  (a) the milk must not come from cows that have been treated with Bovine Growth Hormone; (b) the milk must not come from cows that have been treated with antibiotics; (c) the milk producing cows must only eat feed that has been grown without pesticides; and (d) the milk must come from cows that have some "access to pasture."

**18.**   ~~16.~~ In order to sell or label an agricultural product as organically produced, the product must be produced and handled in compliance with the Organic Foods Production Act of 1990 ("OFPA"), *see* 7 U.S.C. 6505(a)(1)(A), and the USDA adopted regulations, *see* 7 C.F.R. Part 205, *et seq.*

**C. C. Safeway's Representations Concerning Its Organic Milk**

**19.** ~~17.~~ By marketing, selling, or otherwise representing that its milk was "organic," Safeway represented that the milk abides by these laws and regulations and that the milk is "organic."

**20.** ~~18.~~ Specifically, Safeway included labels on its "O" brand milk that stated, in whole or in part, as follows:

> **Description** :
> Organic Fat Free Milk
> **Ingredients :**
> Organic Grade A Fat Free Milk, Vitamin A Palmitate, Vitamin D~~3.~~
> **Product Attributes:**
> Organic
> Kosher
> FatFree
>
> **Product Details :**
> Ultra-Pasteurized Vitamins A & D added.  USDA Organic.  Grade A;  Ultra-Pasteurized;  Homogenized.  Organic from the Source. There's a lot that goes into a good glass of milk.  It starts with the land.  Our daily pastures are environmentally friendly, maintained with the use of recognized organic horticultural practices.  The dairy cows that produce O Organics Milk enjoy a healthy mix of fresh air, plenty of exercise, clean drinking water and a wholesome, 100% certified organic diet - and they are not given growth hormones or treated with antibiotics.  All of these practices support sustainable farming, which is good for the environment, good for the cows and good for the milk.  That's why our O Organics Milk tastes like milk should, fresh and pure.  To be certified organic, dairy cows must be managed under organic livestock practices at least one year before milking.  Their feed must be grown on land that has been under organic cultivation practices for a minimum of three years.  Certified Organic

**21.** ~~19.~~ On the carton of Safeway's *O* Organics Milk is the following statement:

ORGANICS

*Organic from the Source*

There's a lot that goes into a good glass of milk.  It starts with the land.  Our dairy pastures are environmentally friendly, maintained with the use of recognized organic horticultural practices.  The dairy cows that produce *O* Organics Milk enjoy a healthy mix of fresh air, plenty of exercise, clean drinking water and a wholesome, 100% certified organic diet – and they are not given growth hormones or treated with antibiotics.

All of these practices support sustainable farming, which is good for the environment, good for the cows and good for the milk.

That's why our *O* Organics Milk tastes like milk should – fresh and pure.

The carton also states:

ORGANICS

organic

Fat Free Milk

Vitamins A & D Added
Grade A • Pasteurized • Homogonized

"To be certified organic, dairy cows, must be managed under organic livestock practices at least on eyear before milking.  Their feed must be grown on land that has been under organic cultivation practices for a minimum of three years."

**22.** 20. However, Safeway's milk was not organic according to Federal law.  In fact, Safeway's "organic" milk was produced in large scale factory farms and otherwise failed to comport with Federal law and thus should not have been certified organic.

**D. D.** **The USDA's Investigation of Safeway's Supplier**

**23.** 21. By marketing, selling, or otherwise representing that its milk was "organic," Costco represented that the milk abides by the laws and regulations requiring certain conditions be met before the milk is labeled "organic."

**24.** 22. Aurora was formed by the former owners of Horizon, who sold Horizon to Dean Foods.  The sale left Aurora with thousands of milk cows.  Aurora then started its Colorado operation which produces 10 million gallons of milk a year.  It is in essence a factory-farm model, there is no opportunity for cows to graze, as depicted below:

[PHOTO]

**25.** 23. Aurora's primary business is selling milk for use in the private-label milk market for Safeway, Costco, Wild Oats and others.

**26.** 24. However, Aurora's milk was not organic according to Federal law.  In fact, Aurora's "organic" milk was produced in large scale factory farms and otherwise failed to comport with Federal law.

**27.** ~~25.~~ On March 7, 2007, the USDA identified the following "violations by Aurora Organic Dairy," from which Safeway obtained the milk Safeway sold under its own labels, of federal law:

a.    From 2003 through 2006, for dairy animals at its Platteville, Colorado facility, Aurora failed to provide a total feed ration that included pasture, failed to establish and maintain pasture conditions appropriate for minimizing the occurrence and spread of diseases and parasites, and failed to establish and maintain access to pasture, in willful violation of 7 C.F.R. §§ 205.237(a), 205.238(a)(3), and 205.239(a)(2);

b.    During the spring and early summer of 2006, Aurora entered conventional dairy animals into organic milk or milk products production at its Dublin, Texas facility before those animals completed the required one-year period of continuous organic management, in willful violation of 7 C.F.R. § 205.236(a)(2);

c.    From 2003 through 2006, Aurora purchased for its Platteville facility, from Promiseland Livestock in Falcon, Missouri, dairy animals that had been converted from conventional to organic milk or milk products production, and thus had not been under continuous organic management from at least the last third of gestation, in willful violation of 7 C.F.R. § 205.236(a)(2)(iii);

d.    From on or about July 10, 2004 through on or about September 28, 2005, Aurora moved organic dairy animals from its certified Platteville facility to Wells Ranch in Gill, Colorado, a non-organic (non-certified) livestock operation for management, and thereafter returned them to the Platteville facility for organic dairy production, in willful violation of 7 C.F.R. § 205.236(b)(1);

e.    From February 2005 through March 2006, Aurora moved organic calves from its certified Platteville facility to non-organic (non-certified) livestock operations for management, and eventually returned them to the Platteville facility for organic dairy production, in willful violation of 7 C.F.R. §§ 205.236(a)(2)(iii) and 205.236(b)(1);

f.      From 2003 through 2006, Aurora used non-organic agricultural products, such as wheat straw and corn stalks, as bedding for organic dairy animals at its Platteville facility, in willful violation of 7 C.F.R. § 205.239(a)(3);

g.      From on or about July 27, 2004 through on or about September 30, 2005, Aurora routinely caused organic dairy animals from Promiseland Livestock, a certified organic dairy, to be delivered to Wells Ranch, a non-organic livestock operation, for livestock management, before having them delivered to Aurora's Platteville facility for organic dairy production, in willful violation of 7 C.F.R. § 205.236(b)(1);

h.      From December 5, 2003 through at least September 7, 2007, Aurora sold, labeled and represented its milk or milk products as being organically produced when such milk or milk products were not produced and handled in accordance with the National Organic Program regulations, in willful violation of 7 C.F.R. §§ 205.102, 205.200 and 205.400(a);

i.      From on or about October 29, 2003 through on or about March 9, 2006, Aurora failed to notify its certifying agent immediately concerning changes to the operation of its Platteville facility regarding the termination an utilization of off-site facilities, such as Wells Ranch, contracted by Aurora to provide pasture and/or livestock management services, in willful violation of 7 C.F.R. § 205.400(f)(2);

j.      Aurora failed to include a summary statement, supported by documentation, in the December 29, 2004 and December 28, 2005 Organic System Plans for its Platteville facility that detailed changes to the previous year's Organic System Plan regarding the termination and utilization of off-site facilities, such as Wells Ranch, contracted by Aurora to provide pasture and/or livestock management services, in willful violation of 7 C.F.R. § 205.406(a)(1)(i);

k.      From 2004 through 2006, Aurora failed to maintain adequate records that disclosed all activities and transaction in sufficient detail as to be readily understood and audited to demonstrate compliance with the OFPA and the National Organic Program regulations

concerning pasture arrangements with operations identified by Aurora in its annual Organic System Plan for its Platteville facility, in willful violation of 7 C.F.R. § 205.103(b);

l.      In the October 29, 2003 and December 29, 2004 Organic System Plans for its Platteville facility, Aurora failed to include a full description of the practices and procedures to be performed by Wells Ranch, in willful violation of 7 C.F.R. § 205.201(a)(1);

m.     In the December 28, 2005 Organic System Plan for its Platteville facility, Aurora failed to include a full description of the practices and procedures to be performed by Matsude Farms, Salazar, Cockroft Dairy Farm, and Ray-Glo Dairy, as at its Woodword facility, in willful violation of 7 C.F.R. § 205.201(a)(1); and

n.     In the October 29, 2003, December 29, 2004, and December 28, 2005 Organic System Plans for its Platteville facility, Aurora failed to include a full description of the monitoring practices and procedures to be performed and maintained to verify that its Organic System Plans were effectively implemented with respect to off-site operations contracted by Aurora to provide pasture and/or livestock management services, in willful violation of 7 C.F.R. § 205.201(a)(3).

**28.**  ~~26.~~ On August 23, 2007, Aurora entered into a Consent Agreement with the USDA. This Consent Agreement contained a stipulation for probation. The USDA found that Aurora had not been in compliance with the federal organic food regulations, and placed it on a one year probationary period. The Consent Agreement provided that Aurora was required to remove organic dairy animals "currently present at Platteville that transitioned under the '80/20' rule" from the plant, and instructed that such animals could only be utilized as conventional animals, not certified organic animals. Finally, the Consent Agreement also requires Aurora to address all issues that were raised in the Notice of Proposed Revocation in order for its organic certification not to be revoked.

## ~~E.~~ **E.** Defendant's Illegal Conduct

**29.**  ~~27.~~ Safeway violated, and continues to violate federal and state law (including the applicable regulations by selling its milk as "organic." By mislabeling the milk, Safeway has

misled, and continues to mislead Plaintiff and the Class Members into paying a higher price for milk that cannot be sold as "organic."

**30.** 28. The milk that Safeway sold was not organic, despite Defendant's misrepresentations that the milk was, in fact, organic; in that Aurora and thus Safeway had failed to comply with the requirements of the OFPA. *See* 7 C.F.R. § **§§** 205.102, *et seq.*, in at least the following ways:

a.       Safeway represented its milk or milk products as "organic" when, in fact, they were not, in willful violation of 7 C.F.R. § 205.102;

b.       Aurora failed to maintain records concerning the production and handling of milk or milk products intended to be sold, labeled, or represented as "organic" in a manner which fully disclosed all activities and transactions of the certified operation in sufficient detail as to be readily understood and audited, in willful violation of 7 C.F.R. § 205.103(b);

c.       Aurora failed to provide its dairy cows with access to land used for livestock grazing that it managed to provide feed value as required by 7 C.F.R. §205.200;

d.       Aurora, intending to sell, label or represent milk or milk products as "organic," failed to comply with the applicable provisions of 7 C.F.R. § 205.200;

e.       Aurora failed to maintain an accurate organic production or handling system that includes a description of practices and procedures to be performed and maintained, including the frequency with which they will be performed, in willful violation of 7 C.F.R. §205.201(a)(1);

f.       Aurora failed to maintain an accurate organic production or handling system that included a description of the monitoring practices and procedures to be performed and maintained, including the frequency with which they will be performed, to verify that the plan is effectively implemented, in willful violation of 7 C.F.R. § 205.201(a)(3);

g.       Aurora, after an entire, distinct herd had been converted to organic production, failed to maintain all cows under organic management from the last third of gestation, in willful violation of 7 C.F.R. §205.236(a)(2)(iii);

h.      Aurora removed its dairy cows from an organic operation and subsequently managed those cows on a non-organic (non-certified) operation before being sold, labeled, or represented as organically produced, in willful violation of 7 C.F.R. § 206.236(b)(1);

i.      Aurora failed to provide its dairy cows with a total fee ration composed of agricultural products, including pasture and forage, that are organically produced and, where applicable, organically handled, in willful violation of 7 C.F.R. 205.238(a)(3);

j.      Aurora failed to establish and maintain living conditions for its dairy cows which accommodate their health and natural behavior, in willful violation of 7 C.F.R. § 205.239(a);

k.      Aurora failed to establish appropriate housing, pasture conditions, and sanitation practices for its dairy cows to minimize the occurrence and spread of diseases and parasites, in willful violation of 7 C.F.R. § 205.238(a)(3);

l.      Aurora failed to provide its dairy cows with suitable access to the outdoors, shade, shelter, exercise areas, fresh air, and direct sunlight in willful violation of 7 C.F.R. § 205.239(a)(1);

m.      Aurora failed to provide its dairy cows with access to pasture in willful violation of 7 C.F.R. § 205.239(a)(2);

n.      Aurora failed to provide its dairy cows with appropriate clean, dry bedding, which complies with the feed requirements of § 205.237, in willful violation of 7 C.F.R. § 205.239(a)(3);

o.      Aurora failed to provide shelter designed to allow for its dairy cows' natural maintenance, comfort behaviors, and the opportunity to exercise, as required by federal regulation;

p.      Aurora failed to comply with the Organic Food Production Act of 1990 and applicable organic production and handling regulations of 7 C.F.R. § 205.400(a);

q.      Aurora failed to immediately notify its certifying agent concerning the application of a prohibited substance to its dairy cows, in willful violation of 7 C.F.R. § 205.400(f)(2); and

r.      Aurora failed to submit to its certifying agent an updated organic production or handling system plan that included a summary statement, supported by documentation, detailing deviations from, changes to, modifications to, or other amendments made to the previous year's organic system plan during the previous year in willful violation of 7 C.F.R. § 205.406(a)(1)(i).

**31.**      29. Defendant Safeway failed to conduct its own inspections and oversight to determine whether Aurora was complying with the laws and/or ignored Aurora's flagrant violations.  Its representations about cows having a "healthy mix of fresh air, plenty of exercise," were blatantly false.  Thus, despite the violations of federal law and regulations, Safeway marketed and sold the milk or milk products under the "O" brand representing that the milk was organic, when it was not.  Defendant's conduct deceived Plaintiff and the Class Members into believing that they were purchasing organic milk when they were not.

**32.**      30. Thus, Safeway directly misrepresented to Plaintiff and the Class Members that the "organic" milk it sold under its own label was certified organic, when it was not.  Again, Plaintiff and the Class Members would not have purchased Safeway's milk, and paid the premium for Safeway's milk had they known that Safeway's milk was, in fact non-organic.

## V.    CLASS ACTION ALLEGATIONS

**33.**      31. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a national**state-wide** Consumer Class (with the designation of statewide subclasses if the Court deems necessary and appropriate) defined as follows:

All persons in the United States who purchased organic milk or milk products from Safeway. Should this court determine that a national Consumer Class would not satisfy the applicable requisites for class certification, Plaintiff alternatively seeks certification of a statewide class, defined as:All consumer

residents and/or domiciliaries**State** of California who purchased organic milk or milk products from Safeway **during the time period of December 5, 2003 through October 15, 2007.**

**34.** 32. Plaintiff is informed and believes that the Class consists of many thousands of persons throughout the United States **State of California**, making individual joinder of all Class Members impracticable.

**35.** 33. Questions of law and fact are common to the Plaintiff Class and predominate over questions affecting only individual member, including, *inter alia*, the following:

a.    Whether the alleged conduct by Defendant violated laws as alleged in this Complaint;

b.    Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices by failing to disclose that the milk labeled as organic milk was not organic;

c.    Whether Defendant violated federal and/or state regulations by failing to disclose that the milk labeled as organic milk was not organic;

d.    Whether Plaintiff and the members of the Class were unconscionably induced into purchasing organic milk without adequate disclosures that the milk was not organic;

e.    Whether Defendant violated California law, including the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, §§ 17500, *et seq.*, and/or California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*;

f.    Whether Defendant made misrepresentations to Plaintiff and the members of the Class about milk labeled as organic;

g.    Whether Plaintiff and the members of the Class are entitled to equitable and/or injunctive relief;

h.    Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiff and the members of the Class; and

i.    Whether Defendant was unjustly enriched by its deceptive practices.

**36.** ~~34.~~ Plaintiff's claims are typical of the claims of the Class Members as described above; the claims arise form the same course of conduct by Safeway and the relief sought is common.

**37.** ~~35.~~ Plaintiff will fairly and adequately represent and protect the interests of all Class Members. Plaintiff is represented by counsel competent and experienced in both consumer protection and class action litigation.

~~36.    Class certification is proper under Fed. R. Civ. P. 23(b)(1)(A), because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members and potentially establish incompatible standards of conduct for Defendant.~~

~~37.    Class certification is proper under Fed. R. Civ. P. 23(b)(1)(B) because the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interest of the other members not parties to these adjudications and/or substantially impair their ability to protect these interests.~~

~~38.    Class certification is proper under Fed. R. Civ. P. 23(b)(3), because common issue of law and fact predominate over any questions affecting only individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.~~

**38.** ~~39.~~ A class action is superior to other ~~methods for the fair and efficient adjudication of this controversy, since joinder of all~~**available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class** members is impracticable. Furthermore, because the ~~economic~~ damages suffered**, and continued to be suffered,** by ~~the~~**each** individual Class ~~M~~**m**ember~~s~~ may be relatively ~~modest, albeit significant, compared to~~**small,** the expense and burden of individual litigation~~, it would be impracticable for Class Members~~ **would make it very difficult or impossible for individual Class members** to ~~seek redress individually for the wrongful conduct alleged herein. There will be no difficulty in the management of this litigation~~

~~as a class action~~ **redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous**.

**39.     In addition, the prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for defendants.  In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.**

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
~~(California's Business & Professions Code §§ 17200, *et seq.*)~~

~~40.     The preceding paragraphs of this Complaint are realleged and incorporated by reference. Plaintiff asserts this claim for violations of California's UCL, Bus. & Prof. Code §§ 17200, *et seq.*, on behalf of himself and the members of the Class.~~

~~41.     Defendant's statements and representations constitute "unfair" trade practices that have the capacity to and do deceive consumers, in violation of the UCL.~~

~~42.     All of the wrongful conduct alleged herein occurs and continues to occur in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is repeated in the State of California (and throughout the United States) on thousands (if not tens of thousands) of occasions daily.~~

~~43.     As a proximate result of Defendant's wrongful conduct, Plaintiff, and the members of the Class have sustained damages by paying a higher price for milk labeled as organic that was not organic.~~

~~44.     Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair competition, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345, and for such other relief as set forth in the Prayer for Relief.~~

## ~~SECOND CAUSE OF ACTION~~

## VIOLATIONS OF THE CLRA

## (Cal. Civ. Code §§ 1750, *et seq.*)

**40.** ~~45.~~ The preceding paragraphs of this Complaint are realleged and incorporated by reference.  Plaintiff asserts this claim for violations of the CLRA on behalf of h~~im~~**er**self and the members of the Class.

**41.** ~~46.~~ Plaintiff and the members of the Class are consumers who purchase goods (food products) from Defendant for personal, family, or household purposes.

**42.** ~~47.~~ Representing that goods (including food products) have approval, characteristics, uses, or benefits which they do not have and advertising goods with intent not to sell them as advertised constitute unfair or deceptive trade practices under the provisions of the CLRA, Cal. Civ. Code §§ 1770(a)(5), (9), (14) and (17).

**43.** ~~48.~~ Plaintiff and the members of the Class have all been directly and proximately injured by Defendant's conduct, and such injury includes the purchase of milk labeled as organic, but which was not organic, that they would not have purchased were they truthfully and fully informed of material facts concerning the fact that the milk was not organic.

**44.** ~~49.~~ Pursuant to Cal. Civ. Code § 1780(a), Plaintiff seeks an order enjoining Defendant from engaging in the methods, acts, or practices alleged herein.  Pursuant to Cal. Civ. Code § 1782, if Defendant does not rectify its illegal acts within 30 days, Plaintiff intends to amend this complaint to add claims for:  a) actual damages; b) restitution of money to Plaintiff and class members; c) punitive damages; d) attorneys' fees and costs; and e) other relief that this Court deems proper.

## ~~THIRD~~**SECOND** CAUSE OF ACTION

## FALSE AND MISLEADING ADVERTISING

## (Cal.  Bus.  &  Prof.  Code ~~§ 17500~~**§§ 17500, *et seq.***)

**45.** ~~50.~~ The preceding paragraphs of this Complaint are realleged and incorporated by reference. Plaintiff asserts this claim for violations of Cal. Bus. & Prof. Code ~~§ 17500~~**§§ 17500, et seq.** on behalf of himself and the members of the Class~~.~~**.**

**46.** ~~51.~~ In violation of Section 17500, in connection with its sales of non-organic milk, Defendant made or disseminated statements which are untrue or misleading, and which Defendant knew (or by the exercise of reasonable care should have known) to be untrue or misleading.

**47.** ~~52.~~ As a result of the violations of California law alleged herein, Defendant has been, and will be, unjustly enriched at the expense of Plaintiff, the members of the Class and the general public. Specifically, Defendant has been unjustly enriched by their receipt of monies from consumers who purchased milk labeled organic that was not organic which is advertised and/or otherwise marketed in this State, and is promoted and sold by Defendant through advertising and marketing materials containing the false and misleading statements alleged herein.

**48.** ~~53.~~ Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair competition, and for such other relief as set forth below.

### ~~FOURTH~~**THIRD** CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

**49.** ~~54.~~ The preceding paragraphs of this Complaint are realleged and incorporated by reference. Plaintiff asserts this claim for negligent misrepresentation on behalf of himself and the members of the Class.

**50.** ~~55.~~ Defendant owed a duty to Plaintiff and members of the Class to exercise reasonable case in making representations about organic milk.

**51.** ~~56.~~ These representations were negligently and recklessly made to potential customers and the general public through uniform misbranding, concealment and non-disclosure,

through mass media and point-of-sale advertising, and through other information prepared or disseminated by Defendant.  As a direct and proximate result of these misrepresentations, omissions and concealment, Plaintiff and the Class members have been damaged in and amount to be proven at trial.

**52.** 57. Defendant at all times knew that Plaintiff and the Class members relied (or should be presumed to have relied) upon the labeling and lack of labeling provided by Defendant, and the materiality of such labeling is established as a matter of state and federal Law.  Defendant's concealment, misbranding and non-disclosure were intended to influence consumers' purchasing decisions and were done with reckless disregard for the rights of consumers.  Plaintiff's and Class members' reliance was reasonably foreseeable by Defendant.

### FIFTH CAUSE OF ACTION (IN THE ALTERNATIVE)

### DEFENDANT'S VIOLATION OF STATE CONSUMER PROTECTION ACTS

58. Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

59. Safeway had a statutory duty to refrain from unfair or deceptive acts or practices in the manufacture, promotion and sale of "organic" milk.

60. Had Defendant not engaged in the deceptive conduct described above, Plaintiff and the Class Members would not have purchased Safeway's "organic" milk.

61. Plaintiff believes that California law should apply nationwide.  However, if California law does not apply, Defendant's deceptive, unconscionable and/or fraudulent representations and material omissions to consumers and the public, including Plaintiff and the Class Members, constituted unfair and deceptive acts and practices in violation of the state consumer protection statutes listed below:

a. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code §§ 8-19-1, *et seq.*;

b. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. §§ 45.50471, *et seq.*;

c.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat §§ 44-1522, *et seq*.;

d.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code §§ 4-88-101, *et seq*.;

e.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Civ. Code §§ 1770, *et seq*. and Cal Bus. & Prof. Code §§ 17200, *et seq*.;

f.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. §§ 6-1-105, *et seq*.;

g.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. §§ 2-1 10a, *et seq*.;

h.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code §§ 2511, *et seq*. and 2531, *et seq*.;

i.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code §§ 28-3901, *et seq*.;

j.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. §§ 501.201, *et seq*.;

k.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Stat. §§ 10-1-372, *et seq*., 10-1-392 and 10-1-420.

l.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. §§ 480-1, *et seq*.;

m.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code §§ 48-601, *et seq*.;

n.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS §§ 505/1, *et seq*.;

o.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. §§ 24-5-0.5-1, *et seq.*;

p.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code §§ 714.16, *et seq.*;

q.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. §§ 50-623, *et seq.*;

r.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. §§ 367.170, *et seq.*;

s.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. §§ 51:1401, *et seq.*;

t.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. §§ 205A, *et seq.*;

u.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code §§ 13-101, *et seq.*;

v.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93 A, *et seq.*;

w.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws Ann. §§ 445.90-1, *et seq.*;

x.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. §§ 325D.43, *et seq.*; 325 F.67, *et seq.*; and 325F.68, *et seq.*;

y.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. §§ 75-24-1, *et seq.*;

z.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Ann. Missouri Stat. §§ 407.010, *et seq.*;

aa. ~~Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code Ann. §§ 30-14-101, *et seq.*;~~

bb. ~~Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. §§ 59-1601, *et seq.*~~

cc. ~~Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. Ann. §§ 598.0903, *et seq.*;~~

dd. ~~Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. §§ 358-A:1, *et seq.*;~~

ee. ~~Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Rev. Stat. §§ 56:8-1, *et seq.*;~~

ff. ~~Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. §§ 57-12-1, *et seq.*;~~

gg. ~~Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §§ 349, *et seq.* and 350-e, *et seq.*;~~

hh. ~~Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. §§ 75-1.1, *et seq.*;~~

ii. ~~Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code §§ 51-12-01, *et seq.*, and 51-15-01, *et seq.*;~~

jj. ~~Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. §§ 1345.01, *et seq.*;~~

kk. ~~Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 15 Okla. Stat. §§ 15-751, *et seq.*;~~

ll. ~~Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. §§ 646.605, *et seq.*;~~

mm.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. §§ 201-1, *et seq.*;

nn.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. §§ 6-13.1-1, *et seq.*;

oo.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws §§ 39-5-10, *et seq.*;

pp.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws §§ 37-24-1, *et seq.*;

qq.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code §§ 47-18-101, *et seq.*;

rr.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code §§ 17.41, *et seq.*;

ss.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code §§ 13-11-1, *et seq.*;

tt.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. §§ 2451, *et seq.*;

uu.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code §§ 59.1-196, *et seq.*;

vv.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code. §§ 19.86.0 10, *et seq.*;

ww.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code §§ 46A-6-101, *et seq.*;

xx.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. §§ 100.20, *et seq.*; and

~~yy.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. §§ 40-12-101, *et seq.*~~

~~62.        Plaintiff and the Class Members relied upon Defendant's misrepresentations and/or omissions (as described herein) in purchasing Defendant's "organic" milk.~~

~~63.        As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the Class Members have been damaged by, *inter alia*, paying a premium price for "organic" milk, when Plaintiff and the Class Members received non-organic milk.~~

~~64.        As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the Class are entitled to compensatory damages, treble damages, attorneys' fees and cost of this suit.~~

### ~~SIXTH~~ FOURTH CAUSE OF ACTION

### COMMON LAW UNJUST ENRICHMENT

**53.**     ~~65.~~ This Cause of Action is pled in the alternative to all contract-based claims and/or causes of action at law.

**54.**     ~~66.~~ Defendant has received a benefit from Plaintiff and the Class Members in the form of the prices Plaintiff and the Class Members paid for Defendant's "organic" milk or milk products during the relevant time period.

**55.**     ~~67.~~ Defendant is aware of its receipt of the above-described benefit.

**56.**     ~~68.~~ Defendant received the above-described benefit to the detriment of Plaintiff and each of the other members of the Class.

**57.**     ~~69.~~ Defendant continues to retain the above-described benefit to the detriment of Plaintiff and the Class Members.

**58.**     ~~70.~~ Under the circumstances, it would be inequitable for Defendant to retain the above described benefit.

**59.**     ~~71.~~ As a result of Defendant's unjust enrichment, Plaintiff and the Class Members have sustained damages in an amount to be determined at trial and seek full disgorgement and restitution of Defendant's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful or wrongful conduct alleged above.

## ~~SEVENTH~~FIFTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

**60.** ~~72.~~ Plaintiff hereby incorporates the preceding paragraphs by reference.

**61.** ~~73.~~ Aurora sold its "organic" milk or milk products to retailers who sold that milk or milk products to Plaintiff and the Class Members.

**62.** ~~74.~~ At all times relevant to this action, Defendant falsely represented that its milk or milk products were "organic" when they were not produced in compliance with the applicable organic certification requirements, laws, standards and regulations.

**63.** ~~75.~~ By its statements and representations about the "organic" status of its milk or milk products, Defendant warranted the production process and condition of that "organic" milk or milk products purchased by Plaintiff and the Class Members.

**64.** ~~76.~~ Defendant made these representations and warranty statements to induce Plaintiff and the Class Members to purchase Defendant's "organic" milk or milk products or was a material factor in the decision of Plaintiff and the Class Members to purchase the milk or the milk products.

**65.** ~~77.~~ Due to its conduct alleged herein, Defendant's "organic" milk or milk products failed to conform to each of these warranties.

**66.** ~~78.~~ As a result of Defendant's conduct, Plaintiff and the Class Members have been damaged.

**67.** ~~79.~~ Within a reasonable time after Plaintiff and the Class Members knew or should have known of the failure to conform, Plaintiff, individually and on behalf of the Class, placed Defendant on notice thereof.

## SIXTH CAUSE OF ACTION

### (California's Business & Professions Code §§ 17200, *et seq.*)

**68.** **The preceding paragraphs of this Complaint are realleged and incorporated by reference.  Plaintiff asserts this claim for violations of California's UCL, Bus. & Prof. Code §§ 17200, *et seq.*, on behalf of himself and the members of the Class.**

69.     **Defendant's statements and representations constitute unfair, unlawful and deceptive trade practices that have the capacity to and do deceive consumers, in violation of the UCL.**

70.     **All of the wrongful conduct alleged herein occurs and continues to occur in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is repeated in the State of California on hundreds, if not thousands, of occasions daily.**

71.     **Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's unfair, unlawful and/or deceptive practices by paying a higher price for milk labeled as organic that was not organic.**

72.     **Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin the Defendant from continuing its unfair, unlawful, and/or deceptive practices, to restore to any person in interest any money which may have been acquired by means of such unfair competition and to disgorge any profits realized by Defendant as a result of its unfair, unlawful and/or deceptive practices, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345, and for such other relief as set forth in the Prayer for Relief.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf all others similarly situated, respectfully requests that this Court enter a judgment against Defendant and in favor of Plaintiff, and grant the following relief:

A.     Determine that this action may be maintained as a ~~c~~**C**lass action with respect to a ~~national class or with subclasses corresponding to the several states' laws, or, in the alternative, a California statewide class, pursuant to the appropriate subsections of Fed. R. Civ. P. 23~~**state-wide Consumer Class**; that the court certify a class action with respect to particular issues if appropriate, and that the Court designate and appoint Plaintiff and ~~his~~**her** counsel to serve as Class Representative and Class Counsel;

B.    Declare, adjudge and decree the conduct of the Defendant as alleged herein to be unlawful**, unfair and/or deceptive**;

C.    Grant Plaintiff and all Class Members awards of actual, compensatory, punitive and/or exemplary damages in such amount to be determined at trial and as provided by applicable law;

**D.    Restore to Plaintiff and all Class Members all money or property which may have been acquired by means of such unfair competition and disgorgement all profits received by Defendant due to its unlawful, unfair and/or deceptive practices;**

**E.    An injunction ordering Defendant to stop the unlawful, unfair and deceptive conduct alleged herein;**

**F.**    ~~D.~~ Grant Plaintiff and all Class Members awards of statutory~~,~~ damages, attorney's fees and costs ~~pursuant to the various Consumer Protection Acts of the fifty states~~;

**G.**    ~~E.~~ Grant Plaintiff and the Class Members their costs of suit, including reasonable attorneys' fees, and expenses as provided by law; and

**H.**    ~~F.~~ Grant Plaintiff and the Class Members such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

### DEMAND FOR TRIAL BY JURY

Plaintiff, by counsel, requests a trial by jury on those causes of actions set forth herein.

DATED: ~~December 5, 2007~~ **January 11, 2008**        HAGENS BERMAN SOBOL SHAPIRO LLP


By **/s/ Shana E. Scarlett**
_____

SHANA E. SCARLETT


715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Boulevard, Suite B
Oak Park, IL  60301
Telephone:  (708) 776-5600
Facsimile:  (708) 776-5601
beth@hbsslaw.com

Attorneys for Plaintiff

# EXHIBIT K

# *Delaware*

PAGE   1

### *The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY "AURORA DAIRY CORPORATION" IS DULY
INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN
GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE
RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTY-SIXTH DAY OF
OCTOBER, A.D. 2007.



3697305   8300

071160214

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 6109702

DATE: 10-26-07

# Delaware

PAGE   1

### *The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "AURORA DAIRY CORPORATION", FILED IN THIS OFFICE ON THE TWENTY-SIXTH DAY OF AUGUST, A.D. 2003, AT 6:18 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

3697305    8100

030555437

AUTHENTICATION: 2604842

DATE: 08-27-03

Exhibit K -144

State of Delaware
Secretary of State
Division of Corporations
Delivered 06:18 PM 08/26/2003
FILED 06:18 PM 08/26/2003
SRV 030555437 – 3697305 FILE

CERTIFICATE OF INCORPORATION

OF

AURORA DAIRY CORPORATION

FIRST: The name of the corporation is: Aurora Dairy Corporation (the "*Corporation*").

SECOND: The address of the Corporation's registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle. The name of its registered agent at such address is: The Corporation Trust Company.

THIRD: The nature of the business or purposes to be conducted or promoted by the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

FOURTH: The total number of shares of all classes of stock which the Corporation shall have authority to issue is 16,191,454 shares, consisting of (i) 10,000,000 shares of Common Stock, $.001 par value per share (the "*Common Stock*"), and (ii) 6,191,454 shares of Preferred Stock, $.001 par value per share (the "*Preferred Stock*").

The following is a statement of the designations and the powers, privileges and rights, and the qualifications, limitations or restrictions thereof in respect of each class of capital stock of the Corporation.

A.     COMMON STOCK.

1.     <u>General</u>. The voting, dividend and liquidation rights of the holders of the Common Stock are subject to and qualified by the rights of the holders of the Preferred Stock of any series as may be designated by the Board of Directors upon any issuance of the Preferred Stock of any series.

2.     <u>Voting</u>. The holders of the Common Stock are entitled to one vote for each share held at all meetings of stockholders (and written actions in lieu of meetings). There shall be no cumulative voting.

The number of authorized shares of Common Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote of the holders of a majority of the stock of the Corporation entitled to vote, irrespective of the provisions of Section 242(b)(2) of the General Corporation Law of Delaware.

3.     <u>Dividends</u>. Dividends may be declared and paid on the Common Stock from funds lawfully available therefor as and when determined by the Board of Directors and subject to any preferential dividend or other rights of any then outstanding Preferred Stock.

NY:337027-1

4.   Liquidation.   Upon the dissolution or liquidation of the Corporation, whether voluntary or involuntary, holders of Common Stock will be entitled to receive all assets of the Corporation available for distribution to its stockholders, subject to any preferential or other rights of any then outstanding Preferred Stock.

B.   PREFERRED STOCK.

1.   Preferred Stock may be issued from time to time in one or more series, each of such series to have such terms as stated or expressed herein and in the resolution or resolutions providing for the issue of such series adopted by the Board of Directors of the Corporation as hereinafter provided. Any shares of Preferred Stock that may be redeemed, purchased or acquired by the Corporation may be reissued except as otherwise provided by law. Different series of Preferred Stock shall not be construed to constitute different classes of shares for the purposes of voting by classes unless expressly provided.

Authority is hereby expressly granted to the Board of Directors from time to time to issue the Preferred Stock in one or more series, and in connection with the creation of any such series, by resolution or resolutions providing for the issue of the shares thereof, to determine and fix the number of shares of such series and such voting powers, full or limited, or no voting powers, and such designations, preferences and relative participating, optional or other special rights, and qualifications, limitations or restrictions thereof, including without limitation thereof, dividend rights, conversion rights, redemption privileges and liquidation preferences, as shall be stated and expressed in such resolutions, all to the full extent now or hereafter permitted by the General Corporation Law of Delaware. Without limiting the generality of the foregoing, the resolutions providing for issuance of any series of Preferred Stock may provide that such series shall be superior or rank equally or be junior to the Preferred Stock of any other series to the extent permitted by law. Except as otherwise provided in this Certificate of Incorporation, no vote of the holders of the Preferred Stock or Common Stock shall be a prerequisite to the designation or issuance of any shares of any series of the Preferred Stock authorized by and complying with the conditions of this Certificate of Incorporation, the right to have such vote being expressly waived by all present and future holders of the capital stock of the Corporation.

The number of authorized shares of Preferred Stock may be increased or decreased (but not below the number of shares then outstanding) by the affirmative vote of the holders of a majority of the stock of the Corporation entitled to vote, irrespective of the provisions of Section 242(b)(2) of the General Corporation Law of Delaware.

FIFTH:  The name and mailing address of the sole incorporator are as follows:

Lee F. Sachnoff
Krendl Krendl Sachnoff & Way, P.C.
370 Seventeenth Street, Suite 5350
Denver, CO 80202

SIXTH:  In furtherance of and not in limitation of powers conferred by statute, it is further provided:

- 2 -

1.    Election of directors need not be by written ballot.

2.    The Board of Directors is expressly authorized to adopt, amend or repeal the By-Laws of the Corporation.

SEVENTH: Except to the extent that the General Corporation Law of Delaware prohibits the elimination or limitation of liability of directors for breaches of fiduciary duty, no director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for any breach of fiduciary duty as a director, notwithstanding any provision of law imposing such liability. No amendment to or repeal of this provision shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment.

EIGHTH: The Corporation shall, to the fullest extent permitted by Section 145 of the General Corporation Law of Delaware, as amended from time to time, indemnify each person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he or she is or was, or has agreed to become, a director or officer of the Corporation, or is or was serving, or has agreed to serve, at the request of the Corporation, as a director, officer, partner, employee or trustee of, or in a similar capacity with, another corporation, partnership, joint venture, trust or other enterprise (including any employee benefit plan) (all such persons being referred to hereafter as an "*Indemnitee*"), or by reason of any action alleged to have been taken or omitted in such capacity, against all expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by or on behalf of an Indemnitee in connection with such action, suit or proceeding and any appeal therefrom.

As a condition precedent to an Indemnitee's right to be indemnified, the Indemnitee must notify the Corporation in writing as soon as practicable of any action, suit, proceeding or investigation involving such Indemnitee for which indemnity will or could be sought. With respect to any action, suit, proceeding or investigation of which the Corporation is so notified, the Corporation will be entitled to participate therein at its own expense and/or to assume the defense thereof at its own expense, with legal counsel reasonably acceptable to the Indemnitee.

In the event that the Corporation does not assume the defense of any action, suit, proceeding or investigation of which the Corporation receives notice under this Article, the Corporation shall pay in advance of the final disposition of such matter any expenses (including attorneys' fees) incurred by an Indemnitee in defending a civil or criminal action, suit, proceeding or investigation or any appeal therefrom; *provided, however,* that the payment of such expenses incurred by an Indemnitee in advance of the final disposition of such matter shall be made only upon receipt of an undertaking by or on behalf of the Indemnitee to repay all amounts so advanced in the event that it shall ultimately be determined that the Indemnitee is not entitled to be indemnified by the Corporation as authorized in this Article, which undertaking shall be accepted without reference to the financial ability of the Indemnitee to make such repayment; and *further provided* that no such advancement of expenses shall be made under this Article if it is determined that (i) the Indemnitee did not act in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interests of the Corporation, or (ii) with

- 3 -

respect to any criminal action or proceeding, the Indemnitee had reasonable cause to believe his conduct was unlawful.

The Corporation shall not indemnify an Indemnitee pursuant to this Article in connection with a proceeding (or part thereof) initiated by such Indemnitee unless the initiation thereof was approved by the Board of Directors of the Corporation. In addition, the Corporation shall not indemnify an Indemnitee to the extent such Indemnitee is reimbursed from the proceeds of insurance, and in the event the Corporation makes any indemnification payments to an Indemnitee and such Indemnitee is subsequently reimbursed from the proceeds of insurance, such Indemnitee shall promptly refund such indemnification payments to the Corporation to the extent of such insurance reimbursement.

All determinations hereunder as to the entitlement of an Indemnitee to indemnification or advancement of expenses shall be made in each instance (a) by a majority vote of the directors of the Corporation consisting of persons who are not at that time parties to the action, suit or proceeding in question (*"disinterested directors"*), whether or not a quorum, (b) by a committee of disinterested directors designated by majority vote of disinterested directors, whether or not a quorum, (c) if there are no disinterested directors, or if the disinterested directors so direct, by independent legal counsel (who may, to the extent permitted by law, be regular legal counsel to the Corporation) in a written opinion, or (d) by the stockholders of the Corporation.

The rights provided in this Article (i) shall not be deemed exclusive of any other rights to which an Indemnitee may be entitled under any law, agreement or vote of stockholders or disinterested directors or otherwise, and (ii) shall inure to the benefit of the heirs, executors and administrators of the Indemnitees. The Corporation may, to the extent authorized from time to time by its Board of Directors, grant indemnification rights to other employee or agents of the Corporation or other persons serving the Corporation and such rights may be equivalent to, or greater or less than, those set forth in this Article.

NINTH: The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute and this Certificate of Incorporation, and all rights conferred upon stockholders herein are granted subject to this reservation.

EXECUTED at Denver, Colorado on August 26, 2003.

Sole Incorporator

LEE F. SACHNOFF

- 4 -